1              UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF CONNECTICUT
2                  BRIDGEPORT DIVISION

3
       IN RE:                     .  Chapter 11
4                                 .  Case No. 22-50073 (JAM)
       HO WAN KWOK, *et al.*,     .
5                                 .  (Jointly Administered)
              Debtors.            .
6      . . . . . . . . . . . . .  .
                                  .
7      DESPINS,                   .  Adversary Proceeding
                                  .  No. 24-05060 (JAM)
8             Plaintiff,          .
                                  .
9         v.                      .
                                  .
10     Apple, Inc, et al          .
                                  .
11            Defendants.         .
       . . . . . . . . . . . . .  .
12                                .
       DESPINS                    .  Adversary Proceeding
13                                .  No. 24-05117 (JAM)
              Plaintiff,          .
14                                .
          v.                      .
15                                .
       Meta Platforms, Inc.       .
16                                .
              Defendant.          .
17     . . . . . . . . . . . . .  .

18     DESPINS, LUC A. CHAPTER    .  Adversary Proceeding
       11 TRUSTEE                 .  No. 23-05008(JAM)
19                                .
              Plaintiff,          .  Courtroom 123
20                                .  Brien McMahon Federal Building
          v.                      .  915 Lafayette Boulevard
21                                .  Bridgeport, Connecticut 06604
       Guo                        .
22                                .  Tuesday, March 25, 2025
              Defendant.          .
23     . . . . . . . . . . . . .  .

24

25

1                          TRANSCRIPT OF HEARING
                  BEFORE THE HONORABLE JULIE A. MANNING
2                   UNITED STATES BANKRUPTCY JUDGE

3    Audio Operator:          Electronically recorded

4    Transcription Company:   Reliable
                              The Nemours Building
5                             1007 N. Orange Street, Suite 110
                              Wilmington, Delaware 19801
6                             Telephone: (302)654-8080
                              Email:  8
7
     Proceedings recorded by electronic sound recording,
8    transcript produced by transcription service.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2   For the Chapter 11
     Trustee:
 3                              Luc A. Despins, Esquire
                               PAUL HASTINGS, LLP
 4                              200 Park Avenue
                               New York, New York 10166
 5
                               -and-
 6
                               Nicholas A. Bassett, Esquire
 7                              PAUL HASTINGS, LLP
                               2050 M Street NW
 8                              Washington, DC 20036

 9
     For the U.S. Trustee:     Holley L. Claiborn, Esquire
10                             OFFICE OF THE UNITED STATES TRUSTEE
                               The Giaimo Federal Building
11                             150 Court Street
                               Room 302
12                             New Haven, Connecticut 06510

13   For Mei Guo:             James M. Moriarty, Esquire
                               ZEISLER & ZEISLER, P.C.
14                             10 Middle Street
                               Bridgeport, CT 06604
15
                               -and-
16
                               Stanley A. Twardy, Esquire
17                             DAY PITNEY LLP
                               One Stamford Plaza, 7th Floor
18                             263 Tress Boulevard
                               Stamford, CT 06901
19
     For Luc Despins:          Douglas S. Skalka, Esquire
20                             NEUBERT, PEPE, AND MONTEITH
                               195 Church Street, 13th Floor
21                             New Haven, CT 06510

22
     For Rui Ma:               Kristin B. Mayhew, Esquire
23                             PULLMAN & COMLEY, LLC
                               850 Main Street, 8th Floor
24                             PO Box 7006
                               Bridgeport, CT 06601
25
```

```
 1   For Apple:                George Peter Angelich, Esquire
                               ARENTFOX SCHIFF LLP
 2                             1301 Avenue of the Americas
                               42nd Floor
 3                             New York, NY 10019

 4
     For Ho Wan Kwok:          Eric A. Henzy, Esquire
 5                             ZEISLER & ZEISLER, P.C.
                               10 Middle Street
 6                             15th Floor
                               Bridgeport, CT 06604
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                                    INDEX

2     MOTIONS:                                                    PAGE

3     Matter
      No. 4144   Interim Application for Compensation - Sixth -
4                for September 1, 2024 to
                 December 31, 2024 for Pullman & Comley, LLC,
5                Creditor Comm. Atty, Fee: $25,318.00,
                 Expenses: $256.99. Filed by Pullman & Comley,
6                LLC, Attorney

7                Court's Ruling:                                   --

8     Matter     Fourth Interim Fee Application of O'Sullivan
      No. 4148   McCormack Jensen & Bliss PC, as
9                Special Insurance Coverage Counsel, for
                 Compensation and Reimbursement of
10               Expenses for Period from September 1, 2024
                 Through December 31, 2024 for O'Sullivan
11               McCormack Jensen & Bliss PC, Special Counsel,
                 Fee: $35,485.00, Expenses: $2,421.66.
12               Filed by Georg Alexander Bongartz, Attorney

13               Court's Ruling:

14    Matter     Third Interim Fee Application of Eisner
      No. 4149   Advisory Group LLC as Tax Advisor to
15               Trustee and Genever Debtors, for Allowance of
                 Compensation for Services Rendered
16               and for Reimbursement of all Actual and
                 Necessary Expenses Incurred for the Period
17               from September 1, 2024 Through December 31,
                 2024 for Eisner Advisory Group LLC,
18               Trustee's Attorney, Fee: $31,801.00, Expenses:
                 $0.00. Filed by Georg Alexander
19               Bongartz, Attorney

20
                 Court's Ruling:
21
      Matter
22    No. 4150   Fourth Interim Fee Application of Kroll, LLC,
                 as Forensic Investigators, for
23               Compensation and Reimbursement of Expenses for
                 Period from September 1, 2024
24               Through December 31, 2024 for Kroll, LLC,
                 Other Professional, Fee: $230,190.95,
25               Expenses: $20,227.72. Filed by Georg Alexander
                 Bongartz, Attorney
```

1          Court's Ruling:

2  Matter
   No. 4151  Fourth Interim Fee Application of Pallas
3          Partners LLP, as Solicitors in United
           Kingdom, for Compensation and Reimbursement of
4          Expenses for Period from
           September 1, 2024 Through December 31, 2024
5          for Pallas Partners LLP, Other
           Professional, Fee: $189,270.00, Expenses:
6          $753.67. Filed by Georg Alexander Bongartz,
           Attorney
7
           Court's Ruling:
8
   Matter
9  No. 4152  Second Interim Fee Application of UK
           Barristers for Compensation for Period
10         from March 1, 2024 through December 31, 2024.
           Filed by Georg Alexander Bongartz,
11         Attorney.

12         Court's Ruling:

13
   Matter    First Interim Fee Application of ENSafrica
14 No. 4153  (Mauritius) as Attorneys in Republic
           of Mauritius, for Compensation and
15         Reimbursement of Expenses for Period from
           September 17, 2024 Through December 31, 2024
16         for ENSafrica (Mauritius), Other
           Professional, Fee: $35,299.24, Expenses:
17         $817.89. Filed by Georg Alexander Bongartz,
           Attorney
18
           Court's Ruling:
19

20

21

22

23

24

25

```
 1   Matter
     No. 4154   Fifth Interim Fee Application of Harney
 2              Westwood & Riegels LP, as British
                Virgin Islands and Cayman Islands Counsel, for
 3              Compensation and Reimbursement of
                Expenses for Period from September 1, 2024
 4              Through December 31, 2024 for Harney
                Westwood & Riegels LP, Trustee's Attorney,
 5              Fee: $836,530.00, Expenses: $18,054.71.
                Filed by Georg Alexander Bongartz, Attorney
 6
                Court's Ruling:
 7

 8   Matter     First Interim Fee Application of Mauritius
     No. 4155   Barristers for Compensation for
 9              Period from September 11, 2024 Through
                December 31, 2024 for Patrice Doger de
10              Spville, SC and William de Robillard, Other
                Professional, Fee: $23,201.25, Expenses:
11              $0.00. Filed by Georg Alexander Bongartz,
                Attorney
12
                Court's Ruling:
13

14   Matter     First Interim Fee Application of James Morgan
     No. 4156   as Barrister in British Virgin
15              Islands for Compensation for Period from
                September 16, 2024 Through December 31,
16              2024. Filed by Georg Alexander Bongartz,
                Attorney
17
                Court's Ruling:
18

19   Matter     Seventh Interim Application for Compensation
     No. 4157   for Paul Hastings LLP, Trustee's Attorney,
20              Fee: $5,542,465.25, Expenses: $215,048.30.
                Filed by Paul Hastings LLP, Trustee's
21              Attorney

22   Matter     Interim Application for Compensation for
     No. 4158   Winne, Banta, Basralian & Kahn,
23              P.C., Special Counsel, Fee: $10,037.00
                Expenses:  $828.93. Filed by Winne, Banta,
24              Basralian & Kahn, P.C., Spec. Counsel
25
                Court's Ruling:
```

| | |
|---|---|
| 1 | |
| | Matter |
| 2 | No. 4159   Seventh Interim Application for |
| | Compensation for Neubert, Pepe & Monteith, |
| 3 | P.C., Trustee's Attorney, Fee: |
| | $1,075,419,Expenses: $30,859.27. Filed by |
| 4 | Neubert, Pepe & Monteith, P.C., Trustee's |
| | Attorney |
| 5 | |
| | Court's Ruling: |
| 6 | |
| 7 | Matter     Order Scheduling Status conference |
| | No. 4247 |
| 8 | |
| | Court's Ruling: |
| 9 | |
| 10 | Matter     Motion for Order Confirming Bankruptcy |
| | No. 74     Court Has Not Decided Defendant's |
| 11 | Motion to Dismiss Filed by Douglas S. |
| | Skalka on behalf of Luc A. Despins, |
| 12 | Plaintiff |
| 13 | |
| | Matter     Order Scheduling Status conference |
| 14 | No. 77 |
| | |
| 15 | Court's Ruling: |
| 16 | |
| | Matter     Motion for Order |
| 17 | No. 45 |
| | |
| 18 | Court's Ruling: |
| 19 | |
| | Matter     Order scheduling Status conference |
| 20 | No. 49 |
| 21 | |
| | Court's Ruling: |
| 22 | |
| 23 | Matter     Motion for Order Closing the Courtroom |
| | No. 149    for the March 25, 2025 Show Cause |
| 24 | Hearing Filed by James M. Moriarty |
| | on behalf of Mei Guo, Defendant |
| 25 | |
| | Court's Ruling: |

```
Matter      Motion to Enforce Preliminary Injunction
No. 140     And for Order to Show Cause Why Defendant
            Mei Guo Should Not Be Held in Contempt
            Filed by Patrick R. Linsey on behalf of
            Despins, Luc A., Chapter 11 Trustee,
            Plaintiff

            Court's Ruling:
```

EXAMINATION:                                          PAGE

     MEI GUO

     Direct examination by Mr. Bassett               108

     Cross examination by Mr. Moriarty               149

     Redirect examination by Mr. Bassett             162


EXHIBITS:                                             PAGE

Plaintiff's Exhibit 10                               103

Plaintiff's Exhibit 27                               103

Plaintiff's Exhibit 60                               103

plaintiff's Exhibit 63

1              (Proceedings commenced at 1:05 p.m.)

2              THE CLERK:  Case No. 22-50073, Ho Wan Kwok.

3              THE COURT:  Good afternoon.  If we could have

4    appearances for the record starting with the Chapter 11

5    Trustee, please.

6              MR. DESPINS:  Good afternoon, Your Honor.  Luc

7    Despins, Chapter 11 Trustee.

8              THE COURT:  Good afternoon.

9              MR. BASSETT:  Good afternoon, Your Honor.  Nick

10   Bassett from Paul Hastings, counsel to the Chapter 11

11   Trustee.

12             THE COURT:  Good afternoon.

13             MR. SKALKA:  Good afternoon, Your Honor.  Douglas

14   Skalka of Newbert, Pepe & Monteith, also as counsel for the

15   Chapter 11 Trustee.

16             THE COURT:  Good afternoon.

17             MS. CLAIBORN:  Good afternoon.  Holley Claiborn

18   for the U.S. Trustee.

19             THE COURT:  Good afternoon.

20             MS. MAYHEW:  And good afternoon, Your Honor.

21   Kristin Mayhew on the behalf of the Creditors Committee.

22             THE COURT:  Good afternoon.

23             All right.  On the calendar at 1:00 p.m. are

24   several applications for compensation, and I don't know how

25   you want to handle those, Trustee Despins, if we just want to

1   take them in order or what you'd like to do.

2           MR. DESPINS:  That's fine, Your Honor.  And -- and

3   I noticed that, the Pullman Comley application is the first

4   one, so Attorney Mayhew probably will handle that.

5           THE COURT:  All right.  So then we will turn first

6   to the interim application for compensation of Pullman &

7   Comely, LLC.  I'm sorry.  No, everything just blacked out for

8   a second there, but give me a moment, please, and I'll be all

9   set with you, I hope.

10          Go right ahead.

11          MS. MAYHEW:  Thank you.  Again, good afternoon,

12  Your Honor.  Kristin Mayhew, Pullman & Comley on behalf of

13  the Creditors Committee.  Before the Court is Pullman's sixth

14  interim application for allowance of compensation and

15  reimbursement of expenses for the periods of September 1st,

16  2024, through December 31st, 2024.

17          Pursuant to the sixth interim application, we are

18  seeking fees in the amount of $25,318 and expenses in the

19  amount of $256.99.  Proper service of the fee application and

20  notice of the hearing was made as reflected in the

21  certificate of service that was filed on March 4th, 2025, at

22  ECF 4188.

23          I would note that no objections have been

24  received, and the United States Trustee's Office has filed a

25  statement of no objection on March 13th at ECF 4209.  And in

1  the absence of any objections, we would ask that the Court

2  approve the fee application.

3            THE COURT:  Okay.  Thank you.  I do not have any

4  questions.  I've reviewed the application, and the statement

5  of the office of United States Trustee, Attorney Claiborn.

6            MS. CLAIBORN:  That was the correct number, Your

7  Honor, 4209 on the docket.

8            THE COURT:  Okay.  Thank you.  As I've noted

9  before, the committee has been cognizant of the Trustee's

10  involvement, and, obviously, the work of the committee has

11  decreased during the last period of time that this

12  application applies.  All that being said, the fees and

13  expenses sought are reasonable and necessary under the

14  circumstances of the case.

15            No one has filed any written objection, and there

16  is no one participating in this hearing today that is

17  objecting to the application.  I am looking at your proposed

18  order, and I would note to the courtroom deputy that with

19  regard to the proposed order -- that's at ECF 4144-3, the

20  only thing that needs to happen, if you would please, is to

21  add today's hearing date on Page 2 of that order, and then

22  that order can enter.

23            And then for all those reasons, the application

24  for compensation of the sixth interim fee application is

25  granted and that order will enter.

1          MS. MAYHEW:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. DESPINS:  So, Your Honor, I'll proceed with

4     the other applications?

5          THE COURT:  Yes, please.  Go right ahead.

6          MR. DESPINS:  For the record, Luc Despins, Chapter

7     11 Trustee.  So the next application is of O'Sullivan,

8     McCormack, Jensen & Bliss.  They're counsel for Jennifer in

9     the AIG litigation.  And this was for the period from

10    September 1st through December 31st, 2024.  And the fees

11    sought were 35,485 and the reimbursement expense of

12    $2,421.66.

13          The U.S. Trustee filed a statement of no objection

14    at Docket No. 4210.  And on that basis, Your Honor, we

15    would -- we would ask the Court to grant the application.  No

16    objections have been filed.

17          THE COURT:  Thank you.

18          MS. CLAIBORN:  That's correct, Your Honor.

19          THE COURT:  Attorney Claiborn the -- so the Office

20    of the United States Trustee obviously filed no -- a

21    statement of no objection, 4148, correct?

22          MS. CLAIBORN:  Correct, yes.

23          THE COURT:  Okay.  Thank you.

24          MS. CLAIBORN:  Oh, I'm sorry.

25          MR. DESPINS:  No, 4210, I believe.

1           MS. CLAIBORN:  4210 is --

2           THE COURT:  Oh, I'm looking at the wrong one.

3           MS. CLAIBORN:  4148 is the application.

4           THE COURT:  I thought we were doing --

5           MR. DESPINS:  McCormack Jensen.

6           THE COURT:  Okay.  Hold on.

7           MR. DESPINS:  Sorry.

8           THE COURT:  I apologize.  My fault.  I looked at

9    the wrong -- I mean, I'm looking at it, but I just have the

10   wrong ECF number, apparently.  So just give me a second as

11   far as the no objection is -- is concerned.  4210.  That's

12   correct.

13          MR. DESPINS:  But you are correct.  The 4148 is --

14   is the application itself by O'Sullivan McCormack.

15          THE COURT:  But the -- yeah, that was my mistake.

16   So in any event, I have reviewed the interim application, the

17   fourth interim application of O'Sullivan, McCormack, Jensen &

18   Bliss as special insurance coverage counsel for the Trustee.

19   It appears to be in order.  No one has filed any written

20   objection to the application, and there is no one

21   participating in this hearing today that is objecting to the

22   application.

23          I note that the fees and expenses sought in the

24   application appear to be reasonable and necessary under the

25   circumstances of this case.  I'm looking at a proposed order,

1   granting the interim application for 4148.

2           And the only thing I would note to the courtroom

3   deputy is that if we could add the today's hearing date on

4   the second page of the order right before the words, it is

5   further and in the -- I'm sorry.  I apologize.  On the first

6   page and the end of the first paragraph:  and sufficient

7   cause having been shown therefore, and after hearing having

8   been held on.

9           Then for all those reasons, the fourth interim

10  application of O'Sullivan, McCormack, Jensen & Bliss as

11  special counsel is granted, and the proposed order with the

12  minor change noted on the record can enter.

13          MR. DESPINS:  Thank you, Your Honor.

14          THE COURT:  Thank you.

15          MR. DESPINS:  Moving on to the Eisner application,

16  they are the tax advisors to the Trustee.  Their application

17  was at Docket 4149, and this is, again, for the period

18  September 1st through December 31st, 2024.  They sought

19  compensation in the amount of $31,801, no expenses.

20          The U.S. Trustee filed a statement of no objection

21  at Docket No. 4211, and a copy of the proposed order granting

22  Eisner's fee application was filed with the application at

23  4149.  So I assume the same change would have to be made

24  regarding the date.  But no objection filed --

25          THE COURT:  Yes.

1      MR. DESPINS:  -- Your Honor, so we would ask the

2  Court to grant the application.

3      THE COURT:  All right.  If you just give me a

4  second, but I agree with you.  I'm looking at the proposed

5  order for 4149, which is the order approving the third

6  interim application of Eisner -- Eisner Advisory Group --

7  excuse me -- as tax advisor to the Trustee and Geneva

8  Debtors.

9      I note that no one has filed a written objection

10  to the application.  The Office of the United States Trustee

11  has filed a statement of no objection, as the Trustee just

12  noted on the record.  The fees and expenses sought appear to

13  be reasonable and necessary under the circumstances of the

14  case.

15      Looking at the courtroom deputy again on that

16  proposed order, as the Trustee noted, if we could add before

17  the ordered paragraphs and after a hearing held on --

18      THE DEPUTY:  Okay.

19      THE COURT:  -- March 25th, 2025, please.

20      THE DEPUTY:  Okay.

21      THE COURT:  And then that order can enter, and

22  that third interim application is granted, Trustee Despins.

23      MR. DESPINS:  Thank you, Your Honor.

24      THE COURT:  Thank you.

25      MR. DESPINS:  Moving on to the Kroll, LLC, fourth

1   interim fee application filed at Docket 4150, again, covers

2   the September 1st through December 31st period.  The amount

3   sought was 230,190.95, reimbursement of 20,227.72.  No

4   objections were filed, and the U.S. Trustee filed a statement

5   of no objection at 4221.  And the proposed order was attached

6   to the application at 4150, Your Honor.

7           So based on the -- the absence of any objections,

8   we would ask the Court to grant the application.

9           THE COURT:  Yes.  If you just give me one moment,

10  please.

11          All right.  With regard to the application of

12  Kroll, the fourth interim fee application seeking expenses

13  for the same period of -- excuse me -- reimbursement of fees

14  and expenses for the same period of time we've been

15  discussing, September 1st, 2024, through December 31st, 2024.

16          I note that no one has filed a written objection

17  to the application.  There is no one participating in this

18  hearing that's objecting to the application.  The Office of

19  the United States Trustees filed a statement of no objection

20  at ECF No. 4221.

21          I'm -- I am looking at the proposed order with

22  regard to Kroll.  And, again, the only addition that I would

23  ask the courtroom deputy to make at the begin at the end of

24  the first paragraph is to say and after hearing held on March

25  5th, 2025.

1          THE DEPUTY:  Yes.

2          THE COURT:  And for all those reasons, then the,

3  fourth interim fee application is granted, and the proposed

4  order with the minor change will enter.

5          MR. DESPINS:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7          MR. DESPINS:  Moving on, Your Honor, to Pallas

8  Partners.  They're our UK solicitors --

9          THE COURT:  Um-hum.

10          MR. DESPINS:  -- and, again, the same application

11  period, that we've been discussing.  The amount of

12  compensation sought was $459,000, reimbursement of 753.67.

13  And there -- although a no objection statement was eventually

14  filed by the U.S. Trustee, there was a reduction agreed to

15  the fees, reducing the fees from 189,270 to 187,466 a

16  reduction of $1,804.  And the U.S. Trustee's statement in

17  that regard is at Docket No. 4234.

18          So on this one, we probably -- make sense for us

19  to submit a revised --

20          THE COURT:  Submit a new proposed order.

21          MR. DESPINS:  -- if Your Honor is inclined to

22  grant it, to submit a revised order with that revised amount

23  in it.

24          THE COURT:  Well, I did review the fourth interim

25  fee application of Pallas Partners.  I did see the United

1  States Trustee's statement and notation with regard to a

2  reduction in fees, and it -- and in connection with those

3  documents and review of the fees and expenses, it does appear

4  that the fees and expenses sought and now agreed to a reduced

5  amount are reasonable and necessary under the circumstances

6  of the case.

7        No other party has filed anything, including an

8  objection with regard to the application, and there is no one

9  participating in this hearing today that's objecting to the

10 application.  So for all those reasons, the application is

11 granted, and a revised proposed order will be submitted by

12 the Trustee.  How much time do you need, Trustee Despins?  Do

13 you --

14       MR. DESPINS:  Sure.

15       THE COURT:  Would you like till the end of this

16 week or a week from today?

17       MR. DESPINS:  No, 48 hours is fine, Your Honor.

18       THE COURT:  Say that again?

19       MR. DESPINS:  Forty-eight hours is fine.

20       THE COURT:  Okay.

21       MR. DESPINS:  So Thursday.

22       THE COURT:  I'll -- I'll give you till Friday the

23 28th, and you'll get it in whenever you get it in.  But it

24 doesn't need to be docketed.  It can just be sent to the

25 courtroom deputy --

1        MR. DESPINS:  The courtroom deputy.

2        THE COURT:  -- email box.

3        MR. DESPINS:  Yes.  We will -- we will do that,

4   Your Honor.

5        THE COURT:  Thank you.

6        MR. DESPINS:  Thank you, Your Honor.  So moving on

7   to the UK Barristers' second interim fee application.  So

8   their names are Paul Wright (phonetic) and Peter Shaw

9   (phonetic).  They're the barristers working with Pallas

10  Partners on UK matters.  Same -- sorry.  The application

11  period is different there.  That's from March 1st through

12  December 31st.

13        THE COURT:  Okay.

14        MR. DESPINS:  And there, the amount sought was

15  British Pound Sterlings 22,000, 435,000.  And no expenses

16  were sought during that period.  The U.S. Trustee filed a

17  statement of no objection at 4212, and a copy of the proposed

18  order granting he UK Barristers' fee application was filed

19  with the application of Docket No. 4152.

20        Given the absence of objection, Your Honor, we

21  would ask the Court to grant the relief sought.

22        THE COURT:  And I would note that the U.S. Trustee

23  had -- did file a statement of no objection.  I believe it is

24  4212.  Is that what you said, Trustee Despins?  I believe I'm

25  correct on that.

1          MR. DESPINS:  That's correct, 4212.

2          THE COURT:  Okay.  Thank you.  Again, I appreciate

3   you reminding me that the period of time for this fee

4   application is actually longer.  It goes back to March 1st,

5   2024, through December 31st, 2024.  And the fees sought by

6   the Barristers, I've reviewed, and they are reasonable under

7   the circumstances of the case.

8          No one has filed any written objection to the

9   application, and there is no one participating in this

10  hearing today that is objecting to the application.  I think

11  then the only thing I'd need to enter -- add -- excuse me --

12  to the proposed order is just that there was a hearing today.

13  You don't have there was no other issue in in this order that

14  I saw.

15         MR. DESPINS:  That's correct, Your Honor.

16         THE COURT:  All right.  So then the second interim

17  fee application of the UK Barristers is granted, and I ask

18  the Trustee -- the Trustee -- the courtroom deputy to please

19  add at the end of the first paragraph the language and after

20  hearing held on May -- March 25th, 2025, please, and then the

21  order can enter.  And that application is granted.

22         MR. DESPINS:  Thank you, Your Honor.

23         THE COURT:  Thank you.

24         MR. DESPINS:  Moving on to ENSafrica's first

25  interim fee application, these are the solicitors in

1  Mauritius.  And the application period is slightly shorter

2  from September 17 instead of September 1st through December

3  31st, and the amount sought was 35,299.24 and the

4  reimbursement sought was $817.89.

5          No objections were filed and the U.S. Trustee

6  filed a statement of no objection at Docket 4220.  And again,

7  a copy of the proposed order granting that application was

8  filed with the application at Docket No. 4153.  Based on the

9  fact that no objections were filed, Your Honor, we would ask

10  the Court to grant the relief sought.

11          THE COURT:  Understood.  And I did look at the

12  fees sought in connection with the interim application for

13  compensation and the expenses, as well.  I find that they are

14  reasonable and necessary under the circumstances of the case.

15          No one has filed any written objections to the

16  application, and there is no one participating in this

17  hearing today that is objecting to the application.  The

18  United States Trustee's Office filed a statement of no

19  objection, 4220.

20          I just -- the one thing I -- I -- this 153 -- when

21  I say 153, I mean 4,153, the proposed order.  I think it did

22  not have the date of the hearing again.  I think we just need

23  to add that.  I just want to make sure I'm correct on that.

24  If you give me just a moment, please.  Yes.

25          So at the end of the first paragraph, before the

 1 | first ordered paragraph, if you would add the language and

 2 | after hearing held on March 25th, 2025, please.

 3 |             THE DEPUTY:  Okay.

 4 |             THE COURT:  For all those reasons, the first

 5 | interim fee application for the ENS South Africa attorneys is

 6 | granted and the order will enter with the change noted on the

 7 | record.

 8 |             MR. DESPINS:  Thank you, Your Honor.

 9 |             THE COURT:  Thank you.

10 |             MR. DESPINS:  Moving on now to Harney's.  They're

11 | our BVI counsel.  The application is at 4154, and for the

12 | same period, September 1st to December 31st.  The

13 | compensation amount sought was 836,530, and the reimbursement

14 | was 18,054.71.

15 |             No objections were filed, but there was a

16 | reduction agreed to between the U.S. Trustee and Harney's

17 | reducing the fees from 836,530 to 833,152, a reduction of

18 | $3,378 Your Honor.  And if Your Honor is inclined to grant

19 | the application, we would need to submit a revised order to

20 | reflect that.  And the U.S. Trustee's statement in that

21 | regard, by the way, was -- was at Docket No. 4238, Your

22 | Honor.

23 |             THE COURT:  Yes, thank you.  I did review the

24 | fifth interim fee application of the counsel in the British

25 | Islands and Cayman Islands that have been retained by the

1  Trustee.  I did review this -- the United States Trustee's

2  statement of no objection, but that includes a reduction of

3  fees set forth in the application.

4       No one has filed any written objection to the

5  interim application, and no one is participating in this

6  hearing today that is objecting to the interim application

7  for compensation.  So for all those reasons, the interim

8  application for compensation is granted, and I'd ask the

9  Trustee to submit a revised proposed order by March 28th.

10       MR. DESPINS:  Thank you, Your Honor.

11       THE COURT:  Thank you.

12       MR. DESPINS:  And by the way, just to refresh Your

13  Honor's recollection, what they're working on in the BVI, you

14  know, is mostly two matters, AS Decade (phonetic), if you can

15  believe that's still alive and kicking.  And, the other one

16  is K Legacy (phonetic), which is the London apartment because

17  K Legacy is a BVI entity.  So I wanted to just make sure Your

18  Honor was aware of that.

19       THE COURT:  Yes, thank you.

20       MR. DESPINS:  So moving on, Your Honor, to

21  Mauritius Barristers this time, their first interim fee

22  application.  And that was filed on February 24th, Docket No.

23  4155, and that's from September 11, 2024, through December

24  31st, 2024.  No expenses were sought, but the compensation

25  amount was $23,201.25.

1          A no objection statement was filed by the U.S.

2  Trustee at 4213, and a copy of the proposed order granting

3  that application was filed with the application at Docket No.

4  4155.  Given the lack of objection, Your Honor, we would ask

5  the Court to grant the relief sought.

6          THE COURT:  Yes, thank you.  I have reviewed the

7  first interim fee application of the barristers that -- the

8  subject of the application is 4155.  I've seen the statement

9  of no objection filed by the United States Trustee, 4213.  I

10  find that the fees, because that's all that was sought in

11  this application are reasonable and necessary under the

12  circumstances of the case.

13          No one has filed any written objections to the

14  first interim fee application, and no one is participating in

15  this hearing today that is objecting to the first interim fee

16  application.  For all those reasons, the first interim fee

17  application is granted, and the proposed order can enter, but

18  please add today's hearing date, you know, after a hearing

19  held on March 25th to the beginning -- to the end of the

20  first paragraph before the ordered paragraphs, please.

21          THE DEPUTY:  Okay.

22          THE COURT:  So that's granted.  Thank you.

23          MR. DESPINS:  Thank you, Your Honor.  Moving on to

24  the BVI barristers.  This is James Morgan who is working with

25  the Harney's team on these BVI litigations.  And this is from

1   the period from September 16th, the date of his retention,

2   through December 31st.  The compensation slot is British

3   pounds 31,865.

4           No objections were filed, and the U.S. Trustee

5   filed the statement of no objection at Docket No. 4214, and a

6   copy of the proposed order granting the BVI barristers fee

7   application was filed with the application at Docket 4156.

8   Based on lack of objection, Your Honor, we would ask the

9   Court to grant the relief sought.

10          THE COURT:  I had the figure in the James Morgan

11  order different than you just stated, I believe.  What --

12  could you tell me what you said, the pounds?

13          MR. DESPINS:  Thirty-one thousand, eight hundred

14  and sixty-five.

15          THE COURT:  I have 41,000.  It's 41,000.

16          MR. DESPINS:  Oh, my -- my -- okay.

17          THE COURT:  That's fine.  I just wanted to make

18  sure.

19          MR. DESPINS:  My -- my error, Your Honor.  So --

20          THE COURT:  That's fine.  That's fine.

21          MR. DESPINS:  I'm sure that the proposed order

22  is -- is correct.

23          THE COURT:  It's not a problem.  I just wanted to

24  be clear.

25          MR. DESPINS:  And -- yeah.  And the U.S. Trustee

1    confirmed that, as well, so.

2              THE COURT:  It's 41, Attorney Claiborn?

3              MS. CLAIBORN:  Yes, Your Honor.

4              THE COURT:  Forty-one thousand, eight sixty-five

5    pounds?

6              MS. CLAIBORN:  Correct.

7              THE COURT:  Okay.  Thank you.

8              All right.  Then, having -- I have reviewed the

9    first interim fee application of James Morris -- James Morgan

10   as barrister, and I have seen the request for fees in the

11   amount of $41,865 in pounds.  It does appear that the fees

12   that have been sought in this first interim application are

13   reasonable under the circumstances of this case.

14             No one has filed any written objection to the

15   first interim fee application.  There is no one participating

16   in this hearing today that is objecting to the first interim

17   fee application, and the Office of the United States Trustee

18   has filed a statement of no objection, which is ECF No. 4214.

19   I would ask the courtroom deputy, again, with regard to the

20   proposed order that was submitted with the application to add

21   the language and after hearing held on March 25th, 2025, at

22   the end of the first paragraph before the words, it is hereby

23   ordered.

24             THE DEPUTY:  Okay.

25             THE COURT:  And for all those reasons, the first

1 interim fee application is granted, and the proposed order

2 will enter.

3          MR. DESPINS:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MR. DESPINS:  May I confer with U.S. Trustee for

6 one second, Your Honor?

7          THE COURT:  Sure.

8          MR. DESPINS:  Apologies, Your Honor.  So

9 we're -- we're on to the application of Paul Hastings, Your

10 Honor.  This is our seventh interim fee application, Docket

11 No. 4157.  And from the period from August 1st through

12 November 30th, 2024, the amount of compensation sought is

13 5,542 -- no, 5,542,465.25, and the reimbursement of expenses

14 of 215,048.30.

15          No objections were filed, but there was a lot of

16 discussions with the U.S. Trustee, which led to a reduction

17 in fees of $72,000, and there was also a reduction of

18 expenses to -- from the figure of $215,048 to 207,883, a

19 reduction of 7,165.10.  That's reflected in the U.S.

20 Trustee's statement at Docket 4245, Your Honor.

21          And in light of the absence of objection and the

22 resolution of issues with U.S. Trustee, we would ask the

23 Court to grant the relief sought.

24          MS. CLAIBORN:  Your Honor, if I could --

25          MR. DESPINS:  And by the way, I would -- I would

1  need to file a -- if Your Honor is inclined to grant the

2  application, I would need to file a revised order because

3  there are a lot of moving parts in there that need to be

4  changed.

5          MS. CLAIBORN:  Your Honor, I just wanted to make

6  one clarifying comment, which is of these $7,165.10 in

7  reduction of expenses, some of that's going to reappear, be

8  requested in connection with the eighth interim.  There are

9  some documentation issues that we couldn't quite get resolved

10  in time for this fee application hearing.  So we've taken it

11  off this fee application, but it's going to reappear.

12          THE COURT:  Okay.

13          MS. CLAIBORN:  And it has to do with UPS charges.

14          THE COURT:  Okay.

15          MR. DESPINS:  Yeah.  I think it's an amount of

16  $5,567 and change, so it's a deferral, basically.  It's --

17  it's not a --

18          THE COURT:  That's fine.  That's fine.  So then,

19  obviously, the two of you will -- will work on the revised

20  proposed order to be submitted to the Court?

21          MS. CLAIBORN:  Yes.

22          THE COURT:  All right.  Then with regard to the

23  interim application -- seventh interim application for fees

24  and expenses, I have reviewed the fees and expenses sought.

25  And as we've discussed in the past, although someone may look

1   at those amounts as large, which they are, I have determined

2   that those amounts are reasonable and necessary under the

3   circumstances of this case and the related adversary

4   proceedings and the proceedings that are going on outside of

5   this court and for the reasons I've stated in the past.

6          I've also looked at the most recent operating

7   report, and I've seen the breakdown of all the fees incurred

8   in this case, not just by the Trustee's counsel, but by all

9   professionals retained in the case.

10          And, again, while the numbers are large, this is a

11   case that has not proceeded in a manner in which the majority

12   of Chapter 11 cases would proceed when a Chapter 11 Trustee

13   is appointed to investigate the financial affairs of the

14   Debtor and take actions accordingly in connection with that

15   investigation.

16          I -- I have looked at what the Trustee has

17   recovered according to the monthly operating report, which

18   gathers all that information.  I have knowledge of the assets

19   that have been brought into the estate throughout the

20   processes that have gone on for more than two and a half

21   years now, getting close to three.  And, again, while someone

22   may say the numbers are high, it has been an -- as I've said

23   in the past, an unusual case.

24          So I don't -- I want to be clear that I -- I know

25   that the Trustee has been and his counsel have been spending

1   a great deal of time and energy in these cases in this case

2   and the adversary proceedings and outside of this court.  And

3   I think the fees that have sought are reasonable and

4   necessary under, as I've said many times, the specific facts

5   and circumstances of the case and related proceedings, not

6   just the main Chapter 11 case.

7          No one has filed any written objection to the fees

8   and expenses, other than what we just discussed on the record

9   was the United States Trustee's statement with regard to a

10  reduction in fees and issues with regard to expenses that we

11  just discussed on the record, as well.  So -- and there's no

12  one participating in this hearing today that is objecting to

13  the fees and expenses sought.

14         For all those reasons, the seventh interim

15  application for compensation for Paul Hastings is granted,

16  and a revised proposed order will be submitted on or before

17  March 28th.

18         MR. DESPINS:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MR. DESPINS:  I would just I would like to make

21  the -- the statement, as a Trustee, not as a Paul Hastings

22  partner, we are -- I'm trying to push as much work as we can

23  to Mr. Skalka's firm and Mr. -- if we could only clone Mr.

24  Skalka and Mr. Linsey.  Mr. Linsey probably is working, I

25  would say, 2,500 hours a year on this case.  I don't know

1  that for a fact, but he's working night and day.

2          And we realized the importance of doing that, Your

3  Honor, to maintain -- to try to reduce the fees in the case,

4  which are, substantial.  There's no doubt about it.  And

5  that's always in the -- at top of mind from my point of view.

6  So I want to make sure Your Honor knows that.

7          THE COURT:  I understand.

8          MR. DESPINS:  So at this point, I will turn over

9  the podium to Mr. Skalka, who will cover his firm's fee

10 application and also the New Jersey Counsel's fee

11 application.

12         THE COURT:  Okay.  Thank you.

13         MR. SKALKA:  Good afternoon, Your Honor.

14         THE COURT:  Good afternoon.

15         MR. SKALKA:  Douglas Skalka from Neubert, Pepe &

16 Monteith.

17         Your Honor, the first application I'd like to

18 present is the first interim application of the firm Winne,

19 Banta, Basralian, & Kahn, who has been retained as the

20 Trustee's special New Jersey real estate counsel.  The fee

21 application is Docket No. 4158.

22         The application covers the period of August 19th,

23 2024, which was the date of their retention, through December

24 31st, 2024.  The fee request is for $10,037.50, which

25 includes a voluntary fee reduction of $817, as noted in the

1   application, and there is an expense request for -- a

2   reimbursement request of $828.93.

3         The Office of the United States Trustee has filed

4   a statement of no objection to the application at Docket No.

5   4231.  We've received no objections to the application and

6   would request that it be approved.

7         THE COURT:  Thank you.  I did review the first

8   interim fee application of the New Jersey Special Counsel and

9   I find that the fees and expenses incurred, including the

10  voluntary reduction of fees, are necessary and appropriate

11  under the circumstances of this case and the numerous related

12  proceedings.

13        No one has filed any written objection to the

14  first interim fee application.  There is no one participating

15  in this hearing today that's objecting to the first interim

16  fee application.  And as you noted correctly, the Office of

17  the United States Trustee filed a statement of no objection

18  at 4231 -- ECF No. 4231.

19        I would just ask the courtroom deputy with regard

20  to the proposed order that was submitted in -- with the

21  application at ECF No. 4158, that we add the language at the

22  end of the first paragraph and after hearing held on March

23  25th, 2025.

24        THE DEPUTY:  Okay.

25        THE COURT:  And then for all those reasons, the

1  first interim fee application is granted, and the proposed

2  order with the minor change noted on the record will enter.

3           MR. SKALKA:  Thank you, Your Honor.

4           THE COURT:  Thank you.

5           MR. SKALKA:  The last application, I think, on the

6  calendar is the is the seventh interim application for my

7  firm, Neubert, Pepe & Monteith, as the Trustee's local and

8  conflicts counsel, covering the period of September 1st,

9  2024, through December 31st, 2024.  The application seeks the

10 approval of fees in the amount of $1,075,419, which includes

11 a voluntary reduction of $20,000 in fees.

12          There is also a request for expenses.  The

13 original request was the amount of $30,859.27.  After some

14 discussion with the U.S. Trustee's Office, that expense

15 reduction expense reimbursement request has been reduced to

16 $28,893.60, a reduction of $1,965.67.

17          We've received no objection to the application.

18 The Office of the U.S. Trustee has filed a notice of no

19 objection at Docket No. 4215, but reflecting the reduced

20 expense reimbursement request.  So I think we will need to

21 submit a revised order with that different expense

22 reimbursement.

23          THE COURT:  Yeah.  The order, I understand because

24 the order I looked at obviously has the different dollar

25 amount.

1          MR. SKALKA:  Correct.

2          THE COURT:  So with -- with regard to the -- I'm

3    sorry.  Did you want to say anything else?

4          MR. SKALKA:  Nothing else, Your Honor.

5          THE COURT:  Okay.  Thank you.  Attorney Claiborne,

6    did you want to add anything to the record?

7          MS. CLAIBORN:  No, that's correct, Your Honor.

8          THE COURT:  All right.  Thank you.  Then with

9    regard to the seventh interim application for compensation

10   for Neubert, Pepe & Monteith, I have reviewed the fees sought

11   and the expenses incurred with the understanding that there

12   is a reduction in expenses that is agreed to by Neubert, Pepe

13   & Monteith.  I find that the fees and expenses as reduced are

14   reasonable and necessary under the circumstances of this case

15   and the numerous related proceedings both in this Court and

16   outside of this Court.

17         No one has filed any written objection to the

18   seventh interim application for compensation, and there is no

19   one participating in this hearing today that is objecting to

20   the interim application for compensation.  We've already

21   noted on the record that the United States Trustee's Office

22   has filed a statement, and there's an agreement with regard

23   to the reduced expenses.

24         And for all those reasons, the seventh interim

25   application for compensation for Neubert, Pepe & Monteith is

1  granted.  And if you would submit -- or will you be able to

2  submit a revised proposed order by Friday, March 28th?

3          MR. SKALKA:  Absolutely, Your Honor.

4          THE COURT:  Okay.  Thank you.  Then that is

5  granted, and the revised proposed order will be submitted on

6  or before March 28th.

7          MR. SKALKA:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9          Trustee Despins, we do not have any other matters

10  on the calendar until 2:00 p.m.  Is that correct from your

11  perspective?  It's --

12          MR. DESPINS:  That's correct.

13          THE COURT:  That's my perspective anyway, so.

14  Okay.  Then the Court will be in recess until 2:00 p.m.

15          THE DEPUTY:  All rise.  The Court is in recess

16  until 2:00 p.m.

17              (Off the record at 1:44 p.m.)

18              (On the record at 2:12 p.m.)

19          THE DEPUTY:  All rise.  The United States

20  Bankruptcy Court  for the District of Connecticut, is now in

21  session after recess.  The Honorable Julie Manning is

22  presiding.

23          THE COURT:  Good afternoon.  Please be seated.

24          All right.  So we had some technical difficulties

25  but they appear to be all set.  Okay.  Thank you.

1          All right.  Then on the calendar today at 2:00

2    p.m., we have several matters, but we are going to address

3    the matters with regard to the Trustee's motion for order

4    confirming Bankruptcy Court has not decided Defendant's

5    motion to dismiss, which is filed in two adversary

6    proceedings and status conference in the main case and

7    adversary proceedings.

8          So I'd ask the courtroom deputy to please call the

9    main case and the adversary proceedings.

10          THE DEPUTY:  Case No. 22-50073 Ho Wan Kwok;

11    Adversary No. 24-5060, Despins versus Apple, Inc. et al; 24-

12    5117, Despins versus Meta Platforms, Inc.; and 23-5008,

13    Despins versus Guo.

14          THE COURT:  Okay.  Good afternoon.  If we could

15    have appearances for the record, starting with the Chapter 11

16    Trustee, please.

17          MR. DESPINS:  Luc Despins, Chapter 11 Trustee,

18    Your Honor.

19          MR. BASSETT:  Nick Bassett from Paul Hastings,

20    counsel to the Chapter 11 Trustee.

21          MR. SKALKA:  Douglas Skalka, Neubert, Pepe, &

22    Monteith, also counsel for Chapter 11 Trustee.

23          MS. CLAIBORN:  Good afternoon.  Holly Claiborn for

24    the U.S. Trustee.

25          MR. ANGELICH:  Good afternoon, Your Honor.  George

1  Angelich of ArentFox Schiff, counsel to Meta Platforms and

2  Apple, Inc.

3       THE COURT:  Good afternoon.  All right.  On the

4  calendar today at 2 o'clock, the first matters are an order

5  that the Court entered scheduling a status conference in the

6  main case as it relates to the Trustee's motion that were

7  filed in two related adversary proceedings, Despins versus

8  Meta Platforms, Inc., Adversary 2405117; and Despins versus

9  Apple, Adversary Proceeding 2405060.

10       And related to that, this status conference,

11  because the decision that is the subject of Trustee Despins's

12  motion to confirm that the Court did not rule on motions to

13  dismiss pending in the two adversary proceedings I just

14  mentioned, the Apple and Meta adversary proceedings --

15  related to that motion are the fact that the decision that is

16  the subject of the Trustee's motions was entered in the main

17  case and not in the adversary proceedings of Despins versus

18  Apple and Despins versus Meta Platforms.

19       In addition to scheduling the status conference in

20  the main case to address the related adversary proceedings,

21  we have, as I have already noted, the Trustee's motion for an

22  order confirming that the Bankruptcy Court has not decided

23  the Defendant's motions to dismiss in the Meta and Apple

24  adversary proceedings.  And an order entered in both of those

25  adversary proceedings requiring counsel to be here in the

1   Court and -- both for the Plaintiff and the Defendant in

2   those adversary proceedings and to discuss the status of

3   those adversary proceedings, including to be prepared to

4   discuss scheduling of a hearing on the motions to dismiss in

5   those two adversary proceedings.

6          So Trustee Despins, your motion for order

7   confirming the Bankruptcy Court has not decided the

8   Defendant's motion to dismiss in the Apple adversary

9   proceeding is ECF No. 74 and in the Meta adversary proceeding

10  is ECF No. 45.

11         So would you like to proceed with your motion?

12         MR. DESPINS:  Mr. Skalka will -- will handle that,

13  Your Honor.

14         THE COURT:  Okay.  Attorney Skalka?

15         MR. SKALKA:  Yes, Your Honor.  Thank you.  As we

16  noted in our in our papers and our reply -- I don't know if

17  you had a chance to see our reply this morning.  It was a

18  reply in response to the statement filed by Apple and -- and

19  Meta yesterday.  The Trustee believes very firmly and -- that

20  Your Honor has not issued any decision regarding the pending

21  motions for to dismiss the Apple and -- the motions filed by

22  Apple and Meta to dismiss their adversary proceedings.

23         Specifically, your joint briefing decision on

24  March 4th carved out the motions to dismiss files by Apple

25  and Meta on Page 9, and specifically indicated that those

1  matters were going to be reserved and set for hearing on

2  another date.  And there is no order entered in the adversary

3  proceedings on the pending motions to dismiss.

4         Also, just from a scheduling standpoint, there was

5  an amended complaint filed by the Trustee in the Apple

6  adversary proceeding, and there was a pending objection to

7  that motion filed by -- by Apple that needs to be addressed

8  prior to any decision on a motion to dismiss.

9         The reason why we're here, though, is that Apple

10  and Meta, despite the fact that there has been no decision

11  entered in those two cases, has filed a notice of appeal and

12  a motion to appeal as an interlocutory appeal with the

13  district court, claiming that Your Honor has indicated that

14  that the Court intends to bind Apple and Meta to the joint

15  briefing decision.

16         But, again, as our papers indicate and as your

17  decision clearly states, there's nothing in those -- in your

18  order that indicates that Apple and Meta will be bound by

19  that decision.

20         As a result, we think it's important and -- and --

21  because we need to respond by next Tuesday to the motion

22  to -- for an interlocutory appeal.  It's important to have

23  some clarity by Your Honor that there is still a pending

24  motion to dismiss so we can report that to the district court

25  and clarify that there's no need for an appeal.

1          We think it's a waste of court resources and not

2   necessary to proceed with an appeal when there is no order

3   entered in the adversary proceedings regarding Meta and

4   Apple.  And Meta and Apple raised an issue of jurisdiction in

5   their papers, but we note in our reply that there is no

6   divestiture of -- of jurisdiction by this Court because there

7   is no pending interlocutory appeal in the district court, and

8   there is no order from which an appeal can be had.

9          For those reasons, Your Honor, we think that a

10  clarifying confirmation order by Your Honor indicating that

11  the motions to dismiss are pending and we're ready to be

12  heard for scheduling of those motions is appropriate.

13         THE COURT:  Thank you.  Mr. Angelich, would you

14  like to be heard in response?

15         MR. ANGELICH:  Thank you, Your Honor.  George

16  Angelich again for Apple and Meta.  Apple and Meta filed

17  their motions for interlocutory appeal and notices of appeal

18  with respect to the Court's decision in order dated March 4th

19  entered in the main bankruptcy case.  That decision in order

20  at Page 9 and at Footnote 12 make references to other

21  Defendants.  In particular, Page 9 speaks to the fact that at

22  the top, the beginning of the paragraph says:

23         Despite raising some or all of the common issues,

24  other Defendants were unsure whether they wanted to be heard

25  at the same time as the Joint Defendants.

1            And that paragraph goes on to then refer to Apple

2    and Meta.  And then --

3            THE COURT:  Well, why don't you read what it says

4    so that the record is clear?  Why don't you continue to read

5    what you're reading?

6            MR. ANGELICH:  Yes, Your Honor, I will.

7            After the status conference, these Defendants

8    indicated they did not wish their motions to be heard at the

9    same time.  Accordingly, the Court also adjourned without

10   date the hearings on their motions.

11           THE COURT:  Right.

12           MR. ANGELICH:  And then there's the reference to

13   Apple and Meta.  And then in addition, at Footnote 12, there

14   is the --

15           THE COURT:  Well, when you say in addition, what

16   do you mean in addition?  What is Footnote 12 adding to that

17   you just read on paragraph -- on Page 9?

18           MR. ANGELICH:  Your Honor, my understanding of

19   all -- or some or all the common issues is a reference to the

20   arguments made by Meta and Apple, and that Meta and Apple had

21   made all or some, some or all the common issues that the

22   Court was ruling on in this decision in order.

23           THE COURT:  But your clients specifically filed

24   pleadings after the January 8th status conference in which I

25   asked you, I think, four times, maybe five, whether or not

1  your clients wanted to be part of the joint brief.  And you

2  said, at one point you didn't, at one point you did.  You

3  went back and forth three or four times, Counsel.  And I can

4  happily pull up the transcript.  It's a record of the case.

5          So we want the record to be clear.  So then I

6  asked you, and I said, whatever you want to do is fine, but

7  you need to inform the Court what you need to do, and you

8  need to do so in writing.  And I asked you and I instructed

9  you to do so by January 13th, and you did.

10          You filed documents in both -- you filed a

11  document, and I can give you the document number in the --

12  where you move to reschedule the hearings on your motions to

13  dismiss, one in Apple, one in Meta, and you say that you're

14  not a Joint Defendant, you're not a nonjoint -- you're

15  not -- neither a Joint Defendant nor a party to the September

16  25 order.  That's what your pleading says, Counsel.

17          MR. ANGELICH:  And that's correct, Your Honor.

18          THE COURT:  Under -- under Rule 11, Sanctionable

19  Standards.  You say you're not a party.  You're not a Joint

20  Defendant or a party to the order.  And isn't the memorandum

21  of decision the decision on the September 25th order?

22          MR. ANGELICH:  Your Honor, the decision and order

23  is a decision order on the main bankruptcy case doc.

24          THE COURT:  That is correct.  The September 25th

25  order was entered in the main bankruptcy case, Counsel, and

1  you were at the hearings.  And you decide -- you said on the

2  January 8th hearing that you didn't know whether you wanted

3  to be bound.  At one point, you said you did.  At one point,

4  you said you didn't.

5         And then you filed a document that you signed,

6  Counsel, that said you don't want to be part of it, that

7  you -- that the -- that it does not want to be part of the

8  joint brief process.  You said that in pleadings filed in

9  this Court.  Do you have any quarrel with that?

10         MR. ANGELICH:  Your Honor, I'll -- I'll

11  actually -- let me refine what you have just said.

12         THE COURT:  Well, I don't need you to refine

13  anything, Counsel.  That's what you said.  So why would you

14  need to refine it?

15         MR. ANGELICH:  Well, let me add --

16         THE COURT:  To -- see, that's a problem.  You've

17  been trying to change the record and rewrite the record in

18  this case since you've been involved in this case.  And, you

19  know, you can keep trying to do that.  But I don't think

20  courts are going to see through -- I think they will see

21  through that.

22         You see, I've asked you time and time again to

23  clarify your positions, and you -- you flip-flopped five or

24  six times, and now you want to refine something that you've

25  already said in writing that you signed?  I -- I'm having a

1 little trouble with that, Counsel.

2          MR. ANGELICH:  Actually, Your Honor, what I should

3 have said is that let me add to what Your Honor just said.

4 Your Honor also in -- in -- asked that anybody who wanted to

5 join the Joint Defendant's briefing was required at an

6 earlier stage to opt-in.  Meta and Apple did not op-in --

7          THE COURT:  Right.

8          MR. ANGELICH:  And never joined the Joint

9 Defendant's --

10          THE COURT:  Right.  So then what basis do you have

11 to an appeal in order in a main case that was not -- that has

12 no impact on your clients or your adversary proceedings and

13 in which, if you read the decision, have detailed appendices

14 and a caption that applies to every adversary proceeding

15 that's affected by that order?

16          And I would tell you, Counsel, I'd like you to

17 show me where in that caption Apple and Meta's adversary

18 proceedings are included in that decision.

19          MR. ANGELICH:  Your Honor, the decision order is a

20 decision order in the main bankruptcy case --

21          THE COURT:  You didn't answer my question.

22          MR. ANGELICH:  -- and -- and neither Apple --

23          THE COURT:  Counsel?

24          MR. ANGELICH:  --- nor

25          THE COURT:  Counsel, excuse me.  You need to

1  answer my question.  Where in the -- in the -- in the

2  pleading of that decision, when I go through all the captions

3  of all the parties that agreed to be bound by it, is there

4  the Apple or the Meta adversary proceeding caption?

5          MR. ANGELICH:  It's not in there, Your Honor.

6          THE COURT:  Okay.  Thank you.  Now, where in the

7  appendices that, if you read the decision, there are

8  appendices that list every motion that was filed by a Joint

9  Defendant or a non-Joint Defendant, and it cites just the

10 specific adversary proceeding in which those motions were

11 pending, which -- which the Court says is the subject of the

12 decision and to which those proceedings apply.  Where does it

13 list Apple or Meta's motions to dismiss?

14         MR. ANGELICH:  Apple and Meta is not in the

15 appendices.  It is not in the --

16         THE COURT:  Okay.

17         MR. ANGELICH:  It is not in a caption.

18         THE COURT:  All right.  Then go ahead.  You

19 keep -- go ahead with your argument.

20         MR. ANGELICH:  Your Honor, the decision order is

21 entered in the main bankruptcy case.  It contains conclusions

22 of law, and those conclusions of law are not limited.  If you

23 look at Footnote 12, it makes evident that any Defendant ---

24         THE COURT:  It makes evident?  It makes evident?

25 That's your argument --

 1            MR. ANGELICH:  Apple --

 2            THE COURT:  -- it makes evident?  Footnote 12.

 3            MR. ANGELICH:  It says any Defendant.

 4            THE COURT:  No, it doesn't say any Defendant,

 5    Counsel.  It says Joint Defendants and not -- whether the

 6    term is used as Joint Defendants or not Joint Defendants,

 7    when the -- if the use of the word Defendant is used, that's

 8    what it says.  It doesn't say any Defendant in all 300

 9    proceedings, Counsel.

10            And the other thing you conveniently forget to

11    mention when you make your argument about things being filed

12    in the main case was this was all about a mediation.  This is

13    all -- and parties came to this Court asking this Court,

14    which you keep saying, the Court determined these issues,

15    decided these issues, set these issues.  No, the Court

16    didn't.

17            So let's get that record straight as well,

18    Counsel, because it's replete with -- with absolute cites to

19    what the parties came to this Court and asked this Court to

20    do.  This Court didn't make up that process.  The parties

21    did.  And you decided at one point you wanted to be part of

22    it, and then you didn't want to be part of it.

23            So whatever.  You're not part of it.  So then why

24    are you arguing what you're arguing, Counsel?

25            MR. ANGELICH:  Your Honor, Apple and Meta never

 1  said that they were going to be a Joint Defendant.

 2          THE COURT:  Would you like me to show you in the

 3  brief on the transcript on January 8th where you said you did

 4  want to be bound by it?

 5          MR. ANGELICH:  Your Honor, no, that --

 6          THE COURT:  You did change your mind, but would

 7  you like me to show you that?  Because I'm happy to do that,

 8  Counsel.

 9          MR. ANGELICH:  If Your Honor would like to get

10  into the record of the January 8th hearing, I'm happy to do

11  that in a moment.  If I may address what Footnote 12 says, it

12  says:

13          Regardless of usage of Joint Defendant or non-

14  Joint Defendant, the determinations in Sections B and C of

15  the discussion apply to all Defendants that raise or join in

16  the arguments addressed.

17          THE COURT:  Right.  That raise --

18          MR. ANGELICH:  In --

19          THE COURT:  -- or join in the arguments addressed

20  in the decision that applies to all of the adversary

21  proceedings that are the caption of the case, Counsel.

22          MR. ANGELICH:  Well, on Page 9 --

23          THE COURT:  Fine.  You go ahead and make your

24  argument.  Go ahead and make your argument.

25          MR. ANGELICH:  Your Honor, on page 9, it does

1   say --

2            THE COURT:  You just have to know that Rule 11

3   sanctions could be available.  And if someone brings them

4   forth, I will entertain them.  This is -- you -- you -- what

5   you have done -- first of all, let's get to your response to

6   the Trustee's motion.  Let's talk about what you've cited in

7   that response, Counsel.

8            So you say, there's no dispute that an order has

9   not been entered in the adversary proceeding docket

10  adjudicating the motion to dismiss.

11           So you admit that the motion to dismiss hasn't

12  been adjudicated in the adversary proceeding.  How it could

13  be adjudicated in the main case, go ahead and make that

14  argument.

15           However, you then say, the subject of Apple's

16  appeal --

17           Well, this is -- I'm reading Apple's, but it's

18  verbatim in the Meta pleading that you filed since you

19  represent both of the Defendants, and you're making the same

20  argument.

21           -- the interpretation, applicability, and ultimate

22  effect of the decision and order entered in the main

23  bankruptcy case.  And then you say, and you quote from a

24  case -- by the way, Counsel, you didn't quote it properly, so

25  you might want to take a look at that.  It says, "As a rule,

1  a notice of appeal is an event of jurisdictional

2  significance.  It confers jurisdiction on the Court of

3  Appeals and divests the district court of its control over

4  those aspects of the case that are involved in the appeal."

5              So that quote that you have, Counsel, from Satcom,

6  is not properly quoted, number one.

7              Number two, you don't go on to continue to say

8  what that case says, which it then cites to the Second

9  Circuit Court of Appeals, which has a very different opinion

10  of what you've stated as a quote in your in your brief -- in

11  your response.

12              The Satcom case then says, citing the Second

13  Circuit case of Rogers --

14              Which you cite, but you don't add the language in

15  Rogers that is cited, and then in the case before that,

16  which, goes back to 1980, a Second Circuit case in -- from

17  1980, the Leonard case, which says the following, and I

18  quote:

19              "Whatever the superficial attractiveness of a per

20  se rule that filing of a notice of appeal automatically

21  divests the district court of jurisdiction as to matters

22  covered by the notice, such a rule is subject to abuse.  And

23  our application of the divestiture rule must be faithful to

24  the principle of judicial economy from which it springs."

25              You didn't cite that in your response when you

1  insert when you said in this document that you filed

2  yesterday, subject to Rule 11 sanctions, that this Court has

3  no jurisdiction to address what the Trustee has stated.  You

4  didn't cite that at all, Counsel.  And what you did cite, you

5  cited improperly.  That's not -- that's not real good,

6  Counsel, for your argument.  That doesn't really help, does

7  it?

8         So what else would you like to say for the record?

9         MR. ANGELICH:  Well, Your Honor, I would wrap it

10  up by simply adding, Your Honor, that we're appealing from a

11  decision order in the main bankruptcy case.  That decision

12  order is on the main bankruptcy case docket.

13         It contains conclusions of law.  There are other

14  instances where orders from the main bankruptcy case have

15  been brought into the adversary proceedings.  And one such

16  example of that is the avoidance procedures order.

17         THE COURT:  Yeah.  You know, counsel, you can go

18  on all day.  When you make the record accurate, then that'll

19  be fine.  But you're not making the record accurate, and that

20  is something -- I guess that's your tactic.  That's your

21  decision of how you want to proceed in these matters.  But

22  that is not an accurate reflection of the record, and that's

23  up to you.

24         The other thing you'd never cite to, by the way,

25  when you say that the Court is divested of jurisdiction

1   because you filed a motion for leave to appeal, which the

2   Second Circuit cases that I've just cited and read to you

3   that you missed -- didn't cite properly and didn't add the

4   language, that clearly says the Court's not divested of

5   jurisdiction, you didn't cite to 28 USC 158(a)(3), which

6   says, the District Court of the United States shall have

7   jurisdiction to hear appeals (a)(3) with leave of the Court

8   from other interlocutory orders and decrees of bankruptcy

9   judges entered in cases and proceedings referred to the

10  bankruptcy judges under Section 157 of this title.

11          An appeal under this subsection shall be taken

12  only to the District Court for the judicial district in which

13  the bankruptcy judge is serving.

14          So there's a statute that you didn't cite to,

15  counsel, that answers your question, that tells you that this

16  Court is not divested of jurisdiction, yet you decided to put

17  in a document that you signed that this Court has no

18  jurisdiction, that it's divested of jurisdiction to address

19  the Trustee's motion.

20          Now, are you sure you want to stand by that

21  statement, counsel?

22          MR. ANGELICH:  Your Honor, we had very little time

23  to file our response.  Our response is not contesting in any

24  way that an order has not been -- that an order --

25          THE COURT:  That's not my question.  You said in

1  your paper that this Court was divested of jurisdiction.  My

2  question is, do you want to change that statement, counsel?

3  Because I just read you a statute that says it's not.

4         MR. ANGELICH:  Your Honor, I'm not going to argue

5  --

6         THE COURT:  And I read you cases that says it's

7  not.  But you, well, you had very little time?

8         MR. ANGELICH:  Your Honor, I'm not going to argue

9  with Your Honor about the law.  You're --

10         THE COURT:  I'm insulted that you're wasting this

11  Court's time and a District Court's time on something that

12  you're clearly wrong about, counsel, clearly.  Yet you then

13  decide to put in a paper that this Court is divested of

14  jurisdiction.

15         I don't know how you do that.  You're a lawyer.  I

16  don't know how you do that.  You had very little time?

17         MR. ANGELICH:  Your Honor, we --

18         THE COURT:  You are obligated to do the legal

19  research and put forth the law.  And if you set forth the law

20  incorrectly, then someone could think, wow, maybe under Rule

21  11, they set forth that law incorrectly to, let's see, delay,

22  continue with a frivolous appeal, all different kinds of

23  things that people could think about that, couldn't they?

24         So I ask you, do you want to stand by your

25  statement that this Court is divested of jurisdiction?

1          MR. ANGELICH:  Your Honor, I think it would be a

2    mistake at this stage to dispute that with Your Honor.  You

3    know, we will retract the divestment argument and, you know,

4    sort of strike that from our response.

5          THE COURT:  Okay.  Thank you.  Then I'll rule on

6    the motion because you said I couldn't rule on the motion.

7    So and you also said very interesting things in your response

8    about that somehow the Court entered an administrative docket

9    entry order, scheduling a state -- a case conference.  It's

10   not an administrative docket entry, counsel.

11          It's an order scheduling a status conference.  You

12   requested the parties await the result of the District

13   Court's determination of the pending motion for interlocutory

14   appeal.  Well, that request is denied.  I'm going to rule on

15   the Trustee's motion.

16          So what is your response to the Trustee's motion

17   with regard to the fact that the Trustee is asserting that

18   the motion to dismiss has not been decided, and therefore,

19   your appeal of the main case order is not accurate.  What's

20   your response to that?

21          MR. ANGELICH:  Your Honor, we have never disputed

22   that the Court did not decide our motion to dismiss.  There's

23   no order entered in the adversary proceeding docket.  We are

24   not appealing from anything that was from the adversary case.

25   There's no appeal from the adversary case, and we're not

1    contending that Your Honor entered an order or decided the

2    motion to dismiss.

3              THE COURT:  Then you're contending that Footnote

4    12, in which the word "defendant" is a lowercase d, not a

5    defined term, is the basis for you to file an appeal, an

6    interlocutory appeal.  That's your contention.

7              MR. ANGELICH:  Your Honor, on Page 9, it says,

8    some or all issues were raised, and it goes on to refer to

9    Meta and Apple.

10             THE COURT:  Are you sure you want to take out of

11   context, counsel?

12             MR. ANGELICH:  Your Honor, I don't want to take it

13   out of context.

14             THE COURT:  Well, that's what you're doing.

15             MR. ANGELICH:  I'm happy to speak to it.  I don't

16   need to take it out of context.

17             THE COURT:  You just admitted that the appendices

18   and the caption only relate to all these adversary

19   proceedings of parties who came before the Court and wanted

20   the Court to decide.  And you also admitted that you filed a

21   paper that said you didn't want to be part of it.  So can you

22   really stand there and say that, what you just said?

23             MR. ANGELICH:  Your Honor --

24             THE COURT:  That Page 9, where you just read it

25   into the record, is a basis to an appeal?

1            MR. ANGELICH:  Your Honor, what we wrote and what

2    we concluded by reading Page 9, at the top of Page 9, is --

3    where it says --

4            THE COURT:  Don't you have to conclude in good

5    faith, counsel?

6            MR. ANGELICH:  It is in good faith, Your Honor.

7            THE COURT:  How is it in good faith, counsel?

8            MR. ANGELICH:  Your Honor, it's in good faith that

9    some or all the common issues, right, that paragraph mentions

10   Apple and Meta.

11           THE COURT:  As parties who decided not to be part

12   of the process.  That's what it says, counsel.  I don't have

13   to look at it.  I know what it said.  Are you telling me that

14   it doesn't say -- that that paragraph that you're referring

15   to doesn't say -- doesn't make an express statement that

16   Apple and Meta decided not to be part.

17           And that the -- and it says even more, and that

18   the hearing on the motions to dismiss in Apple and Meta would

19   be scheduled to a date in the future.  I think those are the

20   exact words, counsel.  So then how is that a basis?  Tell me

21   how that's a good-faith basis because I'm not seeing it.

22           MR. ANGELICH:  Your Honor, we read that page,

23   Paragraph 9 -- I'm sorry -- that paragraph at the top of page

24   9 to mean that the common issues decided by this decision and

25   order were also issues that were raised, some or all, by Meta

1    and Apple.

2                    THE COURT:  Okay.  You've created your record, and

3    good luck with it.  Now, is there anything else you'd like to

4    say in response to the Trustee's motion?

5                    MR. ANGELICH:  We have nothing further, Your

6    Honor, with respect to Trustee's motion.

7                    THE COURT:  All right.  And you've withdrawn your

8    argument in the statement in response to the Trustee's motion

9    that this Court is divested from jurisdiction?

10                   MR. ANGELICH:  Yes, Your Honor.

11                   THE COURT:  Okay.  All right.  Thank you.  With

12   regard to the remaining matters, we need to talk about

13   scheduling the motions to dismiss, counsel, that you've so

14   wanted to schedule for such a long time now.  But now, you

15   don't want me to schedule the hearings on the motion to

16   dismiss, or do you?

17                   MR. ANGELICH:  Your Honor, I think it would be

18   acceptable to schedule a hearing on the motions to dismiss.

19   Yes, Your Honor.  That would be great.

20                   THE COURT:  Attorney Skalka?

21                   MR. SKALKA:  Your Honor, the Trustee has no

22   objections to scheduling the hearing.  I did want to note,

23   again, that in the Apple case, there is this --

24                   THE COURT:  I understand that there's an amended

25   complaint filed and a motion for leave to amend file to which

1  Apple and Meta have filed an objection.  I mean, Apple.  It's

2  only in Apple.  I apologize.

3        MR. SKALKA:  And, Your Honor, the Trustee would

4  not object if Apple wanted to supplement their motion to

5  dismiss with regard to the amended complaint.

6        THE COURT:  And what's wrong with that, counsel?

7  What's wrong with you -- if I amend -- if I allow -- if I

8  grant leave to amend the complaint, what's wrong with you

9  then having, an opportunity to supplement your motion to

10  dismiss with regard to the -- I'm not saying I've decided

11  this.  I'm asking a question with regard to the amended

12  complaint.  What would be the prejudice to your clients

13  there?

14        MR. ANGELICH:  Your Honor, it would be helpful, I

15  think, for ruling on the motions to dismiss in the complaints

16  as they are today.  And I think it would help level set where

17  we are in the adversary proceedings and our arguments vis a

18  vis the existing complaints.

19        The motion to amend, Your Honor, we're not

20  prepared to argue that today other than to say, you know,

21  we've had a chance to look at it.  We've responded to it, of

22  course.  You know, one of the things that we've identified is

23  that, you know, we would like, you know, at least an

24  opportunity to understand whether our arguments on the motion

25  to dismiss, you know, where they take us on the plausibility

1   issues and then go from there.

2           And I think it would also give folks the chance to

3   level set vis a vis the amendments because some of the

4   arguments on plausibility may affect the amendments.

5           THE COURT:  Okay.  That may be true.  I don't know

6   that specifically, but my recollection of the amended

7   complaint, but I will ask Attorney Skalka, and then we can --

8   my recollection is that the only difference is additional

9   transfers.

10          MR. SKALKA:  That's correct, Your Honor.

11          MR. ANGELICH:  Well, Your Honor, there are --

12          THE COURT:  That were not alleged in the original

13  complaint, and I agree with that.  They were not alleged in

14  the original complaint.

15          MR. ANGELICH:  There are other revisions to the

16  complaint though, Your Honor.  There are other amendments.

17          MR. SKALKA:  There are additional transferors,

18  alter ego entities, and there's an update regarding the

19  Debtor's criminal proceedings.  But the claims are the same

20  claims that were originally filed, Your Honor, pre-petition

21  fraudulent transfer claims and post-petition transfer claims.

22          THE COURT:  All right.  Well, then -- go ahead.

23          MR. ANGELICH:  There is also, I think, there is an

24  additional change to identifying a creditor for purposes of a

25  qualifying creditor.  I believe they noted the IRS.  And

1  there's also, I think, clarification on which version of the

2  New York statute is applicable and among other types of

3  revisions like that.

4         So before we get into, you know, filing another,

5  you know, supplement to address these other issues, I think

6  we have a pretty clear sort of record to date on what the

7  motion to dismiss is addressing.  I think we have generally

8  an idea, direction, and heading on some of the issues that go

9  to the legal issues raised in our motion to dismiss.

10         And then there are the plausibility issues.  And

11  so, it would be our request that those be ruled on now or

12  soon.

13         THE COURT:  Okay.  I understand your request.

14  Attorney Skalka, anything further on that?

15         MR. SKALKA:  Your Honor, I just think for an

16  efficiency standpoint, it would be -- it would make sense to

17  -- a determination of whether or not the amended complaint

18  would be allowed and have the motion to dismiss address the

19  amended complaint, if it's going to be permitted.

20         MR. ANGELICH:  There's also the matter, Your

21  Honor, of the pending appeal, with respect to --

22         THE COURT:  What pending appeal?  You don't have

23  pending appeal.  You have a motion for leave to appeal.  You

24  don't have a pending appeal.  Would you like me to read what

25  the Second Circuit has to say about that, too, from that same

1  case?

2          MR. ANGELICH:  I'm sorry, Your Honor --

3          THE COURT:  You don't have a pending appeal.

4          MR. ANGELICH:  Are we talking about the same

5  appeal, Your Honor?

6          THE COURT:  Well, what appeal are you talking

7  about?

8          MR. ANGELICH:  We've -- Apple and Meta, along with

9  other defendants, have appealed the second and third --

10          THE COURT:  Oh, the extension of time appeal.

11          MR. ANGELICH:  Yes, Your Honor.

12          THE COURT:  Okay.  I think that's an interlocutory

13  appeal, too, isn't it?

14          MR. ANGELICH:  I don't think so.

15          THE COURT:  I think it is.  I think it is,

16  counsel.  An extension of time?  You think that's an appeal

17  as a right?

18          MR. ANGELICH:  I think that what we're going to

19  see is a ripeness argument from the Trustee.

20          THE COURT:  But answer my question.  Do you think

21  that's an appeal as a right?  A denial -- a granting of an

22  extension of time, which, by the way, is my -- again, my

23  recollection is that that order reserved the right for any

24  defendant to raise the issues about the extensions of time in

25  their own specific adversary proceedings.

1          So you think that's a final order?

2          MR. ANGELICH:  Your Honor, it appears that we

3    stand corrected, and I think it may very well be that all of

4    the parties who filed appeals or notices of appeal on this

5    subject have to deal with this, not just Apple and Meta.

6          THE COURT:  Okay.  I understand your point with

7    regard to the extension of time.  But I, you know, in any

8    event, I think I understand all the issues.

9          So I would like to make sure Attorney Skalka and

10   Attorney Angelich, is there anything else that we need to

11   discuss in connection with the court-ordered status

12   conference in the main case related to these two adversary

13   proceedings and the decision that was issued in the main case

14   on the joint brief that was brought to the Court by

15   defendants that are in mediation and outside of mediation who

16   argued that their due process rights were going to be harmed

17   if they weren't heard at the same time and then were able to

18   join in and did so, as opposed to those who did not but were

19   aware of the entire process and participated in hearings --

20         And the issues regarding scheduling the motions to

21   dismiss in the Apple and Meta, adversary proceedings and

22   addressing the motion for leave to amend the complaint in the

23   Apple adversary proceeding?

24         MR. SKALKA:  Nothing further, Your Honor.

25         MR. ANGELICH:  No, Your Honor.  But I just -- we

1  are also asking for the motion for order to confirm.

2         THE COURT:  Yes.  Yes.  Of course.  I'm sorry.

3  That is why we're all here, isn't it?  But that is -- all of

4  these matters, I have looked at over the course of the last

5  few days, obviously.

6         Trustee Despins, is there something you wanted to

7  add?

8         MR. DESPINS:  Yes, Your Honor.  Which is that if

9  Your Honor is going to find that you did not rule on their

10  motion to dismiss, which is pretty obvious, they need to

11  withdraw this leave to appeal because we're incurring fees to

12  fight that when they've agreed that the Court can schedule a

13  hearing on the motion to dismiss.  They just agreed to that.

14         So they can't have a hearing on a motion to

15  dismiss and prosecute an appeal of an order that's never been

16  entered.  So that motion --

17         THE COURT:  I understand your point.

18         MR. DESPINS:  -- needs to be withdrawn.

19         THE COURT:  I understand your point.  So what I

20  will do then is I am going to rule on the motion for order

21  confirming that the bankruptcy court did not decide the

22  Defendant's motion to dismiss filed in the Apple and the Meta

23  cases.

24         And I am going to, as has now been stated on the

25  record by Attorney Angelich on behalf of Apple and Meta, the

1  portion of the statement in response to the Trustee's motion

2  for entry of order, that is verbatim in the responses filed

3  by Apple and Meta.

4          And I happen to have the Apple decision, excuse

5  me, response in my hand, which is ECF Number 79, in the Apple

6  matter, as I just stated.  And there is a corresponding

7  number that I can find in the Meta adversary proceeding.  But

8  I am going to rule that -- I'm going to grant the Trustee's

9  motion for entry of order.

10          Meta and Apple's counsel has stated on the record

11  that they've withdrawn the portion of their reply that says

12  this Court has no -- has been divested of jurisdiction, which

13  this Court finds is an incorrect analysis of the law at best

14  and possibly an analysis designed to delay proceedings, which

15  could or could not result in further action being taken in

16  connection with that statement in response to the Trustee's

17  motion.

18          I will enter an order granting the Trustee's

19  motion, and I will make sure that the order says what it is.

20  And it is not what Apple and Meta claim, that I would be

21  expanding or altering the memorandum of decision and order.

22  That's a wrong argument.  And it would not be, as Meta and

23  Apple argue, it would not provide no benefit to the District

24  Court's consideration of this issue.

25          On the contrary, I think it would provide a great

1    benefit to the District Court because these notices of appeal

2    and motions for leave to appeal appear to be frivolous, and

3    they appear to have been filed to delay the proceedings, in

4    these adversary proceedings, the main case, and in connection

5    with the mediation that is undertaken by parties who have

6    agreed to be part of mediation and part of the joint brief

7    issues that was brought to the Court by the parties, not

8    determined by the Court.

9           This Court has neither heard nor decided the

10   motions to dismiss in the Apple and Meta adversary

11   proceedings in whole or in part, and nothing in the record

12   suggests anything to the contrary.

13          Apple's reliance on the use of the defendant,

14   lowercase d, in Footnote 12 of the joint brief is tenuous at

15   best.  I think I've already reminded counsel of their

16   obligations to the Court and to all parties when they sign a

17   pleading, setting forth law[ which is incorrect, and reciting

18   or attempting to rewrite or recharacterize the record of the

19   main case and the related adversary proceedings.

20          So the motion is granted, and an order will enter.

21          With regard to the scheduling on the motions to

22   dismiss in both Apple and Meta and with regard to the pending

23   motion for leave to appeal in the -- I'm sorry, leave to

24   amend the complaint, I apologize, in the Meta -- in the Apple

25   adversary proceeding, I'm going to take those matters under

1  advisement, but I will -- I would assume that there will be,

2  ruling on those issues and a scheduling order issue in very

3  short order.

4           Is there anything else we need to accomplish or

5  discuss this afternoon?

6           MR. ANGELICH:  I'm sorry, Your Honor.  Could you

7  just repeat that last part?  I just want to make sure I heard

8  it correctly.

9           THE COURT:  What do you think I said?  And then

10 I'll tell you if you heard it correctly, or we can play back

11 the tape if that's --

12          MR. ANGELICH:  I'm sorry.  I may have just

13 misunderstood.  But what you're taking under advisement is

14 the motion to amend or the motion to amend and the two

15 motions to dismiss?

16          THE COURT:  What I'm taking under advisement is

17 scheduling the motions to dismiss and the motion to amend the

18 complaint.  Now, obviously, in Meta, there is no motion to

19 amend the complaint.  So all I'm taking under advisement in

20 Meta is when I'm going to schedule the motion to dismiss.

21          With regard to Apple, there is a pending motion

22 for leave to file an amended complaint.  You've asked me to

23 rule on the motion to dismiss despite the pending motion for

24 leave to amend the complaint.

25          The Trustee has asked, or the Plaintiff has asked

 1  just the opposite, so I need to make a determination on that.

 2  Is there anything I've said that isn't clear?

 3              MR. ANGELICH:  No.  Thank you, Your Honor.

 4              THE COURT:  Okay.  Thank you.  All right.  Then I

 5  think that concludes our hearings and status conferences

 6  today with regard to the Apple and Meta adversary proceedings

 7  and the main case status conference related to those

 8  adversary proceedings.  All right.

 9              So now we can move on to the other matters at 2

10  o'clock.  Thank you.

11              MR. ANGELICH:  Thank you, Your Honor.  May I be

12  excused?

13              THE COURT:  Yes, you may.  Thank you.

14              All right.  Now, we're now moving on to the

15  matters at 2 o'clock that relate to the motion to enforce the

16  preliminary injunction.

17              And I understand and I'm aware that there's been a

18  motion filed by counsel for Mei Guo to close the courtroom,

19  and there's been an objection filed by the United States

20  Trustee with regard to that motion.  So who's going to be

21  arguing the motion to close the courtroom?

22              MR. MORIARTY:  James Moriarty on behalf of the

23  Defendant, Mei Guo.

24              THE COURT:  Okay.  Please proceed.

25              MR. MORIARTY:  May I just have one moment, Your

 1   Honor?

 2            THE COURT:  Sure.  Of course.

 3            MR. MORIARTY:  Thank you.  Can I approach?

 4            THE COURT:  Please.

 5            MR. MORIARTY:  Thank you.  Good afternoon, Your

 6   Honor.  Again, James Moriarty on behalf of Mei Guo, the

 7   defendant in the adversary proceeding.  We filed the motion

 8   on behalf of Miss Guo this past Friday to close the courtroom

 9   and, by extension, seal the transcript of the hearing.

10            I don't know that there's anybody in the

11   courtroom, other than somebody who's with Miss Guo who would

12   be excused, who is not either a party to the protective order

13   or has a statutory right to be here.

14            THE COURT:  That may be -- I don't know that, but

15   if everybody agrees to that, does that solve the problem?

16            MR. MORIARTY:  It solves the problem of sealing

17   the courtroom provided nobody else walks in.

18            THE COURT:  Well, I mean, we can talk about that.

19   Go ahead.

20            MR. MORIARTY:  It doesn't solve the problem of

21   sealing the transcript going forward.  So there's no dispute,

22   Your Honor, that there is a right of the public to have

23   access to court proceedings.  But as this Court recently

24   stated in the Despins, Wildes and Weinberg, PC case, that

25   right is not absolute.

1           And if we look at Local Rule 5(e)(1)(a) of the

2    District Court local rules, which applies to bankruptcy

3    proceedings pursuant to Local Bankruptcy Rule 97-1, the power

4    to close a courtroom or to exclude the public from

5    proceedings to which a First Amendment right to access

6    attaches shall be used sparingly and only for clear and

7    compelling reasons.

8           So it can be used, but it's sparing and for clear

9    and compelling reasons.  So we have clear and compelling

10   reasons in this case.

11          As we detailed in our papers, Miss Guo has been

12   subject to a campaign of harassment both in the U.S. and, as

13   she indicated in a declaration that she filed on the main

14   docket a couple of years ago, within China.

15          When the Trustee filed his motion for contempt in

16   this case, he attached Miss Guo's bank statements.  They were

17   not designated as confidential by the producing party.  We do

18   not fault the Trustee for doing that.  But --

19          THE COURT:  Well, it wasn't the Trustee's job to

20   do it.  It was the bank or you as counsel to the party.  The

21   bank sent a letter saying they were going to be -- I just

22   want to be clear about that.  I understand you're saying it's

23   not the Trustee's -- you're not holding them at fault, but it

24   wasn't their -- it wasn't within their purview.

25          MR. MORIARTY:  And I'm not saying it was, Your

1  Honor.

2          THE COURT:  Okay.

3          MR. MORIARTY:  That wasn't my point at all.

4          THE COURT:  Well, I just wanted to make that

5  clear.

6          MR. MORIARTY:  No, I understand.  So there was an

7  individual or individuals who accessed the filing.  It's

8  publicly available.  And they shot video of various locations

9  where Miss Guo had frequented based on her bank statements.

10         The video was then posted to social media with

11 comments.  Clearly, it was intended to harass her, but it

12 also seemed intent on intimidating her, showing people where

13 she had frequented.

14         We expect that there will be testimony today where

15 Miss Guo will identify people who have helped her

16 financially.  And those people will also be put at risk of

17 both intimidation, harassment, and so we're asking that the

18 Court seal the hearing to protect those people.

19         There is a protective order that's in place, as

20 Your Honor is well aware.  It specifically provides for

21 designating material as confidential, if it contains personal

22 information, and highly confidential, if there is a concern

23 for personal safety, and that is what we have here, is we

24 have personal information, places where Miss Guo, who is not

25 the debtor, she's a party to an adversary proceeding and now

1    is being accused of having violated an order.

2             And there's a contempt motion that's pending

3    against her, but she's not the debtor.  And her personal

4    information is before the Court only because she's a

5    defendant in an adversary proceeding, and there's this motion

6    pending.

7             We're only asking that this particular proceeding

8    be sealed, not the entire adversary proceeding.  There have

9    been other filings in the adversary proceeding that have been

10   sealed.  There have been a number of orders that have been

11   entered in the main docket that have been sealed.

12            Early on, there was an affidavit that was

13   submitted by an individual that was also filed under seal.

14   The Court allowed that to be sealed for safety concerns, so

15   we're asking for the same thing here for Miss Guo.

16            Logistically, Your Honor, sealing is also

17   appropriate.  There are a number of documents that have been

18   filed as exhibits, some designated as confidential.  Miss

19   Guo's deposition transcript has been designated as highly

20   confidential because of the timing within which it was taken

21   compared to when we're here today.

22            So if we don't seal the entire hearing, it's

23   likely that we would be moving in and out of confidential,

24   non-confidential, highly confidential, non-confidential, and

25   logistically, I just don't see how that would work.

1              The Trustee has consented to the relief.  I

2    understand the U.S. Trustee has opposed it.  The U.S. Trustee

3    obviously has statutory right to access, and as I said, to

4    the extent that the parties here are subject to the

5    protective order, they have rights to be here.

6              And I'm happy to answer any questions, Your Honor.

7              THE COURT:  I do not have any questions at this

8    time, but I would like to hear from the U.S. Trustee's

9    office.  And then as I -- well, I guess I do have a question

10   insofar as have no knowledge who is in this court -- if

11   everyone in this courtroom is signed on to the protective

12   order.  You're saying they have.

13             MR. MORIARTY:  I don't know that for a fact, Your

14   Honor.  I said if they have.

15             THE COURT:  Okay.  Well, then we might need to

16   figure that out, right?

17             MR. MORIARTY:  Yes.  Take a poll.

18             THE COURT:  Okay.  So I'm not going to do that

19   right at the moment, but I have no idea.

20             MR. MORIARTY:  Okay.

21             THE COURT:  So I mean, I know parties at the table

22   are, but I don't know about anybody in the courtroom itself.

23   So all right.  But let's hear from the United States Trustee,

24   and then we'll see where things stand.

25             MR. MORIARTY:  Thank you, Your Honor.

1          THE COURT:  Thank you.

2          MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

3  Claiborn for the U.S. Trustee.

4          THE COURT:  Good afternoon.

5          MS. CLAIBORN:  Your Honor, yesterday afternoon,

6  the U.S. Trustee filed an objection to the motion to seal.

7  That objection is at ECF Number 163 in this adversary

8  proceeding.

9          Given the shortness of the time frame between that

10  motion being filed seeking the sealing on Friday night and

11  Monday, it's perhaps more concise than my ordinary pleadings

12  for this Court, but, notwithstanding that, it's making the

13  very salient and important limited point that there is a

14  presumption of public access.

15          It's set forth in a variety of places in the

16  rules, and it is the foundation upon which bankruptcy courts

17  operate.  There's an expectation that anyone who wants to

18  know what's going on in any particular case should have the

19  right to come and be here and participate.

20          So the relief being sought today, is problematic

21  on a number of levels.  First of all, there's a request to

22  seal the courtroom.  There's a request to seal the

23  transcript.  And then there's the argument, also, that the

24  protective order that's been signed by various parties is a

25  basis upon which to seek the sealing.

1          There's a difference between people agreeing how

2    they want to treat documents and under which code of conduct

3    they want to proceed using those documents.  That's what the

4    protective order is.  That's not applicable to generalized

5    hearings before this court.  It only speaks to how parties

6    have agreed to use their documents.

7          When parties come to this court and ask for relief

8    and ask to participate as plaintiffs and defendants in

9    adversary proceedings or as creditors and debtors in main

10   bankruptcy cases, they're doing so with the expectation that

11   they're going to be in the public realm.

12         And so Rule 5001 specifically provides that all

13   proceedings in the bankruptcy court are supposed to be in

14   open court, and the backdrop for that is echoed in the

15   (inaudible) Section 107, which speaks about sealing and how

16   you go about sealing a particular document to protect it from

17   full viewing or full access.

18         So the first thing I want to say is that,

19   unequivocally, the U.S. Trustee opposes the sealing of this

20   hearing today.  Second of all, the U.S. Trustee opposes

21   sealing of the transcript.  Third, that the protective order

22   that the parties have agreed to is not binding on this

23   particular proceeding or something that dictates the outcome

24   of the sealing decision.

25         The U.S. Trustee's point, I think, is being made

1    on behalf of not just the litigants who are here, but it's an

2    entire public process that is bankruptcy.  It's a transparent

3    process.  It only functions properly when there is

4    transparency to it and there is no need in this particular

5    moment to make a decision that restricts the public access to

6    this.

7            Should we get to a place in this hearing today

8    where the Court feels that the parties may have met their

9    grounds to seal a particular document or a particular line of

10   questioning, Your Honor could take that up at that particular

11   time, but the U.S. Trustee definitively opposes the idea that

12   we start and end this proceeding under seal.

13           The other thing that I would say is that the

14   motion that was filed on Friday night is, I would say,

15   generalized as to the harm that is predicted and is

16   discussed.

17           Balanced against that is the fact that a lot of

18   the information that seems to be on topic for today, and I'm

19   not privy to what exactly the Trustee plans to put forward in

20   his case seeking contempt, but based on the motion that was

21   filed, we're talking about transactions that are on documents

22   that have been on the public record for months.

23           The Trustee's motion was filed back in December,

24   and we're now here in March.  So they've been out there in

25   the public realm for a long time.

1          Second of all, to the extent that people's use of

2     their funds is something that they don't want to discuss in

3     public, that might be a personal preference, but that's not

4     the subject of something that you absolutely have to seal.

5          To the extent that we're talking about the actual

6     locations of wherever Miss Guo lives, that certainly is

7     personally identifiable information, then that could be

8     sealed.  And I don't think there's any attempt today to talk

9     about where anyone is living on a particular day.

10          I think there's some understanding that there

11     might be something about how we spend our money about where

12     we live and what the cost is associated with that.  But with

13     respect to Miss Guo's personal residence, I think that that

14     could be dealt with by the Court in a very limited fashion

15     and would not necessitate a sealing of the entirety of this

16     proceeding.

17          And then as to the idea that we can base the

18     sealing request on what's happened in other time frames in

19     this case and other decisions made in this case, I would say

20     that each decision that the Court makes to seal a document is

21     a particular decision based on the facts and circumstances

22     put before the Court on that particular day.

23          And here, it's Miss Guo's burden to demonstrate

24     that there's a basis to cut off all public access to this,

25     and that that is a, one, appropriate to even request and two,

1   has a basis for requesting it.

2          And I think that the motion that's before the

3   Court today and the argument that was just put forward

4   doesn't meet that criteria.  The public's access rights are

5   superior in this case and in every bankruptcy case, set forth

6   by the rules in the process and that parties have to abide by

7   the outcomes of those particular rules.

8          So Your Honor, again, I'm going to ask that the

9   Court deny the motion to seal the courtroom and deny the

10  corresponding motion belief that's in there to seeking the

11  sealing of this particular transcript for today, and to

12  specifically reject the protective order as a basis to grant

13  the sealing.

14          THE COURT:  Thank you.

15          MS. CLAIBORN:  Thank you.

16          THE COURT:  Any response, Attorney Moriarty?

17          MR. MORIARTY:  Yes, please, Your Honor.  Briefly.

18  As I mentioned before, Miss Guo is not a creditor or a

19  debtor.  Miss Guo's bank statements have been on the public

20  docket, but Miss Guo has produced thousands of pages of

21  documents to the Trustee in response to the Trustee's

22  discovery requests, including bank statements from other bank

23  accounts, bank statements that are not on the public docket,

24  email correspondence regarding goods or services that Miss

25  Guo may have been purchased or been privy to.

1          So the information that, will come out today, I

2    expect, at least the majority of it, is not on the public

3    docket and has not been on the public docket.  And the

4    interests of the public are protected by both the creditors

5    committee and by the U.S. Trustee.

6          The harm that Miss Guo is concerned about and has

7    put forth is not generalized.  It's specific to her.  We

8    identified in our filing a number of social media posts

9    regarding Miss Guo, regarding her coming to court.  This

10   hearing was previously scheduled on two occasions, and it was

11   continued.

12         There were posts suggesting that people should try

13   to take pictures of her in court.  So Miss Guo does have

14   concerns, and she has real concerns.  And I haven't lived her

15   life, but they're her concerns.  They're legitimate.  She's

16   put forth evidence to the Court showing the use of

17   information from the court, from the public docket, in social

18   media to harass her, and she's concerned that that will

19   continue.

20         And it will also happen to those who, as I said, I

21   believe will be identified today as having helped her.  The

22   Court obviously has the authority to unseal the transcript,

23   to unseal any document that's been sealed.  I know from

24   reading other opinions and other adversary proceedings and in

25   the main case that from time to time, the Court does enter

1   orders where the Court unseals documents.

2            If the Court feels at the end of this hearing that

3   the sealing was inappropriate, obviously, the transcript can

4   be unsealed.  And with that, Your Honor, I'd be happy to

5   answer any questions.

6            THE COURT:  Well, I don't know if it's a question,

7   but we have in the past, in proceedings in this case, handled

8   matters where, such as this, there could be a public portion

9   of the hearing, and there could be a portion that's sealed.

10  You're going to -- right now, everything you've said and the

11  U.S. Trustee's office has said isn't subject to being sealed.

12           I mean, what could be sealed, possibly, is certain

13  testimony or documents that might be impacted for the reasons

14  you've stated in seeking sealing or in connection with the

15  protective order.

16           If you have an issue with the Court proceeding in

17  the way that we've proceeded in the past, where the hearing

18  proceeds and then when an issue comes up that is either

19  asserted to be a basis to seal in your motion or relates to

20  the protective order that it can't be sealed at that time.

21  We've carved them out before.

22           I mean, we've talked about this is the things we

23  can talk about without there being any issue.  I mean, I

24  don't think that you can say every single thing that is going

25  to be put into this hearing today, testimony and evidence

 1   otherwise, should be sealed.

 2          So for example, right now, the discussion we've

 3   had, none of this needs to be sealed.  So the transcript of

 4   the hearing, you know, so there could be a point where we

 5   say, okay, from this point forward, we're going to seal this

 6   portion of the hearing.  But I don't think it makes sense to

 7   seal the entire hearing that we're having right now.

 8          With regard to the exhibits and the testimony,

 9   that may be different, and we've handled that in the past

10   before.  And I agree with you, at least my recollection of my

11   review of it doesn't mean I'm right, but of the list of

12   witnesses and exhibit is -- there are things that have been

13   put out in the public already.

14          Are you asking the things that have been put out

15   in the public already to be sealed?

16          MR. MORIARTY:  No, Your Honor.  And the vast

17   majority of the documents that are on the public docket are

18   pleadings that were filed in this case.  There are a couple

19   of documents that we filed on behalf of Miss Guo that we did

20   not file under seal, but there are a number of documents,

21   specifically the Trustee's exhibits, that have been filed

22   under seal.  As I said, bank statements --

23          THE COURT:  Well, let's go through -- you've got

24   one and two are definitely -- have been designated as

25   confidential on your exhibit lists.  Then, three is an

1    excerpt of a hearing.  That's not going to be sealed.

2                   MR. MORIARTY:  It is not.

3                   THE COURT:  Okay.  Four is an email chain between

4    counsel for the Trustee and counsel for Miss Guo.  Why would

5    that --

6                   MR. MORIARTY:  It is not.

7                   THE COURT:  Okay.  So then three and four don't

8    need to be sealed.  Five is a transcript of hearing --

9                   MR. MORIARTY:  Does not need to be sealed.

10                  THE COURT:  Does not need to be sealed.  Six is

11   the letter from Wells Fargo to Miss Guo in connection --

12                  MR. MORIARTY:  That does not need to be sealed.

13                  THE COURT:  It.  That's that.  And then the

14   Trustee's emergency motion --

15                  MR. MORIARTY:  Does not need to be sealed.

16                  THE COURT:  So what needs to be sealed?

17                  MR. MORIARTY:  I believe it's only Exhibit 1, Your

18   Honor, because Exhibit 2, we filed under seal.  I'm not

19   overly concerned about my exhibits.  I only have seven

20   documents on my exhibit list.

21                  THE COURT:  Well, okay.  I just want to make sure.

22                  MR. MORIARTY:  That's fine.  The Trustee has 64.

23                  THE COURT:  I understand.  But some of the matters

24   on the Trustee's list are already public record.

25                  MR. MORIARTY:  There are some.

1           THE COURT:  All the bank statements.

2           MR. MORIARTY:  No.  Not all the bank statements,

3   Your Honor.

4           THE COURT:  Well, not all.  The bank statements

5   that have already been part of the record that Attorney

6   Claiborn just talked about.

7           MR. MORIARTY:  Right.  That is one exhibit on the

8   Trustee's exhibit list.  The rest of the bank statements are

9   not on the public docket.

10          THE COURT:  Okay.  Hold on a second, all right?

11  So Chime statements and M&T bank statement, those are all

12  bank statements is what you're telling me?

13          MR. MORIARTY:  They're all bank statements.  None

14  of them have been filed on the public docket, and they are

15  all under seal.

16          THE COURT:  What about emails?

17          MR. MORIARTY:  The emails are under seal, also,

18  Your Honor.

19          THE COURT:  What do you mean they're under seal?

20  You filed -- they were filed under seal.

21          MR. MORIARTY:  Correct.  And Your Honor --

22          THE COURT:  There's no order sealing them yet.

23          MR. MORIARTY:  I believe it entered yesterday.

24          THE COURT:  Sealing all these documents?

25          MR. MORIARTY:  I believe it did, yes.

1        THE COURT:  Okay.  Maybe it did.  It could've.

2  I'm not saying it didn't.  I just -- I'm asking.

3        MR. MORIARTY:  I believe, as I said, I believe it

4  did.  The emails are Miss Guo's emails, primarily showing, as

5  I said, services or goods that she either purchased or were

6  purchased for her.  And that's the exact type of information

7  that was previously used from her bank statements in the

8  social media video.

9        THE COURT:  All right.  I'm just looking at what I

10  can say.  The Trustee's list of exhibits, the 1, 3, and 6 --

11  and 64 are definitely not sealed.  With regard to which the

12  account, Wells Fargo account, statements, there are Exhibits,

13  proposed Exhibits 4 through 9.  So you're saying some of

14  those are public and some aren't?

15        MR. MORIARTY:  I would have -- I don't have the

16  exhibit list in front of me, Your Honor.  To the extent it is

17  a specific month, it is not public.

18        THE COURT:  Okay.

19        MR. MORIARTY:  The ones that run, I think, from

20  November 23 to September 24, those were on the docket.

21        THE COURT:  Okay.  So those don't need to be

22  sealed.

23        MR. MORIARTY:  Correct.

24        THE COURT:  That is Exhibit 4, Proposed Exhibit 4,

25  so then Proposed Exhibits 5 through 9, you're saying those

1  are not public at this point.

2        MR. MORIARTY:  Correct.

3        THE COURT:  Those are additional Wells Fargo bank

4  statements for a specific month.

5        MR. MORIARTY:  Yes.

6        THE COURT:  And then pictures, I don't know what

7  that means.

8        MR. MORIARTY:  That does not have to be sealed.

9        THE COURT:  Say that again?

10        MR. MORIARTY:  Does not have to be sealed.  I

11  don't know that that was filed under seal.

12        THE COURT:  So 10 does not need to be sealed?

13        MR. MORIARTY:  No.

14        THE COURT:  Lease documents.

15        MR. MORIARTY:  There are two leases, Your Honor,

16  and I would have to look at the exhibits.  There is an older

17  lease that we produced as confidential, but then we filed on

18  the public docket yesterday because the leases expired almost

19  a year ago, so --

20        THE COURT:  So one of them is public.

21        MR. MORIARTY:  One of them is public.

22        THE COURT:  Okay.  I don't know.  It doesn't

23  delineate or I can't tell the difference between the two.

24        MR. MORIARTY:  No.  And I'd have to look at the

25  exhibits.  But one is public and one is not.

1          THE COURT:  That's fine.  We can go through that.

2          MR. BASSETT:  I believe Exhibit 11 is public.

3    That's the old one, Your Honor.

4          THE COURT:  Could you just give me a date so that

5    it makes some, you know, for the record?  Exhibit 11 is lease

6    document dated what?

7          MR. BASSETT:  It's dated, well, for a term

8    beginning July 1st, 2023.  Lease date -- sorry.  Lease date

9    is June 15, 2023.

10          THE COURT:  And you believe, Attorney Moriarty --

11    will you show Attorney Moriarty that to make sure -- that's

12    the right one?  Okay.  So that's public.

13          MR. BASSETT:  Yes.

14          THE COURT:  So 12 is not.

15          MR. BASSETT:  Correct.

16          THE COURT:  Whatever that one is.  And then

17    there's a series of emails with specific dates and chat

18    messages.  Those you're saying --

19          MR. MORIARTY:  They've all been filed under seal,

20    Your Honor, and we would ask that they remain under seal.

21          THE COURT:  And then there's -- All right.  So all

22    of the -- now the -- all right.  So the transcript of the

23    March 19 deposition is deemed to be confidential, highly

24    confidential at this point.

25          MR. MORIARTY:  Highly confidential, yes.

 1              THE COURT:  Okay.  And then Bankwell and Chime,

 2    excuse me, Bankwell and Chime and M&T Bank and Bancorp

 3    statements, which end up being Exhibits 28 through --

 4    Proposed Exhibits 28 through 60.  You're asking that those be

 5    under seal; is that correct?

 6              Yes, Your Honor.

 7              THE COURT:  Okay.  And then there's -- Number 61

 8    is an email with a specific date, just says February 26, 2025

 9    email?

10              MR. MORIARTY:  It's a bank statement, Your Honor.

11    I would ask that it be under seal.

12              THE COURT:  It's a bank statement even though it

13    doesn't say that?

14              MR. MORIARTY:  Yes.

15              THE COURT:  Okay.  Oh, and then there's a Wells

16    Fargo bank statements from September.  Oh, isn't that the

17    same thing?

18              MR. MORIARTY:  No.  It's a different account.

19              THE COURT:  Oh, okay.  Summary of transactions,

20    bank accounts, that's 63.  What's that?

21              MR. MORIARTY:  I would --

22              THE COURT:  What is that, Attorney Bassett?

23              MR. MORIARTY:  Yeah.  He can answer.

24              MR. BASSETT:  Your Honor, that's a summary

25    exhibit/demonstrative.  As you can imagine, the --

1              THE COURT:  Oh, okay.

2              MR. BASSETT:  -- bank statements have a lot of

3    entries.  This is just a document that kind of sums --

4              THE COURT:  Something that you created for

5    demonstration purposes?

6              MR. BASSETT:  That's correct, Your Honor.

7              THE COURT:  But it includes information in other

8    exhibits that Attorney Moriarty is asking remain under seal?

9              MR. BASSETT:  Namely the bank statements, Your

10   Honor.

11             MR. MORIARTY:  That does not have to be under

12   seal, Your Honor, because it doesn't --

13             THE COURT:  The summary doesn't?

14             MR. MORIARTY:  No.  It doesn't have sufficient

15   information to be concerning.  And it's attached to the

16   reply.  I don't know if that piece of it was filed under

17   seal, but I'm not worried about that.

18             THE COURT:  Okay.  All right.  So then what we're

19   talking about, aside from the testimony, with regard to

20   documents, is two of your seven exhibits.

21             MR. MORIARTY:  One.

22             THE COURT:  Oh, just one?

23             MR. MORIARTY:  Yeah.

24             THE COURT:  Just Exhibit 1.

25             MR. MORIARTY:  Yes.

1          THE COURT:  Oh, because the lease is the one that

2   -- it's the same number on the Trustee's list.

3          MR. BASSETT:  Correct.  Same document.

4          THE COURT:  Exhibit 11 on Trustee's list.  All

5   right.  So then you only need -- you're only asking for the

6   Court to seal one document on your exhibit list, Exhibit 1.

7   And you're asking that the Court seal the following exhibits

8   on the Trustee's list, which are Exhibits 5, 6, 7, 8, 9, 12,

9   13 through 25, oh, 26 as well.  I'm sorry.  That's on the

10  next page.  So it's really 13 through 62.

11         MR. MORIARTY:  Yes.

12         THE COURT:  And then 63 and 64, you're not asking

13  to be, so on the Trustee's list, the documents that you're

14  not asking to be sealed are Trustee's Proposed Exhibit 1, 2,

15  3, 4, 10, 11, 63, and 64.

16         MR. BASSETT:  Correct.

17         THE COURT:  Okay.

18         MR. MORIARTY:  And as far as the Defendant's

19  Exhibit 1, that's already under seal based on the granting of

20  a motion from yesterday.

21         THE COURT:  Okay.

22         MR. MORIARTY:  And as I said, I know the Trustee

23  filed under seal yesterday, also.  So most of the exhibits

24  that we just discussed are already under seal.  The lease

25  exhibit was under seal; that can be unsealed.

1          THE COURT:  The June 15 exhibit, that's the same

2   exhibit as Trustee's 11.

3          MR. BASSETT:  Correct.

4          THE COURT:  Okay.  Okay.  So I asked a question,

5   which I don't think you had an opportunity to answer yet,

6   because we were going through all the exhibits.  But my

7   question is, as we have done in the past, we have proceeded

8   and then sealed the court when -- or the transcript when it

9   was appropriate.  Do you oppose that suggestion on how to

10  proceed?

11         MR. MORIARTY:  I don't oppose the suggestion, Your

12  Honor.  I do believe that it may be very cumbersome.

13         THE COURT:  It may be.

14         MR. MORIARTY:  This is -- what we're speaking of

15  right now is Miss Guo's motion.  The contempt motion is the

16  Trustee's motion.  The Trustee will be proceeding on that

17  motion, and maybe Attorney Bassett would like to speak to how

18  he would put his case on.

19         THE COURT:  As far as -- well, what I -- your

20  motion is you want to seal the courtroom, right?

21         MR. MORIARTY:  Correct.

22         THE COURT:  And then as the United States Trustee

23  says, seal the transcript, seal the -- and have the

24  protective order apply.  The United States Trustee's Office

25  disagrees with all that.

```
 1              MR. MORIARTY:  Yes.

 2              THE COURT:  Someone said to me, I think it was

 3  you, that everyone in the courtroom is subject to the

 4  protective order.  So if that's the case, then we don't have

 5  to seal the courtroom.  We have to figure that out.  I

 6  understand that.

 7              MR. MORIARTY:  Yeah.

 8              THE COURT:  With regard to the transcript, I've

 9  already said I'm not sealing anything that we've talked to up

10  to this point.

11              MR. MORIARTY:  And I wouldn't expect you to, Your

12  Honor.  This is a motion to seal --

13              THE COURT:  I understand.

14              MR. MORIARTY:  -- The contempt hearing, which is

15  the next hearing.

16              THE COURT:  I understand.

17              MR. MORIARTY:  So I'm not asking that any portion

18  of what we've discussed so far be sealed.

19              THE COURT:  Right.  But I don't know that I agree

20  that the entire hearing on the contempt motion should be

21  sealed.  But I understand your concerns, and I think you can

22  raise them.  And maybe it is going to be cumbersome.

23              And maybe when we get moving through the hearing,

24  I might change -- I might reserve -- I reserve the right to

25  change my mind that maybe it should all be sealed and subject
```

1  to a further order of unsealing after the fact.  I don't

2  know.  But the -- because I don't know what's going to be put

3  forth, right?  I don't know.

4          But I there is a tension between what you're

5  asking, and I know you know that, and what the law says is

6  supposed to happen.  The Trustee is not opposing your motion.

7  I understand that.  The only party that's opposed it is the

8  Office of the United States Trustee.  I obviously, no matter

9  who opposed it, I have to take that seriously.

10          However, the United States Trustee is an

11  independent third party that is supposed to be speaking, you

12  know, for the public interest.  And their position is that

13  this shouldn't be granted, your request should not be

14  granted.

15          I'm not going -- I don't agree with that in whole.

16  I agree with it in part, and so I think we have to just

17  proceed and see how it -- see how things work out.  I'm not

18  denying your request.  I think it has to be -- we have to

19  start the hearing and see how it goes, and then I can reserve

20  the right to determine if I think it's appropriate that there

21  would then be a sealing of the entire hearing and transcript

22  --

23          MR. MORIARTY:  Okay.

24          THE COURT:  -- from when we start that hearing.

25          MR. MORIARTY:  I appreciate that, Your Honor.  The

1    only thing that I would ask, if the Court will indulge --

2              THE COURT:  Yeah.

3              MR. MORIARTY:  -- is to determine whether

4    everybody here, and as I said, I know there's one person who

5    was with Miss Guo who would have to leave.  But if there are

6    other people here who are not subject to the protective order

7    and/or otherwise statutorily allowed to be here, every time

8    we go in and out of public --

9              THE COURT:  No, I agree.

10             MR. MORIARTY:  -- versus non-public --

11             THE COURT:  We don't want to do that.  I agree

12   with you.  So I'm looking at the courtroom.  Is everyone in

13   the courtroom subject to the protective order?  I mean, I

14   don't -- I'm sorry.  I don't think Miss Guo's ever signed the

15   protective order.

16             MR. MORIARTY:  She has.

17             THE COURT:  Oh, she has.  Okay.

18             MR. MORIARTY:  And it's her information.

19             THE COURT:  Was that part of the deposition?  Is

20   that what you did or it happened before then?

21             MR. MORIARTY:  No.  It happened before then.

22             THE COURT:  Okay.  All right.  Well, there's a

23   another person in the courtroom is -- are you the

24   interpreter, ma'am?

25             THE INTERPRETER:  Yes, Your Honor.

1               THE COURT:  Okay.

2               MR. MORIARTY:  Yes.  She's fine.

3               THE COURT:  So we'd have to just -- I don't know

4    anything about the interpreter.  Who has brought the

5    interpreter today?

6               MR. BASSETT:  Oh, we have retained the services of

7    the interpreter, Your Honor, at the request of the witness.

8               THE COURT:  All right.  Could you just speak a

9    little louder?  I couldn't hear you, Attorney Bassett.

10   Sorry.

11              MR. BASSETT:  Yes, Your Honor.  The Trustee's team

12   has, arranged for the interpreter to be here today --

13              THE COURT:  Okay.

14              MR. BASSETT:  -- at the request of the witness,

15   Miss Guo.

16              THE COURT:  Okay.  So one thing about that, that's

17   fine.  I don't know anything about this woman who's an

18   interpreter.  I don't know her name.  I don't know her

19   qualifications.  Are you all stipulating to her, that she's a

20   qualified interpreter with regard to, I believe, would -- is

21   this Mandarin that we're talking about?  Or what are we

22   talking about here?  I have no idea.

23              MR. BASSETT:  That's correct, Your Honor.  And

24   just for a bit of context, I took Ms. Guo's deposition last

25   week.  The same interpreter was there --

1          THE COURT:   Okay.

2          MR. BASSETT:  -- interpreted the deposition.  We

3  did not have any issues.  I feel very confident about her

4  capabilities.

5          THE COURT:  Okay.  That's fine.  But, again, I

6  would have no idea, right?  So I have to at least make a

7  finding that you both agree that this woman, whose name I

8  don't know, but you'll -- she'll introduce herself at some

9  point, is a qualified interpreter, and there's going to be no

10 controversy over this person interpreting any testimony of

11 Miss Guo, I believe, is the person that needs the

12 interpreter.  Is there anybody else that needs the

13 interpreter?

14         MR. MORIARTY:  Not that I'm aware of, Your Honor,

15 and maybe it makes more sense to put it on the record in the

16 next matter, but we have no objection to the interpreter.

17         THE COURT:  Okay.  I just want to make that clear

18 because I have no idea, obviously.  Now, the courtroom staff

19 had said the interpreter might need some device to help her

20 with the dictionary.  Do you have a device with you, ma'am?

21 Do you have --

22         THE INTERPRETER:  It's outside with security.

23         THE COURT:  All right.  So I'm going to let her

24 use -- what is it?  Is it a phone or a laptop?

25         THE INTERPRETER:  I can use either one.

1          THE COURT:  Could I ask you to get -- why don't

2    you go with this court security officer, and he'll get you

3    your phone, okay?

4          THE INTERPRETER:  Thank you, Your Honor.

5          THE COURT:  You're welcome.  All right.  So my

6    ruling is that your motion is -- I'm going to reserve ruling

7    on your motion as the -- but I can -- you may be able to

8    convince me at some point that we need to seal this hearing,

9    okay?

10          MR. MORIARTY:  All right.  I appreciate it, Your

11    Honor.

12          THE COURT:  I'm reserving the ruling because of

13    the issues raised by the United States Trustee's Office and

14    because we have proceeded differently -- not differently,

15    we've proceeded in other proceedings in this case to try to

16    carve out.  You may convince me that we can't carve it out.

17    It's going to be too cumbersome.

18          And if that's the case, then I'd be more inclined

19    to seal the hearing with the understanding as what you've

20    said at the beginning of the hearing, Attorney Moriarty, that

21    at some point, there may be an order unsealing the hearing.

22          MR. MORIARTY:  Yeah.  I would expect, Your Honor,

23    that the Court will do whatever Your Honor deems appropriate,

24    to the extent it's sealed.  In the future, Your Honor

25    obviously has the authority and discretion to unseal it.

1          THE COURT:  Okay.

2          MR. MORIARTY:  I accept that.

3          THE COURT:  All right.  Well, I thank you, and I

4   think then we should proceed --

5          MR. MORIARTY:  Okay.  Thank you, Your Honor.

6          THE COURT:  -- with the substantive motion, which

7   is the motion to enforce the -- not that your motion wasn't

8   substantive.  I'm just saying I'm not ruling on it right now

9   until we go through the process of the hearing on the motion

10  to enforce the preliminary injunction.

11         MR. MORIARTY:  It's okay, Your Honor.  I'm not

12  offended.  Thank you.

13         THE COURT:  Okay.  Well, that's good.  All right.

14  Attorney Henzy, did you wish to be heard?

15         MR. HENZY:  Just while we have a second.  I'm not

16  clear if you've already taken appearances.

17         THE COURT:  No, we haven't with regard to this.

18  You're correct.

19         MR. HENZY:  Okay.

20         THE COURT:  So with regard to the motion to

21  enforce the preliminary injunction, which is the remaining

22  matter on today's calendar, and the Court has become aware

23  that this has become an evidentiary hearing, that is ECF

24  Number 140 in the adversary proceeding of 2305008.  I would

25  like to take appearances for the record.

1          So starting with Trustee Despins, please.

2          MR. DESPINS:  Luke Despins, Chapter 11 Trustee.

3          MR. BASSETT:  Nick Bassett, Your Honor, Paul

4  Hastings, counsel to the Chapter 11 Trustee.

5          MR. SKALKA:  Douglas Skalka, Neubert, Pepe, and

6  Monteith, also counsel for the Chapter 11 Trustee.

7          MS. CLAIBORN:  Holley Claiborne for the U.S.

8  Trustee.

9          MR. MORIARTY:  James Moriarty from Zeisler &

10  Zeisler for the defendant, Mei Guo.

11          MR. HENZY:  Eric Henzy, Zeisler & Zeisler, for the

12  defendant, Mei Guo.  And I did not mean to get out ahead of

13  you, Your Honor.

14          THE COURT:  No, no, it's fine.  You were right.

15          MR. HENZY:  I just wasn't clear --

16          THE COURT:  I'm glad that you mentioned it.  It's

17  been a little bit of a confusing afternoon, so no problem.

18          MR. TWARDY:  And Stanley A. Twardy, Jr., from Day

19  Pitney, for Miss Guo.

20          THE COURT:  Good afternoon.

21          FEMALE VOICE:  I'm sorry.  I didn't catch your

22  name right, sir.

23          MR. TWARDY:  Stanley A. Twardy, Jr., from Day

24  Pitney.

25          FEMALE VOICE:  Thank you.

1          THE COURT:  Okay.  Thank you all.  So Attorney

2    Bassett, are you starting with the motion to enforce the

3    preliminary injunction hearing?  Are you going to proceed?

4          MR. BASSETT:  I'm happy to do that, Your Honor.

5          THE COURT:  All right.  The interpreter has her

6    device.  So whenever we get to the point of needing

7    interpretation, I'm still, ma'am, going to have to swear you

8    in as the interpreter.  Well, the courtroom staff will swear

9    you in, and we'll have to have you recite your name and your

10   business address.  You don't have to cite your home address,

11   but cite your business address, okay?  All right.  So we're

12   not there yet, but I just wanted to give you an idea, okay?

13         THE INTERPRETER:  Yes, Your Honor.

14         THE COURT:  Actually, what are we going to do if

15   Miss Guo's in the stand here?  Are we going to need a chair

16   for the interpreter or something unless you're going to --

17   she's going to stand the whole time?  How are we going to --

18   we've dealt with -- you know, we can get another chair.

19         MALE VOICE:  Your Honor, we have chairs --

20         THE COURT:  COURT:  Oh, there's a chair right

21   here, too.  Okay.  Great.  Thank you.  Thank you.  Because I

22   don't want you to have to stand the whole time.  I don't know

23   how long it's going to take, but I just don't want you to

24   have to stand.

25         MALE VOICE:  (Inaudible).

1         THE COURT:  Sure.  That'd be fine.  Thank you.

2         MS. CLAIBORN:  It's okay.

3         THE COURT:  It's fine.  Okay.  All right.  So this

4    is the Trustee's motion or the Plaintiff's motion, who is the

5    Trustee, to enforce the preliminary injunction.  So please

6    proceed.

7         MR. MORIARTY:  Your Honor, before, Attorney

8    Bassett starts, may I just have one moment with Miss Guo to

9    explain the Court's ruling on the --

10        THE COURT:  Sure.

11        MR. MORIARTY:  Thank you, Your Honor.

12        MR. BASSETT:  Your Honor, again, for the record,

13   Nick Bassett, from Paul Hastings, on behalf of the Chapter 11

14   Trustee.  Your Honor, we are here today on the Trustee's

15   motion to enforce the preliminary injunction and for an order

16   to show cause as to why Miss Guo should not be held in

17   contempt of court for having violated the injunction.

18        We filed our papers on the docket, Your Honor.

19   And then, obviously, today, we are prepared to present

20   evidence and then conclude with oral argument on the motion.

21        I would propose to proceed by addressing some

22   exhibit issues upfront, which hopefully should be very brief,

23   and then we will proceed with having Miss Guo take the stand.

24        As to exhibits, Your Honor, counsel, specifically

25   Attorney Moriarty and I, have coordinated in advance of the

 1  hearing in an effort to streamline things and hopefully make

 2  the rest of the day go as efficiently as possible.

 3           To that end, as far as the exhibits are concerned,

 4  I think we and, obviously, I'll be kept honest by Attorney

 5  Moriarty if I get any of this wrong, as to the Trustee's

 6  exhibits, I believe there is no objection to the vast

 7  majority of the exhibits coming into evidence.

 8           The only exhibits that I understand there is an

 9  objection to is Exhibit 10, which I propose to just address

10  with Miss Guo in the course of her testimony, and then

11  counsel can raise his objection at that time.

12           There's also an objection to Exhibit 27, which is

13  the transcript of Mei Guo's deposition last week.  There's an

14  objection to the entirety of that transcript coming into

15  evidence.

16           THE COURT:  All right.  So right now, there's an

17  objection to Exhibit 10, correct?

18           MR. BASSETT:  That's correct, Your Honor.

19           THE COURT:  And then the transcript is what

20  number?

21           MR. BASSETT:  The deposition transcript is Exhibit

22  27.

23           THE COURT:  And there's an objection to that, as

24  well?

25           MR. BASSETT:  There's an objection to the entirety

1  of the transcript coming into evidence.  I would propose to

2  deal with that by just -- I'm fine to use the transcript as

3  necessary for impeachment purposes.

4         And then after the conclusion of my presentation,

5  to the extent that there are any portions of the transcript

6  that I would like to submit in evidence, I could address it

7  at that time.  But I assume that would address Attorney

8  Moriarty's objection for now at least --

9         THE COURT:  Okay.

10         MR. BASSETT:  -- as to Exhibit 27.  There's also

11  an objection to Exhibit 60.  We are fine to -- I don't think

12  we need -- one second, Your Honor.  If I may have one moment.

13         THE COURT:  Certainly.

14         MR. BASSETT:  Thank you.  Your Honor, the reason

15  I'm pausing is I don't think we need Exhibit 60.  I was going

16  to try to resolve that objection by saying that does not need

17  to come into evidence, but it may be one of the sources

18  that's relied on for our Exhibit 63.  So that may still be a

19  live issue.  And then there's also an objection to Trustee's

20  Exhibit 63, which again is that summary exhibit.

21         Outside of that, I understand there is no

22  objection to all of the Trustee's remaining exhibits coming

23  into evidence.

24         And I can also report that the Trustee does not

25  object to Miss Guo's exhibits coming into evidence with the

1  caveat being the Trustee does not agree that all of those

2  exhibits are relevant to the Court's consideration of the

3  issues before the Court today, but we're happy to just

4  address that through oral arguments, and we would make

5  arguments as to what weight, if any, of the Court should give

6  those documents and not make it an admissibility issue.

7          THE COURT:  Okay.  I'm fine with that.

8          MR. MORIARTY:  Your Honor, I agree with Attorney

9  Bassett as far as the Defendant's objections to 10, 27, 60,

10 and 63.  We agree that the rest of the Trustee's exhibits can

11 come into evidence with the same caveat that Attorney Bassett

12 gave you with respect to the Trustee agreeing to the

13 Defendant's exhibits coming in.  We will argue weight, not

14 admissibility.

15         THE COURT:  Except for the exhibits that were

16 definitively listed by Attorney Bassett, correct?

17         MR. MORIARTY:  Correct.

18         THE COURT:  Okay.  Thank you.

19         MR. MORIARTY:  The four that he identified.

20         THE COURT:  Okay.  Thank you.  All right.

21 Attorney Bassett, you may proceed.

22         MR. BASSETT:  Thank you, Your Honor.  So just to

23 close the loop, we would move for the admission into evidence

24 of -- I'll try to do this the fast way -- Trustee's Exhibits

25 1 through 64, excluding Exhibits 10, 27, 60, and 63.

 1          MR. MORIARTY:  No objection, Your Honor.

 2          THE COURT:  Okay.  Thank you.  Just if you'd give

 3  me one moment, please.  Now, that's fine.  All that's fine.

 4  And I appreciate the parties working together cooperatively

 5  on that.  I obviously don't have those exhibits, right?  At

 6  some point, you're either going to --

 7          (Plaintiff's Exhibits 10, 27, 60, and 63 entered

 8  into evidence.)

 9          MR. BASSETT:  May I approach, Your Honor?  I do

10  have a binder for the Court.

11          THE COURT:  No.  I don't need that at the moment.

12  I just want to make -- I think you know, I think all of you

13  know, that that's fine.  But I'm not going to look at

14  anything in those exhibits that you're not going to point me

15  to.  And I can absolutely admit them into evidence without

16  objection as full exhibits.  But again, I'm not going to go

17  through them.

18          So, I mean, I could, but I might not.  So you have

19  to proceed, and I think I've said this to all of you on many

20  occasions.  You have to proceed accordingly, okay?

21          MR. BASSETT:  Understood, Your Honor.

22          THE COURT:  Does anyone have any questions about

23  that?

24          MR. BASSETT:  No, Your Honor.

25          THE COURT:  Okay.  Then go ahead and proceed.

1   Thank you.

2          MR. BASSETT:  And Your Honor, the next proposed

3   step in today's proceedings would be to call Miss Guo to the

4   stand.  Before I do that, I will be showing her some of the

5   exhibits.  We have a binder for the witness, and I also do

6   have a binder for the Court.

7          THE COURT:  Okay.  Then I will need that.  And

8   just so the record is clear, I am admitting all of the

9   Trustee's exhibits on the Trustee's list of witnesses and

10  exhibits that was filed yesterday -- I don't remember what

11  the number is at the moment, sorry, but in any event -- as

12  full exhibits with the exception of Trustee's Proposed

13  Exhibit 10, 27, 60, and 63, okay?

14         MR. BASSETT:  Thank you, Your Honor.

15         THE COURT:  So you've got a binder you're going to

16  give to me and to Miss Guo.

17         MR. BASSETT:  Yes, Your Honor.

18         THE COURT:  She's going to have one, as well.

19         MR. BASSETT:  Your Honor, may I approach?

20         THE COURT:  Certainly.  Thank you.

21         MR. BASSETT:  Should I leave the other one here,

22  Your Honor?

23         THE COURT:  Please.  Thanks.  I appreciate that.

24  All right.  Go ahead and proceed.

25         MR. BASSETT:  So the Trustee calls Mei Guo, Your

1  Honor.

2          THE COURT:  Miss Guo?  Now shall we bring over

3  that chair so that the interpreter doesn't have to stand the

4  whole time?  And before we swear in Miss Guo, we do need to

5  have you, ma'am, if you could come next to Attorney Bassett

6  for a moment and just tell me your name and your business

7  address, please.

8          THE INTERPRETER:  Yes.  My name is Echo Lim,

9  E-C-H-O L-I-M, M Mary.  It's a qualified Chinese Mandarin

10  interpreter.  The business address is 183 Madison Avenue,

11  Number 146, New York, New York 10016.

12          THE COURT:  Thank you.  Now I think we still have

13  to swear you in, as well, Okay?

14          THE CLERK:  Raise your right hand.  Thank you.  Do

15  solemnly swear that any proceedings will truthfully and

16  accurately interpret and translate to the witness (inaudible)

17  all questions put to her by counsel or by the Court and will

18  truthfully and accurately interpret and translate into

19  English the responses of the witness to the best of your

20  skill and understanding, so help you God?

21          THE INTERPRETER:  Yes, I do.

22          THE COURT:  Thank you.

23          THE INTERPRETER:  Thank you, Your Honor.

24          THE COURT:  Now we have to do Miss Guo, okay?

25          THE INTERPRETER:  Yes.

1          THE COURT:  I think you need to -- could you

2    stand, please?  Thank you.

3          THE CLERK:  Do you solemnly swear that the

4    testimony you are about to give in these proceedings shall be

5    the truth, the whole truth, and nothing but the truth, so

6    help you, God?

7          THE WITNESS:  Yes.

8          THE CLERK:  Oh, I'm sorry.  Spell your name and

9    address for the address.

10         THE WITNESS:  Mei Guo, M-E-I G-U-O.

11         THE COURT:  Okay.  Hold on a second.  With regard

12   to the address, you're going to raise the issue.

13         MR. MORIARTY:  Yes, Your Honor.

14         THE COURT:  This is this is what I would say to

15   that, Attorney Moriarty, and you tell me if I'm wrong, okay?

16   If it's an address other than the address on the public bank

17   statements, then you may have an issue that you're correct to

18   raise.  But if it's the same address, I think it's already

19   out there.

20         MR. MORIARTY:  I believe it is a different

21   address, Your Honor, but there's enough bank statements that

22   I could be incorrect.  I do not believe it is on the bank

23   statements that are on the public docket.

24         THE COURT:  Okay.  Mr. Bassett, well, you know,

25   she hasn't been sworn in yet, so -- oh, yes, you have, but I

1  just want to make sure if it's the address that's on the

2  public bank statements, then she can say her address because

3  it's already on the public's bank statements.

4        MR. MORIARTY:  I'm not sure which address she's

5  going to give, Your Honor.

6        THE COURT:  Well, why don't you ask her, is her

7  address -- I mean, looked at the documents.  Isn't it 3 Broom

8  Street?

9        MR. MORIARTY:  No.  That's an old address, Your

10  Honor.

11        THE COURT:  Okay.

12        MR. MORIARTY:  And that's the concern.  And then

13  there was also --

14        MR. BASSETT:  So, Your Honor, right, yeah, I'm

15  looking at Exhibit 4, which is the one that we all agreed was

16  public.  And the address on the latest statement within

17  Exhibit 4, which is the September 30th, 2024 statement is 134

18  Spring Street.

19        THE COURT:  Oh, okay.  I may not have seen what

20  you're looking at before, which is fine.

21        MR. BASSETT:  And the address she gave on the

22  preceding month, August 30th, 2024, was 373 Taconic Road,

23  which is an address the Court is familiar with.  That's not

24  the one either.  I don't think so.

25        THE COURT:  All right.

1           MR. MORIARTY:  Your Honor, all I'm asking is that

2    her address be sealed.  Nobody has to leave.

3           THE COURT:  All right.  We can seal that her

4    address for now.  Let's just do that.

5           MR. MORIARTY:  Thank you.

6           THE COURT:  do you but you have to give the court

7    reporter a moment because in order for the court reporter to

8    do that, she just has to -- the court reporter, the courtroom

9    deputy, she has to make notations that it's sealed, okay?

10          MR. MORIARTY:  Thank you, Your Honor.

11          THE COURT:  So tell me when you are ready, Madam

12   Courtroom Deputy, and then I'm going to let Miss Guo answer

13   that question, okay?

14                           MEI GUO

15     was called as a witness and, after having been first duly

16                  sworn, testified as follows:

17   DIRECT EXAMINATION

18   BY MR. BASSETT:

19   Q    Good afternoon, Miss Guo.  It's nice to see you again.

20   A    Thank you.  It's nice to meet you too.

21   Q    First of all, Miss Guo, although you have an

22   interpreter here today, assisting us with the questioning and

23   answering, you do actually speak English, correct?

24   A    Correct.  But by my English is not too fluent.

25   Q    Okay.  But just by way of example, you often speak with

1  friends and colleagues on matters including business matters

2  in English, right?

3  A    Correct.

4  Q    And you also read and write frequently in English?

5  A    Yes.

6  Q    Now, Miss Guo, you are aware that we are here today in

7  connection with the Trustee's motion to enforce the

8  preliminary injunction that the Court entered on December

9  21st/2023, correct?

10 A    Correct.

11 Q    And now it's your position, which you've previously

12 told me, which I believe you stated in your papers, that the

13 preliminary injunction does not affect your ability to spend

14 your money and only applies to the Bombardier proceeds and

15 the money in the JNFX account, correct?

16 A    Correct.

17 Q    All right.

18       FEMALE VOICE:  Your Honor, if Miss Guo could speak

19 a little louder.

20       THE COURT:  Yeah.  It's hard because you're both

21 sharing the microphone, so just try to speak as much as you

22 can into the microphone.

23       THE WITNESS:  Yes.

24 BY MR. BASSETT:

25 Q    Miss Guo, there's a binder on the side of the -- there

1   you go -- that contains some exhibits.  I'd ask you to please

2   open the binder to the tab marked Number 1, please.

3   A     Yes.  I'm on it.

4   Q     Miss Guo, do you recognize Trustee's Exhibit 1 as the

5   preliminary injunction order entered by the Court on December

6   21st, 2023?

7   A     Right.  Yes.  I recognize it.

8   Q     And you also told me at your deposition that you had

9   seen this document before, correct?

10   A     Correct.

11   Q     But you couldn't remember when you first saw this

12   document, correct?

13   A     Correct.

14   Q     Now I'd like to focus your attention to the second page

15   of the document, the first paragraph on that page that begins

16   with the capital letters "ORDERED".

17   A     I see it.

18   Q     I'm going to read that to you, and then I'm going to

19   ask you a question.

20   A     Okay.

21   Q     Ordered.  The defendant and JNFX shall not transfer,

22   encumber, move, dispose of, or in any way impair the

23   Defendant's interest in any property or assets wherever

24   located and whether directly or indirectly held up to the

25   aggregate amount of $25,000,000 including without limitation

 1  for the Bombardier proceeds and or the JNFX assets held by or

 2  for the benefit of the Defendant or White Croft at JNFX until

 3  further order of the Court except as ordered below.  Do you

 4  see that?

 5  A    Okay.  Thank you.

 6  Q    Miss Guo, you understand that you are the Defendant

 7  within the meaning of this language that I've just read to

 8  you, correct?

 9  A    Correct.

10  Q    And this paragraph, in fact, states that you, the

11  Defendant, may not transfer any of your assets up to $25

12  million, correct?

13  A    Yes.

14  Q    So this language is not consistent with your position

15  that this preliminary injunction order only applies to the

16  JNFX and the Bombardier proceeds, correct?

17  A    I am a little confused and influenced by the legal

18  jargons in here.  Can you please repeat?

19  Q    I'll withdraw the question.  Miss Guo, are you aware

20  that your counsel in the Chapter 11 case, I don't believe it

21  was this current counsel but a different counsel, actually in

22  March, or sorry, in December of 2023, submitted a proposed

23  order to the Court that contained this exact same language

24  that I just read to you?

25  A    I don't remember.

1   Q     Miss Guo, I'm going to ask you some questions now about

2   your bank accounts.  I'm highlighting that for primarily your

3   counsel's benefit, due to the confidentiality issues that

4   have been raised.

5   A     Okay.  Thank you.

6   Q     Now, Miss Guo, you have a checking account at Wells

7   Fargo Bank, correct?

8   A     Yes.

9   Q     Miss Guo, could you please go to Tab 4 in your binder?

10  A     Yes.  I'm on it.

11  Q     Miss Guo, do you recognize what is that Trustee's

12  Exhibit 4 as account statements from your Wells Fargo

13  checking account from November 2023 through September 2024?

14  A     Correct.

15  Q     And if you could please, flip to Trustee's Exhibit 5

16  behind Tab 5, I'm going to ask you if you recognize this

17  document as statements from that same Wells Fargo account for

18  October 30 -- sorry, for the month of October 2024.

19  A     Correct.

20  Q     Thank you.  And if you look behind Tab 6, is this a

21  statement for that same account for November 2024?

22  A     Correct.

23  Q     Thank you.  And behind Tab 7, is this a statement, for

24  that same account for December of 2024?

25  A     Correct.

1    Q      Thank you.  Two more.  If you go behind Tab 8, do you

2    recognize this as a statement for that same account for

3    January of 2025?

4    A      Correct.

5    Q      And then finally, if you go behind Tab 9, do you

6    recognize this as a statement from that same account for

7    February of 2025?

8    A      Correct.

9    Q      Thank you, Miss Guo.  Miss Guo, you have control over

10   this checking account, meaning the ability to make deposits

11   into the account and make withdrawals from the account,

12   correct?

13   A      Correct.

14   Q      And no one else other than you has control over the

15   account, correct?

16   A      No one else.

17   Q      And when I asked you at your deposition, you said

18   sitting there at that time, which was last week, you did not

19   have any reason to believe that there were any withdrawals or

20   subtractions from that Wells Fargo account that you did not

21   authorize, correct?

22   A      Correct.

23   Q      Now we added up the amounts and the withdrawals and

24   subtractions column of these accounts across Exhibits 4

25   through 9 from December 21st, 2023, through the February

1   2025, and it shows that you have spent approximately $508,000

2   out of this account.  Does that sound correct to you?

3   A     I never do the math.  I don't know.

4   Q     Do you have any reason to doubt that we've done that

5   math incorrectly?

6   A     I have no reason to doubt.

7   Q     And it's your position, I believe, that you've taken

8   before the Court that these expenditures from this account

9   were your personal expenses for shelter, food, clothing, and

10  leisure; is that your position?

11  A     Correct.

12  Q     All right.  I'd like to look at just some of these

13  personal expenditures.  If you go to Trustee's Exhibit 4, I

14  just want to highlight a couple by way of example.  If you go

15  to the page that is labeled 00009 at the bottom, there's a

16  stamp at the bottom and the end is 00009.

17  A     Okay.  I see it.

18  Q     And you see December 21st, which would have been 2023,

19  so the day of the injunction, you see there's a $752.87

20  charge for Davidoff Geneva about two-thirds of the way down

21  the page.

22  A     No.  I see it.

23  Q     And then on December 27th on the next page, there's a

24  $914 charge for the same vendor.

25  A     Yes.  I see it.

1  Q     And that's a cigar shop or a company, correct?

2  A     Correct.

3  Q     If you go to the page in Exhibit 4 labeled 00049 at the

4  bottom, please.

5  A     I'm on it.

6  Q     If you go toward the bottom of the page on July 9th,

7  there's a purchase at David Yurman for $2,389.81.  Do you see

8  that?

9  A     I see it.

10 Q     And then if you go to Trustee Exhibit 6, please.  And

11 by the way, before I do that, David Yurman, that's a luxury

12 jewelry brand, correct?

13 A     Yes.

14 Q     If you go to Trustee's Exhibit 6, please, at the page

15 labeled 0011 at the bottom.

16        MR. MORIARTY:  Your Honor, this, exhibit is under

17 seal, and if we're going to get into specific transactions

18 within the account, I would ask that we go into sealed mode.

19        MR. BASSETT:  I was going to ask questions about

20 two transactions, Your Honor.  It'll take --

21        THE COURT:  But are they specific transactions?

22        MR. BASSETT:  I was going to ask about specific

23 amounts at particular retailers.  I could do it --

24        THE COURT:  All right.  We're going to seal --

25 what were you going to say?

1           MR. BASSETT:  I was going to say, Your Honor, I

2    could do it in a way where I just point the Court and the

3    parties who have access to the exhibit book to the lines

4    without saying it openly, if that's helpful.

5           MR. MORIARTY:  As long as we're not identifying

6    who the retailer is, I'm okay with that.

7           THE COURT:  Okay.  Then let's proceed that way,

8    Attorney Bassett, okay?

9           MR. BASSETT:  Okay.

10          MS. CLAIBORN:  Your Honor, if I could just make a

11   point.  I'm unclear as to why spending money at that

12   particular vendor is an item that has to be sealed.  It

13   doesn't seem to be --

14          THE COURT:  Well, we're not going to seal it.

15   Right now, what Attorney Bassett's suggestion is of how to

16   handle it, and Attorney Moriarty does not oppose it, is that

17   he will just have the witness look at a line item and I guess

18   identify a dollar amount.

19          MS. CLAIBORN Okay.

20          THE COURT:  Isn't that what --

21          MR. BASSETT:  I was going to characterize the type

22   of vendor.

23          THE COURT:  But not necessarily identify the

24   vendor.

25          MR. BASSETT:  That's correct.

1        THE COURT:  And Attorney Moriarty, that works for

2   you?

3        MR. MORIARTY:  Oh, we'll try it and see what

4   happens, Your Honor.

5        THE COURT:  Okay.  Then let's do that.  And then I

6   hear -- I understand your position, Attorney Claiborn, and

7   we're going to see how things work.  But what were you --

8        MS. CLAIBORN The point I would make in support of

9   that is if you go to the grocery store and you buy lemons,

10  someone might find the fact that you bought lemons

11  significant, but you wouldn't know that in the transaction

12  that just says Stop 'N Shop.

13       And so I don't know that it makes a difference

14  where someone spent the money.  It might make a difference as

15  to what they bought, but that's not covered by these bank

16  statements.

17       THE COURT:  Well, what I would say to that and I

18  understand your point, okay?  I do.  What I would say to that

19  is right now, this is not going to be under seal, this

20  question and answer.

21       MS. CLAIBORN Understood.

22       THE COURT:  But I have access to the document

23  and -- well, I understand your point.  Let's see how this

24  goes.

25  BY MR. BASSETT:

1    Q     Miss Guo, on Trustee Exhibit 6, the page labeled 0011

2    at the bottom, the third line down from the top, this shows

3    that you made a purchase of over $1,400 at another jewelry

4    store, correct?

5    A     Yes.

6    Q     And then if you go to the next page of the same

7    document, four down from the top, on November 13, you made

8    another purchase for over $1,200 again at a jewelry store,

9    correct?

10   A     Yes.

11   Q     Now, Miss Guo, these examples of some of the

12   expenditures that we've just discussed, these are what you've

13   described as expenses for your food, shelter, leisure, or

14   clothing?

15   A     Yes.

16   Q     Now, Miss Guo, another position that you've taken in

17   response to the Trustee's motion is that since the

18   preliminary injunction was entered on December 21st, 2023,

19   all of your expenses, including the expenditures from your

20   Wells Fargo account, were made using funds that were either

21   gifted to you or loaned to you by friends and relatives,

22   correct?

23         MR. MORIARTY:  Objection, Your Honor.  I believe I

24   heard the word all expenses, and if I did, it

25   mischaracterizes Miss Guo's opposition to the motion.

1    MR. BASSETT:  Your Honor, that was a question to

2  the witness which she has responded to.  I don't understand

3  the basis for the objection.

4    THE COURT:  I'm going to overrule the objection

5  regardless, okay?  Proceed.

6  BY MR. BASSETT:

7  Q    So, Miss Guo, let's look at Trustee Exhibit 4 again,

8  please.

9  A    I'm on it.

10  Q    Thank you.  I'd like to direct your attention back to

11  the page with 00009 at the bottom again.

12  A    I'm on it.

13  Q    And as we've discussed, the preliminary injunction

14  order at issue in this case was entered on December 21st,

15  2023, but if you look at December 21st entries in your

16  checking account, there's no deposit of any kind that

17  occurred on December 21st into the account, correct?

18  A    Correct.

19  Q    And in fact, with the exception of what looks like

20  three purchase returns, one at the bottom of that page on

21  December 26 and two more at the top of the next page on

22  December 26, there was no deposit at all into this account

23  until you get to the next month, January 2024.  On January

24  25th, there was $600 deposited in cash.

25  A    Correct.

1  Q    And if you look forward after that, it looks like there

2  were two purchase returns on January 29th, and then into

3  February, another purchase return on February 14th.  And then

4  it wasn't until February 26th, where there were some fairly

5  sizable deposits into the account, correct?

6  A    Correct.

7  Q    And between December 21st and February 26th of 2024,

8  you spent tens of thousands of dollars from this account,

9  correct?

10 A    I never calculated.  I am not sure.

11 Q    Okay.  Well, let's just look at Page 00017 in Trustee

12 Exhibit 4.  And for example, you'll see that on January 26th

13 of 2024, you paid $17,500, which I believe was for rent.

14 A    Correct.

15 Q    And then if you go a couple of pages before that, on

16 the page labeled 15, there's another $17,500 withdrawal for

17 rent, correct?

18 A    Correct.

19 Q    And I have not gone through them all, but there's

20 obviously on these pages plenty of other withdrawals and

21 subtractions from the account, correct?

22 A    Correct.

23 Q    And so the vast majority of this spending that we've

24 just gone over, the two $17,500 rent withdrawals and the

25 other expenses listed here, the vast majority of that was

1   done using funds that were, in fact, already in your account

2   as of December 21st, 2023, when the preliminary injunction

3   was entered, correct?

4   A     Correct.

5   Q     Now, Miss Guo, the Wells Fargo account is not the only

6   account from which you've spent money since December 21st,

7   2023, correct?

8   A     Correct.

9   Q     You also have an account that's called a Chime account?

10  A     Correct.

11  Q     And if you go to Trustee's Exhibit 30, please.  Do you

12  recognize this as an example of a statement from your Chime

13  checking account?

14  A     Yes.

15  Q     Do you have any idea how much money you've spent from

16  this Chime account since December 2023?

17  A     I'm not too sure.

18  Q     Does approximately $15,000 sound right to you?

19  A     Yes.

20  Q     You also have an account at an institution called

21  Bankwell, correct?

22  A     Correct.

23  Q     And if you go to Trustee's Exhibit 28, please.  Do you

24  recognize this as an example of a statement from your

25  Bankwell Smart checking account?

1  A      Yes.

2  Q      Do you know approximately how much money you spent from

3  your Bankwell account since December 21st, 2023?

4  A      Around $8,000, I believe.

5  Q      Thank you.  Miss Guo, you also have an account at M&T

6  Bank, correct?

7  A      Yes.

8  Q      Can you please go to Trustee's Exhibit 57?  Miss Guo,

9  do you recognize this as an example of a statement from your

10  M&T bank account?

11  A      Yes.

12  Q      Miss Guo, do you know approximately how much you have

13  spent from this M&T bank account since December 21st, 2023?

14  A      Between 3,000 to $4,000.

15  Q      Thank you.  In addition to the spending that we've

16  talked about from these bank accounts, you've also, on

17  occasion, spent using cash since December 21st, 2023,

18  correct?

19  A      Yes.

20  Q      We'll talk about some of that cash spending a little

21  bit later.  But before I do that, I wanted to ask you, you

22  also have an account at Bank of China, correct?

23  A      Correct.

24  Q      And there's a balance of approximately 2.5 million RMB

25  in that account?

1   A      It's probably is, but I don't remember, though.

2   Q      Can we look at Trustee's Exhibit 61, please?

3   A      I'm on it.

4   Q      Do you recognize this as an email?  By the way, the two

5   there that's listed, and I won't read it out loud, but it

6   starts with a P.  Is that your email address?

7   A      Yes.  It is mine.

8   Q      This is a statement from your Bank of China account,

9   correct?

10  A      Correct.

11  Q      And the available balance there is 2.5 million RMB; is

12  that correct, approximately?

13  A      Correct.

14  Q      And, Miss Guo, you have access to this account,

15  correct?

16  A      Yes.

17  Q      And you could spend the money from this account if you

18  wanted to, correct?

19  A      Correct.

20  Q      Miss Guo, do you recall this is different from the

21  position that you took through counsel in March of 2023 when

22  you said you had no access to this account?

23  A      Back in 2023, what I said was that I lost my bank card.

24  I couldn't make a replacement because I couldn't go to Bank

25  of China due to safety issue.

1   Q     Okay.  You since found your bank card, so now you have

2   access?

3   A     I did not, though.  But the point is if I wanted to, I

4   can still make a replacement at Bank of China.  I do not do

5   it yet because I find this is something which is dangerous.

6   I don't want to walk into Bank of China.

7   Q     Okay.  Along the same lines as some of those concerns,

8   do you recall that, also in February, you took the position

9   yourself and through counsel that you had stopped using a

10  smartphone and communicated only by using a flip phone for

11  fear of being tracked by the CCP.  Do you recall that?

12  A     Yes.  I remember that.

13  Q     And do you also recall saying that you only used email

14  for limited and discreet purposes and that you only had three

15  email addresses?

16  A     I don't remember about that, though.

17  Q     Well, as we established, in connection with the

18  documents you produced in this proceeding, you currently are

19  using at least seven email accounts; is that right?

20  A     Yes.

21  Q     And you also have an iPhone that you use, correct?

22  A     I'm using it right now.

23  Q     And an iPad?

24  A     Yes.

25  Q     In addition to that, you've also purchased flip phones

1  that you use to communicate with your father, correct?

2  A    The flip phone was used after my father was captured.

3  I use it to -- I use it to receive phone call from -- from

4  the prison, from jail.

5  Q    Okay.  And you've also -- and we talked about this a

6  little bit, but you purchased from the Apple App Store some

7  applications that give you a burner phone number, a second

8  phone number that you can use to make phone calls, correct?

9            MR. MORIARTY:  Objection, Your Honor.  I don't

10  know what the relevance of all of this is.  And we're here

11  about a contempt motion about her violating a court order by

12  spending money.

13            MR. BASSETT:  All right.  I'll move on, Your

14  Honor.

15            THE COURT:  Okay.  Then move on, please.

16  BY MR. BASSETT:

17  Q    I want to talk a little bit about, your living

18  arrangements, and I'm highlighting that just to get people's

19  attention due to the confidentiality concerns that have been

20  raised.  I think there's no issue on this one.  But as of the

21  date that the preliminary injunction was entered into,

22  December 2023, you were living at an apartment in SoHo at 492

23  Broom Street, correct?

24  A    Correct.

25  Q    And I think as we've established through some of the

1  bank statements, you pay, or while you were renting that

2  apartment, you paid $17,500 a month in rent, correct?

3  A     Correct.

4  Q     And now, while you were renting that apartment, you

5  also sometimes stayed with your mother at her home in

6  Greenwich at 373 Taconic Road.  And that was before -- it has

7  been sold by the Trustee, correct?

8  A     Correct.

9  Q     And your lease at the Broom Street apartment ended in

10  May 2024, and thereafter, you stayed with your mom for

11  approximately one month at her house at 373 Taconic Road,

12  right?

13  A     Correct.

14  Q     And in July of 2024, you signed a new lease for your

15  current apartment at the address that you gave previously,

16  correct?

17  A     Correct.

18  Q     If you could go to Trustee's Exhibit 12, please?  Miss

19  Guo, do you recognize this as the lease that you signed for

20  your current apartment?

21  A     Yes.  It is.

22  Q     And that's a 2.5, two and a half bedroom apartment,

23  correct?

24  A     Yes.

25  Q     And you usually live there alone, but sometimes your

1  boyfriend, (inaudible), stays with you, right?

2  A     Yes.

3  Q     And your monthly rent for that apartment is $19,500 a

4  month, correct?

5  A     Correct.

6  Q     Your mom now has a new home that she lives in in

7  Connecticut, right?

8  A     Yes.

9  Q     Now, while living at your current apartment, you

10  sometimes stay with your mom at her new home in Greenwich,

11  correct?

12  A     Yes.

13  Q     And in fact, you go there and you stay overnight every

14  week, correct?

15  A     Yes.

16  Q     Sometimes one, sometimes two, sometimes three nights

17  per week?

18  A     Correct.

19  Q     And you sometimes have items sent to that address that

20  you've ordered online?

21  A     Yes.

22  Q     Could you go to Trustee's Exhibit 10, please?

23  A     I see it.

24  Q     Miss Guo, is this the new home that your mother lives

25  in in Greenwich, Connecticut?

1          MR. MORIARTY:  Objection, Your Honor.  This is

2    completely irrelevant to anything that we're talking about at

3    this proceeding.

4          THE COURT:  I can't hear you, Attorney Moriarty.

5    I heard you say it was completely irrelevant.

6          MR. MORIARTY:  To anything that -- anything that

7    has anything to do with what we're here about today.

8          THE COURT:  Well, I'm not sure I agree with that.

9    So, I mean, at least my reading of the motion was to enforce

10   the preliminary injunction was that the Trustee is asserting

11   that there are funds that were subject to the preliminary

12   injunction order that have been spent that should not have

13   been spent.  And he's asking about that with regard to the

14   home.  So I'm overruling your objection.

15         MR. MORIARTY:  There's an -- may I just be heard

16   one more time, Your Honor?

17         THE COURT:  Sure.

18         MR. MORIARTY:  Thank you.  There's no allegation

19   whatsoever, and if we want to admit this conditionally and

20   have him tie it up as relevant, I'm okay with that.  But

21   there's no evidence that Miss Guo has paid anything for this

22   house.

23         MR. BASSETT:  Your Honor, I've already established

24   that it's relevant because the point is they've taken the

25   position in opposition to our motion for preliminary

1  injunction that the expenses that she has spent, in our view

2  in violation clearly of the preliminary injunction order,

3  were expenses that she needed to incur to put shelter over

4  her head and otherwise pay for her ability to live on a daily

5  basis.

6            What we have established now is that her mom, in

7  fact, has a palatial residence in Greenwich, Connecticut in

8  which Miss Guo could have an entire wing to herself whenever

9  she wants.  It goes to the unreasonableness of the $20,000 a

10 month that she is spending on her current apartment in New

11 York.

12           MR. MORIARTY:  There there's no evidence that Miss

13 Guo could have a wing, and it doesn't matter if Miss Guo's

14 mother lives in a shed or a large house.  Miss Guo has her

15 rent that she pays.  We know that.  That's been established.

16 But unless she's paying for this particular house, I don't

17 see how it's relevant.  But I respect Your Honor's ruling.

18           THE COURT:  Okay.  The witness can answer the

19 question.

20 BY MR. BASSETT:

21 Q    Is this the home that your mother currently lives in in

22 Greenwich, Connecticut?

23 A    Yeah.

24 Q    (Question stricken from record)

25           MR. MORIARTY:  Objection, Your Honor.

1          THE COURT:  Okay.  Hold on one second.

2          MR. MORIARTY:  I don't have a problem with

3   Attorney Bassett soliciting the information.  But the way

4   that the question is being asked, he's bringing up the

5   deposition, which is highly confidential, and this piece is

6   not under seal.

7          MR. BASSETT:  I'll ask it --

8          MR. MORIARTY:  It's the form of the question.

9          THE COURT:  Hold on, hold on, hold on.  So my

10  understanding at the beginning of the hearing was that you

11  had no objection to the vast majority of Exhibit 10.  That's

12  the -- that's what this exhibit is.  Right?  It's about the

13  house.

14         MR. MORIARTY:  Correct.

15         THE COURT:  I'm looking at it.  It's pictures of a

16  house, right?

17         MR. MORIARTY:  Yes.

18         THE COURT:  So what's your -- what's your

19  objection is that what?  That she's telling what the amount

20  is?

21         MR. MORIARTY:  No, Your Honor.  It -- my objection

22  was to the phrasing of the question saying, at your

23  deposition, you told me X because the deposition has been

24  marked highly confidential.

25         THE COURT:  So you want him to rephrase the

 1  question.

 2          MR. MORIARTY:  Yes.

 3          MR. BASSETT:  I'll rephrase the question.  I was

 4  not, Your Honor, intending to affect the waiver of the

 5  confidentiality of the deposition transcript.

 6          MR. MORIARTY:  Thank you.

 7          THE COURT:  So then what we'll have to do then,

 8  we're going to have to make a note in the transcript.  I'm

 9  looking at the courtroom deputy.  We're going to have to

10  strike the prior question and answer because Attorney

11  Bassett's going to ask a new question.  Okay?

12          That's -- because we're not we don't have the

13  luxury of being able -- and I'm not saying I would -- it

14  would be nice, but we don't have the luxury of being able to

15  look at a transcript while it's -- while it's being recorded.

16          So I have to help the courtroom deputy understand

17  that she needs to strike the prior question and answer.

18  That's going to be stricken from the transcript.  Okay?

19          So she has to make a note of that, so we just have

20  to give her a minute.  Okay?

21          You all set?  Okay.  All right.  Now we're back on

22  the record.  Not that we were off the record, but she had to

23  make a note.  And now, Attorney Bassett, you can ask your

24  question.

25  BY MR. BASSETT:

```
 1   Q     Miss Guo, this house that's pictured in Exhibit 10,
 2   your mom, according to you, rents that house for
 3   approximately $30,000 per month.  Correct?
 4   A     Yes.
 5   Q     But you don't know who pays that rent.  Correct?
 6   A     I don't remember.
 7   Q     And your mom is not currently employed.  Correct?
 8   A     Correct.
 9   Q     Miss Guo, you also took some vacations since the entry
10   of the preliminary injunction on December 21st, 2023.
11   Correct?
12   A     Yes.
13   Q     For example, you took a vacation to Beverly Hills at
14   one point?
15   A     Beverly Hills, yes.
16   Q     And you flew first class on that vacation?
17   A     Yes.
18   Q     And you stayed at the Melbourne Hotel, which is a five
19   star hotel in Beverly Hills?
20   A     Yes.
21   Q     And you don't remember who paid for this trip.  Right?
22   A     I don't remember.
23   Q     You also took a trip to Florida with your mom, your
24   boyfriend, and another friend of yours.  Right?
25   A     Correct.
```

1    Q      You again flew first class?

2    A      Yeah.  Yes.

3    Q      And you stayed at a rental house that cost $30,000 per

4    week?

5    A      Yes.

6    Q      And you don't remember who paid for that.  Right?

7    A      Correct.

8    Q      Miss Guo, you also, in fact, had some expenditures

9    where you paid for other people's expenses.  Right?

10   A      What expenses are you referring to?

11   Q      For example, you paid a legal bill for a law firm that

12   performed work for your mother.  Correct?

13   A      Correct.

14   Q      You also paid expenses for your father's criminal

15   counsel.  Correct?  In his criminal trial.  Correct?

16   A      Do you mean legal fees?

17   Q      Well, you know a person named Sabrina Shroff.  Correct?

18   A      Yes.  I do.

19   Q      She's one of the attorneys who represented your father

20   in his criminal case?

21   A      Yes.

22   Q      She's never performed legal work for you.  Correct?

23   A      Yes.

24   Q      So for example, during the criminal trial, you bought

25   meals for Ms. Shroff and her team.  Correct?

1    A     Yes.

2              THE COURT:  Mr. Bassett, just could you spell the

3    person's last name, Serena what?

4              MR. BASSETT:  Yes, of course, Your Honor.  Shroff.

5    S-H-R-O-F-F.

6              THE COURT:  Thank you.

7    BY MR. BASSETT:

8    Q     Miss Guo, could you please go to the Trustee's Exhibit

9    18?

10   A     Okay.

11   Q     Miss Guo, do you recognize this as a WhatsApp message

12   exchange between you and Ms. Shroff on June 23rd, 2024?

13   A     I see it.

14   Q     At the top of the message chain, Ms. Shroff says to

15   you, Mei, please can you get Sid Scott and me sushi?  And

16   then you respond, yep.  Do you see that?

17   A     Scott, I know.  I see it.

18   Q     And then, two below, Ms. Shroff said not Bondi.  And

19   then if you skip five messages below that, she had too much

20   money with an exclamation point.  Do you see those messages

21   that she sent you?

22   A     I see it.

23   Q     Okay.  Now I want you to go to the next page, then I

24   want to focus you on the third to last text message.  Ms.

25   Shroff said, Mei, thank you, but you spend too much money.

1  And then you responded, just enjoy the food, Sabrina.  If I

2  can't afford it, I will definitely let you know.

3  Do you see that?

4  A     I see it.

5  Q     That's a -- and you sent that message.  Correct?

6  A     Yes.

7  Q     Could you please go to Trustee's Exhibit 19?  Miss Guo

8  recognized this as another WhatsApp exchange between you and

9  Ms. Shroff talking about ordering food for the legal team.

10 A     I see it.

11 Q     And if you go down, the first page that has messages,

12 the third from the bottom, Ms. Shroff says, Mei, you're crazy

13 to spend this money, exclamation point.  Do you see that?

14 A     Yes.  I see it.

15 Q     And then you responded, it's for you.  Nothing is too

16 expensive for you.  Correct?

17 A     I see it.

18 Q     In addition to buying food for your father's criminal

19 counsel, you also ordered them car services such as Uber.

20 Correct?

21 A     Yes.

22 Q     And in fact, on one occasion, you actually bought Ms.

23 Shroff a new iPhone 15.  Correct?

24 A     Yes.

25 Q     Now, Miss Guo, you also, speaking of paying expenses

1  for others, you paid hotel expenses for two supporters of

2  your father who attended his trial in the summer of 2024.

3  Correct?

4  A     Yes.

5  Q     Those two supporters are Zao Ying Yi (phonetic) and

6  Haidong Hao (phonetic).  Correct?

7  A     Yes.

8  Q     You bought hotel rooms for them at the Marriott Essex,

9  New York Hotel and the Plaza Hotel.  Correct?

10  A     Marriott Essex Plaza Hotel.  Right.  Yes.

11  Q     And are you aware that Haidong Hao used to be the

12  chairman of the Rule of Law Foundation?

13         MR. MORIARTY:  Objection, Your Honor.  Lack of

14  foundation.

15         MR. BASSETT:  I'll move on, Your Honor.

16         THE COURT:  Okay.

17  BY MR. BASSETT:

18  Q     Now, Miss Guo, I would like to, ask you some questions

19  about the gifts of loans or the money that you received since

20  December 21st of 2023, according to the testimony you've

21  given and the papers that you've submitted.

22  A     Okay.

23         MR. BASSETT:  Now, and I'm going to -- I'm going

24  to flag this for counsel.  I think I'm going to at this

25  point, I will be mentioning some names of individuals that I

 1  expect counsel does not want me to put on the docket or put

 2  on the public record.

 3          MR. MORIARTY:  That is correct, Your Honor.  I

 4  would ask that this portion of the hearing be under seal.

 5  Miss Guo, I expect, will be identifying the names of

 6  individuals who have assisted her.

 7          THE COURT:  Okay.  Just hold on one second.  So

 8  attorney Claiborn?

 9          MS. CLAIBORN:  Your Honor, I'm not privy to what

10  names we're going to be talking about, and I don't know that

11  they are so exclusive as to be the only one human being on

12  the planet that has that particular name.  And I don't know,

13  what the basis would be for suggesting that simply uttering

14  the name in this courtroom would subject somebody to

15  something somewhere.

16          THE COURT:  I understand your point, and I'm going

17  to seal it for now, Attorney Claiborn, and then we will see

18  how things go.  Now so, Attorney Bassett, you have to wait a

19  moment so that the courtroom deputy can make the appropriate

20  notation for the record.

21          And Attorney Bassett, when you ask these

22  questions, when you get to a point -- well, when we're not

23  going to be asking these questions, you could stop and so we

24  can have time to put the record, you know, stop the sealing

25  of the record.  Okay?

1              MR. BASSETT:  Understood, Your Honor.

2              THE COURT:  All right.  So give the courtroom

3    deputy a moment, please.

4              THE DEPUTY:  I'm sealing the record.

5              THE COURT:  Okay.  Thank you.  Go right ahead.

6    BY MR. BASSETT:

7    Q     Now, Miss Guo, you are the owner of a coffee shop

8    located in SoHo in New York City.  Correct?

9    A     Yes.

10   Q     And that that coffee shop is called the Lost Draft.  Is

11   that the name of it?

12   A     The Lost Draft.  Correct.

13   Q     And then the entity that owns that coffee shop is named

14   Gypsy Mei, and you are the sole owner of Gypsy Mei.  Correct?

15   A     Correct.

16   Q     And during the preliminary injunction period, as I'll

17   call it, from December 21st, 2023, to the present, you've

18   sent hundreds of thousands of dollars of your money to the

19   Lost Draft to help fund its operations.  Right?

20   A     I don't remember specific -- how specifically how much

21   it was.

22   Q     Okay.  And the same -- are you aware that the Lost

23   Draft also received almost $900,000 in funding from an entity

24   called Greenwich Land?

25              MR. MORIARTY:  Objection, Your Honor.  Lack of

1  foundation.

2         MR. BASSETT:  Almost 900,000.

3         THE COURT:  What foundation do you need?  He just

4  talked about the Lost Draft.  She said it's owned by -- she

5  testified in response to the question that it's owned by

6  Gypsy Mei.  She's the sole owner.  She's the sole owner of

7  Gypsy Mei.  And he asked, did you know that -- I mean, this

8  is what I heard anyway.  Did you know that there was a

9  $900,000 payment?

10        I don't know if you said payment, but by Greenwich

11 Land to Gypsy Mei.  I don't know what other foundation you

12 need.

13        MR. MORIARTY:  Well, there's a difference between

14 did it happen and did you know it happened?

15        THE COURT:  Well, she just testified.  She's the

16 sole owner.  She can testify whether she knew or didn't know.

17 That's all -- that's what the question --

18        MR. MORIARTY:  The question assumes that it

19 happened.  That's where the foundation is lacking.

20        THE COURT:  She can -- she can answer the

21 question.  Objection's overruled.

22        THE WITNESS:  Can you give me the time frame?

23        MR. BASSETT:  Perhaps.  One moment, please, Your

24 Honor.

25        THE COURT:  Sure.

1          MR. BASSETT:  The time period would have been May

2     to December of 2022.

3          MR. MORIARTY:  Now I have an objection.

4     Relevance, Your Honor.  We're here about events that happened

5     after December 21st, 2023.

6          MR. BASSETT:  Your Honor, I'd like a little bit of

7     latitude.  I'm not going to ask any more questions.  I just

8     want an answer to this one.  I'm not going down a rabbit

9     hole.

10          THE COURT:  I'm going to let the -- I'm going to

11     overrule the objection and give it whatever weight it's worth

12     with regard to the witness' answer.

13          MR. MORIARTY:  Thank you.

14          THE WITNESS:  I don't remember.

15     BY MR. BASSETT:

16     Q     Are you aware that Greenwich Land has also received

17     funding from an entity called Leading Shine?  And I misspoke.

18     I'm sorry.  I misspoke.  I think I said Greenwich Land.  The

19     question should have been, are you aware that Gypsy Mei also

20     received funding from an entity called Leading Shine?

21          THE COURT:  Don't answer yeah.  Don't answer the

22     question yet.

23          MR. MORIARTY:  It's a relevance objection, Your

24     Honor.

25          THE COURT:  I can't hear you, Attorney Moriarty.

1          MR. MORIARTY:  I'm sorry.  I'm objecting on the

2   basis of relevance.

3          MR. BASSETT:  And Your Honor, again, that's

4   actually the last question on other entities having funded

5   her coffee shop.  I think it's relevant, especially in the

6   context of this case, how Miss Guo's business is being

7   funded.  She obviously does have a foundation to answer those

8   questions.  Not going to go down a long rabbit hole here.  I

9   think it's an appropriate question.

10          THE COURT:  I'm going to overrule the objection,

11   but give the answer any weight that I think is appropriate

12   under the circumstances.

13          THE WITNESS:  I don't remember.

14   BY MR. BASSETT:

15   Q    Now, of the money that you have spent since December

16   21st, 2023, funding the Lost Draft, some of that was done via

17   wire transfers in your Wells Fargo account.  Right?

18   A    Correct.

19   Q    So if you go to Trustee Exhibit 4, please, and look at

20   Page 00065.

21   A    Yes.  I'm on it.

22   Q    About a third of the way down the page, there's a wire

23   transfer, $10,000 to Gypsy Mei.  Right?

24   A    Yes.

25   Q    And if you go to Trustee Exhibit 5 and look at Page

1   0002, there's a wire transfer from your Wells Fargo account

2   of $25,000 to Gypsy Mei.  Correct?

3   A     Yes.

4   Q     And then if you go to the next page of the same

5   document on October 7th, another $20,000 wire transfer from

6   your checking account to Gypsy Mei.  Right?

7   A     Correct.

8   Q     And finally, if you go to Trustee Exhibit 7 and look on

9   the Page 0020 at the bottom.

10  A     Okay.

11  Q     And on December 17th, you just see another transfer of

12  $20,000 from your checking account to Gypsy Mei.  Right?

13  A     Correct.

14  Q     And now in addition to the $75,000 in wire transfers

15  that we've looked at, you also, at times, dropped off literal

16  bags of cash at the coffee shop.  Right?

17  A     I have given cash before.  Yes.

18  Q     And sometimes you would have your assistant, Jason,

19  drop off an actual bag full of cash.  Right?

20  A     Jason is not my assistant.

21  Q     Okay.  Jason's your friend.  Right?

22  A     Yes.

23  Q     Sometimes you would have your friend Jason drop off

24  literal bags of cash at the coffee shop.  Right?

25  A     Yes.

1   Q     And you said when you were estimating the total amount

2   of cash that you had delivered to the coffee shop from

3   December 21st, 2023, to the present, you said it was around

4   $100,000.  Right?

5   A     Yeah, approximately that.

6   Q     And some of this $100,000 was gifted to you by friends

7   and relatives, right?

8   A     Yeah.

9   Q     For example, I think you said that your younger cousin,

10  when he was in the United States, gave you $10,000 in cash.

11  A     Yes.

12  Q     And that younger cousin is a 15-year-old?

13  A     Yes.

14  Q     And that cousin and the other people who gave you cash

15  that you used to send to the Lost Draft, they all just gave

16  you the money.  They didn't tell you that it had to be spent

17  on the Lost Draft.  Right?

18  A     Yes.

19  Q     Now, Miss Guo, your assistant and the manager at the

20  Lost Draft is a person named Violeta Camaj.  Correct?

21  A     Yes.

22  Q     And you often communicated with her about funding needs

23  of the Lost Draft, right?

24  A     Yes.

25  MR. BASSETT:  Miss Guo, if you could please go to Trustee's

1  Exhibit 23.  Miss Guo, do you recognize this as a WhatsApp

2  exchange between you and Ms. Kamaj, dated April 3rd, 2024?

3            THE COURT:  Can you spell the person's name,

4  please?

5            MR. BASSETT:  Yes, Your Honor.  First name,

6  Violeta, V-I-O-L-E-T-A.  Last name, Camaj, C-A-M-A-J.

7            THE COURT:  Thank you.

8            THE WITNESS:  Yes.

9  BY MR. BASSETT:

10 Q    And if you look, Miss Guo, three down from the top, you

11 wrote, can you go deposit the cash today?  I have no time to

12 do it.  Ms. Violeta responded, yes.  I'm here.  You

13 responded, I can ask Jason to drop the cash to you now.

14 And then she responded, okay.  Do you see that?

15 A    I see it.

16 Q    And then if you go down the page, toward the bottom,

17 Violeta says or Ms. Camaj says, how much is in the sack?  And

18 you said 10K, and she said okay deposit done.  Do you see

19 that?

20 A    I see it.

21 Q    So this is on example of you having Jason drop a sack

22 containing $10,000 in cash off at the coffee shop, right?

23 A    Yes.

24 Q    Miss Guo, could you please go to Trustee Exhibit 24?

25 Miss Guo, is this another WhatsApp exchange between you and

1  Ms. Camaj this time dated, July 24th, 2024?

2  A     I see it.

3  Q     And at the top --

4           MR. MORIARTY:  Your Honor, I'm sorry to interrupt

5  Attorney Bassett, but this document, the last document that

6  he read into the record, they're under seal.  I have no,

7  obviously, issue with him asking questions about the

8  document.  But if all he's going to do is read it into the

9  record, then maybe we can just move on.

10          THE COURT:  I'm not sure we can move on because

11  I'm not going to look at it unless somebody tells me what I'm

12  looking at.

13          MR. BASSETT:  Exactly, Your Honor.  I'm

14  highlighting some language for the Court's consideration.  I

15  have one -- two questions, and I don't have another document

16  after this one.

17          MR. MORIARTY:  Well, if we can ask him without

18  reading the document into evidence, I have no issue with it.

19          MR. BASSETT:  I would like to read the language,

20  Your Honor.

21          THE COURT:  Well, I think that the issue is, I'm

22  looking at this exhibit, and it's Exhibit 24.  And there's a

23  section of it that is marked blocked out as nonresponsive,

24  which is not the section that Attorney Bassett is reading

25  from, obviously, since it's blocked out.

1              And you had no objection to the admission of

2    Exhibit 24.

3              MR. MORIARTY:  I don't have an objection to the

4    admission of the exhibit, Your Honor.  The exhibit's under

5    seal, and it's being read into an unsealed record.  That's my

6    point.

7              MR. BASSETT:  Your Honor, I plan to read four

8    lines from this document that don't even reference a cash

9    dollar amount.  I have no idea how it could possibly be

10   something that's so sensitive that needs to be sealed.

11             MR. MORIARTY:  Your Honor, I don't want to waste

12   time.  We'll see where it goes.

13             THE COURT:  Okay.  Thank you.  All right.  Go

14   ahead.

15   BY MR. BASSETT:

16   Q    Miss Guo, you see at the top of this document, it says,

17   hi.  And this is from Ms. Camaj to you.  Hi.  Why so much

18   dollar sign dollar sign.  And then you responded dot dot dot

19   dot dot.  You really should start remembering what I said to

20   you.  Do you see that?

21   A    I see it.

22   Q    And then at the bottom of this text chain before the

23   nonresponsive block, you sent two -- you sent two messages.

24   First, you said, I said I will give you a -- sorry.  You

25   said, I said I will give you bunch cash and let me know when

1  it runs out, and I will give you more.

2  A      I see it.

3  Q      And then you said also don't mention this here in the

4  last text.  Right?

5  A      Yes.

6  Q      And you wrote that text because you don't like -- you

7  told me at least that you don't like to talk about money on

8  applications because people might be spying.  Is that right?

9  A      I never use the term spying.  What I meant to say is

10  scamming.

11  Q      Scamming.  Okay.  Miss Guo, just focusing again on the

12  second to last text message where you said, you would give a

13  bunch of cash and to have her let you know when it runs out,

14  and then you will give more.  My question for you is, if you

15  were relying on people to give you cash by way of unsolicited

16  gifts or loans, how would you know that you would have cash

17  to provide to Ms. Camaj whenever she needed it?

18  A      First of all, I say that because at that point in time,

19  the business in the cafe was very bad.  It was not doing so

20  well.  I was just telling them that so that they have they

21  can keep their morale high.  They can continue to work in the

22  cafe, with stable emotion.  Secondly, at that time, when I

23  was telling her that I did have some cash or some money at

24  hand that I could provide if need be.

25  Q      Okay.  And you said if the cash ran out for her to let

1  you know and you would give more.  Right?

2  A    Yes.

3  Q    Miss Guo, all of the -- we've talked about spending

4  from your various bank accounts and cash all from the

5  December 21st, 2023, to the present time period.  Did you

6  ever ask the Trustees or his counsel's permission before

7  spending any of that money?

8  A    I did not.

9  Q    And you didn't ask the Court's permission either,

10  right?

11  A    I did not.

12        MR. BASSETT:  No further questions, Your Honor.

13        THE COURT:  Okay.  Thank you.  Attorney Moriarty?

14        MR. MORIARTY:  Yes, Your Honor.

15        THE INTERPRETER:  Your Honor, can I interrupt?  I

16  just need to drink some water.

17        THE COURT:  Oh, sure.  All right.  That's fair.  I

18  mean, we have been -- why don't we just take a five-minute

19  break?  That's it.

20        Okay?  And will you remind Miss Guo that she's

21  under oath during the break and that she's not to communicate

22  with anyone while we're at the break.

23        We'll take a five-minute break.

24        (Off the record at 5:21 p.m.)

25        (On the record at 5:31 p.m.)

 1              THE COURT:  All right.  Attorney Moriarty, would

 2  you like to proceed with cross examination?

 3              MR. MORIARTY:  I would, Your Honor.  I have

 4  exhibit binders that I can hand up.

 5              THE COURT:  Sure, thank you.  You can just pass

 6  them to one of the law clerks, please.  Thank you.  Thank

 7  you.  Go right ahead.  Yes.  Thank you.

 8  CROSS EXAMINATION

 9  BY MR. MORIARTY:

10  Q    Miss Guo, following your examination by Attorney

11  Bassett, I just want to clarify or make sure that I

12  understand.  The sources of funds that you've received since

13  December 21st, 2023, have been gifts, loans, and compensation

14  from the Lost Draft.  Correct?

15              MR. BASSETT:  Objection.  Leading, Your Honor.

16              THE COURT:  I'll allow it.

17              THE WITNESS:  Yes.

18  BY MR. MORIARTY:

19  Q    Are you paid weekly by the Lost Draft?

20  A    Yes.

21  Q    How much on a weekly basis are you paid by the Lost

22  Draft?

23  A    About more than $200.

24  Q    How much more than $200?

25  A    I think it was around 260 something.

1  Q      And has that been the approximately the same amount

2  that you've received from the Lost Draft weekly since

3  December 21st, 2023?

4  A      Correct.

5  Q      And to what account is the money from the Lost Draft

6  deposited?

7  A      My Chime account.

8  Q      You were asked by Attorney Bassett if you asked the

9  Trustee or his counsel permission before spending any money

10  on or after December 21st, 2023?  Do you recall that

11  question?

12  A      Correct.

13  Q      Why didn't you ask that permission of the Trustee or

14  his counsel?

15  A      Because I didn't -- because I didn't know why I should

16  do it.

17  Q      You were also asked if you asked the Court for

18  permission to spend any money after December 21st, 2023, and

19  I believe you testified you did not.  Why didn't you ask the

20  Court for that permission?

21  A      It's the same answer that I didn't know that I have to.

22  Q      What is your understanding of what the injunction

23  (inaudible)?

24  A      My understanding is that injunction prevented me from

25  spending or transfer any of the proceed from the Bombardier

1   Aeroplane, which is also the money or the fund inside JNFX.

2   Q     To your knowledge, Miss Guo, were the funds in the JNFX

3   account from the Bombardier Aeroplane brought into the United

4   States in compliance with the injunction?

5   A     Yes.

6   Q     And what is your understanding of what happened with

7   those funds when they were brought into the U.S.?

8   A     Trustee obtained it.

9   Q     To your knowledge, the Trustee presently has the funds

10  or at least had the funds?

11  A     Yeah.

12  Q     Do you remember the approximate amount of the -- of the

13  JNFX funds that were brought back into the U.S. that the

14  Trustee now has and or had?

15  A     Nine million plus.

16  Q     Approximately 10.2 million refresh your memory?

17  A     Yes.

18  Q     Since December 21, 2023, you have primarily paid your

19  expenses from your Wells Fargo account.  Correct?

20  A     Yes.

21  Q     Prior to December 21st, 2023, from what account did you

22  pay your expenses?

23  A     Wells Fargo and Chime.

24  Q     Okay.  Was Wells Fargo the primary account from which

25  you paid your expenses prior to December 21, 2023?

1   A      Yeah.

2   Q      Fair to say that you continued your practice of paying

3   your expenses from Wells Fargo that existed before the

4   injunction, after the injunction?

5   A      Correct.

6   Q      Can you take a look in the white binder at Exhibit 6,

7   please?

8   A      I see it.

9   Q      And could you describe generally what Exhibit 6 is,

10  please?

11  A      It's a letter from my bank, Wells Fargo, informing me

12  that the transaction or the money inside my Wells Fargo

13  account has been taken away.

14          THE INTERPRETER:  Sorry, the interpreter needs to

15  reinterpret.

16          THE WITNESS:  This is a letter from my bank, Wells

17  Fargo, informing me that the bank statement of my Wells Fargo

18  account has been obtained by someone.

19  BY MR. MORIARTY:

20  Q      If you look at the top under the Wells Fargo logo, do

21  you see the date of the letter?

22  A      I see it.

23  Q      What is that date?

24  A      December 22, 2023.

25  Q      And that's the day after the injunction that we've been

1  talking about today?

2  A    Correct.

3  Q    Do you know approximately when the Trustee filed the

4  contempt motion that we're hearing about today?

5  A    I don't remember.

6  Q    Does December of 2024 refresh your memory?

7  A    Yes.

8  Q    So there's if you look down, towards the bottom of the

9  letter, it says if you have questions, and then there's the

10 name of the law firm and an individual named Patrick R.

11 Linsey, Esquire.  Do you know who that is?

12             THE INTERPRETER:  Interpreter needs clarification.

13             THE WITNESS:  It's the Trustee's attorney.  He

14 deposed me before.

15 BY MR. MORIARTY:

16 Q    And by the Trustee, you mean the Chapter 11 Trustee in

17 your father's bankruptcy?

18 A    Yes.

19 Q    So Miss Guo, in light of the injunction that had

20 entered on December 21st, 2023, and this letter from Wells

21 Fargo stating that they were going to provide your account

22 documentation to the Trustee's counsel, did you do anything

23 at all to change the way you pay your expenses after you

24 received this letter?

25 A    No.

1  Q     You continued to pay your expenses from your Wells

2  Fargo account going forward.  Correct?

3  A     Yeah.

4  Q     You can take a look, please, at Exhibit 2.

5  A     I see it.

6  Q     And this is a lease for an apartment in New York City

7  that you had entered into on June 15th, 2023.  Correct?

8  A     Yes.

9  Q     If you look at the boxes towards the top in the middle,

10  what was the ending date for the lease?

11  A     May 31st, 2024.

12  Q     And the beginning date was July 1, 2023.  Correct?

13  A     Yes.

14  Q     As of the time that the injunction entered, this lease

15  had already been in effect for about six months.  Right?

16  A     Yes.

17  Q     So Miss Guo, did you believe at the time that the

18  injunction entered that it prevented you from paying the

19  remainder of the lease obligation or the remainder of the

20  rent obligation on this lease?

21  A     I do not know.

22  Q     Did you believe that before you paid the rent after

23  December 21st, 2023, that you had to ask permission of the

24  Trustee or the Court?

25  A     I do not know.

1  Q     You do not know or, no, you did not need to ask the

2  Court permission?

3          MR. BASSETT:  Objection, Your Honor.  Asked and

4  answered and leading.

5          THE COURT:  Sustained.  Sustained.  Thank you.

6  BY MR. MORIARTY:

7  Q     All right.  If you can look at Exhibit 1, please.

8  A     Yes.  I'm on it.

9  Q     Okay.  So Exhibit 1 is under seal, but I'm not going to

10 ask anything that would require the record to be sealed.

11 A     Okay.

12 Q     So, Miss Guo, you took a trip to Florida at some point

13 in time in 2023, early 2024.  Correct?

14 A     Correct.

15 Q     And if you look at this email dated December 10th,

16 2023, and then you turn a couple of pages in, Page 4 of 5, do

17 you see that there was an amount paid?

18 A     I know.  I see it.

19 Q     And then if you turn back to the -- to the first page

20 of the email, what is the date of the email?

21 A     December the 10th, 2023.

22 Q     So according to this email, when was the amount for the

23 accommodations for this trip paid?

24 A     December 10, 2023.

25 Q     Thank you.  We can put that to the side.  Miss Guo, the

1  money that you received from friends and family, whether it

2  was for deposit into your Wells Fargo account or for your

3  business, to the best of your knowledge, was any of that

4  money your father's money?

5  A     No.

6  Q     To the best of your knowledge, was any of the money

7  that you received as gifts or loans since December 21, 2023,

8  from any entity or entities that the Trustee has alleged are

9  owned by your father?

10  A     No.

11  Q     To the best of your knowledge, is any of the money that

12  you've received as gifts or loans since December 21st, 2023,

13  money from any of the entities that the Trustee has alleged

14  are alter egos of your father?

15  A     No.

16  Q     I just need to fix my first question.  To the best of

17  your knowledge, is any of the money that you have received in

18  the form of gifts or loans since December 21st, 2023, your

19  father's money?

20  A     No.

21  Q     Could you describe, generally, Miss Guo, for the Court

22  what expenses you have?

23  A     The rent.  Medical bills.  Utilities.  Utility bills.

24  Food.  And also some entertainment.

25  Q     Do you own a car?

1   A     No.

2   Q     How do you -- how do you travel?  How do you get from

3   one place to another?

4   A     Either I use the subway or Uber.

5   Q     Is that another expense?

6   A     Yes.  Transportation too.

7   Q     Do you pay for clothing?

8   A     Sometimes.

9   Q     Okay.  Is that another expense?

10   A     Yes.

11   Q     Are there any other expenses you can think of that you

12   pay on a monthly basis?

13   A     The supplies, day to day supplies at home.

14   Q     Okay.  Miss Guo, I'm not asking you if you own an

15   interest in any particular entity.  But to the extent that

16   you do own an interest in an entity, have you transferred any

17   ownership interest at any time since December 21st, 2023?

18   A     I did not.

19   Q     Since December 21st, 2023, to the best of your

20   recollection, have you signed anything transferring an

21   interest in any entity in which you have an ownership

22   interest?

23   A     I did not.

24   Q     Since December 21, 2023, to the best of your

25   recollection, have you signed anything that you believed was

1  intended to transfer an interest in any entity in which you

2  may have an ownership interest?

3  A     No.

4  Q     Can you take a look in the big binder, the Trustee's

5  exhibit binder at Exhibit 60?  Exhibit 61.

6  A     Okay.

7  Q     Do you recognize this as a statement from your Bank of

8  China account?

9  A     Yes.

10  Q     And you were asked some questions by Attorney Bassett

11  about this document on direct.  The available balance of a

12  little bit more than 2.5 million RMB, to the best of your

13  recollection, has that been the balance since December 21st,

14  2023?

15  A     Correct.

16  Q     Have you made any withdrawals from your Bank of China

17  account since December 21st, 2023?

18  A     No.

19  Q     Have you spent anything from your Bank of China account

20  since December 21st, 2023?

21  A     No.

22  Q     Do you know, roughly, what the value of your Bank of

23  China account is today in U.S. Dollars?

24  A     Between 200 to 300,000 U.S. Dollars.

25  Q     And you can put that to the side.  Thank you.  With the

1   with the Chime account that you maintain, Miss Guo, is there

2   more than one component to that account?

3   A     There is one checking account, and another component to

4   it is called Credit Builder.

5   Q     Could you describe, generally, for the Court how that

6   works?

7   A     Every week when I receive the -- my pay from the cafe,

8   it will be banked into the Chime account, and it will -- it

9   will automatically transfer from the checking account into

10   the Credit Builder account.  The Credit Builder account was

11   as credit building.  What's to build the credit for me.

12   Q     Fair to say that the vast majority of the funds you

13   received from the Lost Draft, Gypsy Mei, from December 21st,

14   2023, to the present into your Chime checking account were

15   then transferred to the Credit Builder account.

16   A     Correct.

17   Q     Miss Guo, you were asked some questions about the

18   apartment that you currently reside in, which I believe the

19   monthly rent is $19,500.  Why did you choose that apartment?

20   A     First of all, it's because this apartment is very safe.

21   The security is top notch.  And secondly, I have also applied

22   to other apartments, but they did not accepted my

23   application.  This is the only one that accepted mine.

24   Q     All right.  Turning your attention for a minute to the

25   Lost Draft.  Could you describe generally what that is?

```
 1  A      It's a film and also writer's team cafe in Soho.  It's

 2  about 1,500 square feet.

 3  Q      What does writers team mean?

 4  A      We collected film scripts and helped them develop the

 5  scripts.

 6  Q      Is there a particular industry, Miss Guo, in which you

 7  have training or education?

 8  A      Film industry.

 9  Q      Is that what the Lost Draft is geared toward?

10  A      Yes.

11  Q      Is the Lost Draft an operating business?

12  A      Yes.

13  Q      Does it have any employees?

14  A      Yes.

15  Q      And how many employees does it have?

16  A      Eight.

17  Q      And the source of the funds that you put into the Lost

18  Draft, what were the sources of those funds?

19  A      The source of the fund is from my saving myself, from

20  my family and friends.

21  Q      And if you if you, Miss Guo, didn't put money into the

22  Lost Draft periodically, what would happen with that

23  operating business?

24  A      It's probably closed by now.

25  Q      And what would happen with the eight employees that it
```

1  employs?

2  A    They'll be jobless.

3  Q    You were asked some questions by Attorney Bassett about

4  your younger cousin, 15 years old, giving you 10,000.  Was

5  that his money that he gave you?

6  A    I've answered this question before in the deposition.

7  I told the other attorney that the money was coming from his

8  mother.  His mother asked him to pass it on to me.

9  Q    You were asking questions about paying for food for

10 your father's criminal attorney.  Do you remember about how

11 long your father's criminal trial lasted?

12 A    Two to three months.

13 Q    And you, on occasion, would buy food for your father's

14 criminal trial or criminal counsel when she or she and others

15 were working late?

16 A    Yes.

17 Q    And there was a couple of times when you paid for an

18 Uber for your father's criminal counsel.  Do you recall where

19 she was going to or coming from when you paid for the Uber

20 rides?

21 A    Couple of times of them was because she visited my

22 father, and it was raining, very heavily.  And she was too

23 far from the subway station, so I ordered the Uber for her.

24 Another time was when she has to go to the airport.

25 Q    Okay.  And when you say she was visiting your father,

1 | where would she have been visiting him?

2 | A     MDC Brooklyn.

3 | Q     You were asked some questions about vacations that you

4 | took and flying first class.  There was a trip to California.

5 | Do you recall how that was paid for?

6 | A     The first trip that I paid for, the airplane was by

7 | using my miles and also some credits that I have.

8 |            MR. MORIARTY:  Okay.  I have no further questions,

9 | Your Honor.

10 |            THE COURT:  Thank you.  Attorney Bassett, any

11 | redirect?

12 |            MR. BASSETT:  Just briefly, Your Honor.

13 | REDIRECT EXAMINATION

14 | BY MR. BASSETT:

15 | Q     Miss Guo, you were asked some questions about your Bank

16 | of China account and in particular how the balance in that

17 | account has stayed the same since December 21st, 2023.  Do

18 | you recall that?

19 | A     Yeah.

20 | Q     Isn't it true that when you rented your current new

21 | apartment, you actually tried to use the funds in that

22 | account to pay for your apartment upfront, but you were not

23 | able to get the funds out of the account in time?

24 | A     No.  Never.

25 | Q     You never -- you never tried to use the funds in your

1  Bank of China account to pay upfront the rent for your new

2  apartment?  That's your testimony?

3              MR. MORIARTY:  Asked and answered.

4              THE COURT:  I'm not sure if it was asked and

5  answered.  I think he asked and then he said, you never.  So

6  I'll let it go, and I'll give it whatever weight I think is

7  appropriate.

8              THE INTERPRETER:  Allow the interpreter.

9              THE WITNESS:  No.  It was only a proof of bank

10 balance that the management of the apartment office that

11 required me to provide.

12 BY MR. BASSETT:

13 Q    So you don't recall producing to us in discovery an

14 email exchange between you and the broker for the apartment

15 where you were initially telling her you were going to try to

16 pay the rent upfront, using the money in the Bank of China

17 account?

18 A    I don't remember.

19 Q    You were asked some questions by your counsel.  I think

20 he said -- he asked you if all of the money that you received

21 that you spent since the entry of the preliminary injunction

22 was from gifts, loans, or your Lost Draft salary.  Remember

23 that?

24 A    Yes.

25 Q    And you said yes, right?

1  A     Yes.

2  Q     But when I was asking you questions, you told me that

3  approximately $60,000 that you received was actually loans

4  that people repaid to you that you had made to them.  Right?

5  A     Yes.

6  Q     And also when I was asking you questions, you agreed

7  with me that the expenses that you incurred including two

8  rent payments in December and February of 2023 and '24,

9  respectively, those were with funds that were on deposit in

10  your account prior to the entry of the preliminary

11  injunction.  Right?

12  A     Yes.

13  Q     You were asked some questions by your counsel about the

14  Bombardier proceeds.  And I think you said that you recalled

15  after your memory was refreshed by your counsel that the

16  money that was transferred, to an account in the United

17  States was approximately $10,100,000.  Is that right?

18  A     10.1.

19  Q     10.2.  I'm sorry.

20  A     Yes.

21  Q     Are you aware, though, that the actual sale price of

22  the aircraft was $13,500,000?

23  A     I don't remember.

24  Q     And so 13.5 minus 10.2 is 3.3.  Are you aware whether

25  the Trustee has recovered that $3,300,000?

```
 1   A      What is the number again?

 2   Q      3.3.

 3   A      Can I have the question again?

 4   Q      The difference between 13.5 and 10.2 is $3,300,000.

 5   Would you agree with me?

 6   A      Yes.

 7   Q      Has the Trustee recovered that $3,300,000?

 8   A      I do not know.

 9   Q      Are you aware that the Trustee has also filed claims

10   against you in the adversary proceeding at issue in this case

11   to recover up to $25,000,000 in damages?

12   A      I do.

13   Q      Other than the $10.2 million dollars, has the Trustee

14   recovered any of the balance of that $25,000,000?

15   A      I do not know.

16   Q      You were asking questions by your counsel about whether

17   the money that you received had any -- if it came from your

18   father and entities at issue in the bankruptcy case.  Do you

19   remember those questions?

20   A      I remember.

21   Q      And but, in fact, you don't know the people who gifted

22   you money and who loaned you money, you don't know where they

23   got that money, right?

24   A      Yes.  I do not know.

25   Q      And you didn't ask them.  Right?
```

1    A       Yes.  I did not.

2    Q       Now, you were also asked some questions by your counsel

3    about whether you had transferred since December 21st, 2023,

4    any interest in any entities.  Do you remember that?

5    A       I remember.

6    Q       Do you even know what entities you have an interest in?

7            MR. MORIARTY:  Objection, Your Honor.  It's beyond

8    the scope.  I asked if she transferred anything.  Now he's

9    saying do you even know what you own?

10           (Overlapping voices)

11           THE COURT:  Hold on, everybody.  Hold on.  Got to

12   keep the record straight here.  Hold on a second.

13           MR. BASSETT:  If she has a --

14           THE COURT:  Hold on.  Hold on, please.  Because I

15   can't hear you.  You're all talking over each other.  Try

16   that again, Attorney Moriarty, into the microphone, okay?

17           MR. MORIARTY:  I asked her if she had transferred

18   anything.  She said no.  He's now saying, do you even know

19   what you own, which is, to me, beyond the scope of my

20   examination.

21           MR. BASSETT:  It is squarely within the scope of

22   his examination.  How can her testimony that she didn't

23   transfer any interest possibly be credible?  She doesn't even

24   know if she has interest.

25           THE COURT:  You did ask that question.

1           MR. MORIARTY:  I did.

2           THE COURT:  You did ask the question.  You did --

3    I'm just going to talk for a second.  You did ask the

4    question.  You said, have you transferred any ownership

5    interest in anything you owned since the entry of the

6    preliminary injunction on December 21st, 2023.  That was the

7    question you asked.

8           MR. MORIARTY:  I said I'm not asking you what you

9    own.

10          THE COURT:  No.  But you said, have you

11   transferred -- the question was, have you -- yeah.  You may

12   not be asking her what she owned, but you asked her if she

13   transferred any ownership interest in anything she owned

14   since December 21st, 2023.  That was the question you asked.

15   I mean, I wrote it down.  I'm sure we could go back.  I think

16   he's allowed to ask that question, so I overrule the

17   objection.

18          THE WITNESS:  Can I have the question again?

19          MR. BASSETT:  Could the Court reporter read back

20   the question?  Is that possible?

21          THE COURT:  It's possible.  It'll take a moment.

22          THE COURT REPORTER:  I'm sorry.  Play it back?

23          THE COURT:  Yeah.  We're going to have to play it

24   back.

25          MR. BASSETT:  I'm sorry.

1          THE COURT:  It's not readable, unfortunately,

2  since we only have audio.  But you can --

3          MR. BASSETT:  I can repeat the question, Your

4  Honor.

5          THE INTERPRETER:  Your Honor, the interpreter has

6  the note.  Can I repeat the interpretation instead?

7          THE COURT:  Sure.  What we're trying to figure out

8  is, Attorney Bassett wanted to know whether the court

9  reporter could read back the question.  But the problem is we

10  don't have a transcript.  It's only audio.  So I think

11  Attorney Bassett is going to re-ask --

12          MR. BASSETT:  I'll just re-ask.

13          THE COURT:  -- the question again.  Okay?

14          THE INTERPRETER:  Thank you, Your Honor.  Yes.

15  BY MR. BASSETT:

16  Q    And the question, I believe, was, Miss Guo, are you

17  even aware of the entities, if any, that you have an interest

18  in?

19  A    In order to answer this question, can I speak to my

20  criminal attorney team before I answer that?

21          THE COURT:  No.  You can't.  Sorry.  You can't.

22          MR. TWARDY:  Might have a second, Your Honor?

23  Your Honor, since it's a yes or no question, I have no

24  problems with her answering it.

25          THE WITNESS:  I do.

1  BY MR. BASSETT:

2  Q     What entities do you have an interest in?

3            MR. TWARDY:  Your Honor, given the pending

4  criminal case against her father, I'm going to instruct her

5  not to answer that question.

6            THE COURT REPORTER:  I'm sorry, could the attorney

7  just say his name again?

8            THE COURT:  Attorney Twardy, T-W-A-R-D-Y.

9            THE COURT REPORTER:  Thank you.

10            THE COURT:  Just everybody hold on.  Everybody

11  hold on.  You're instructing the witness not to answer the

12  question because of her father's criminal proceeding?

13            MR. TWARDY:  Because of potential Fifth Amendment

14  issues, Your Honor.  I would have to ask --

15            THE COURT:  Doesn't she have to take the Fifth

16  Amendment --

17            MR. TWARDY:  Your Honor, yes --

18            THE COURT:  Aren't you going to instruct her then

19  to invoke her --

20            MR. TWARDY:  Your Honor, thank you.  Your Honor,

21  I'm going to instruct her to take the Fifth Amendment on this

22  question.

23            THE COURT:  Okay.

24            THE WITNESS:  I am pleading Fifth Amendment.

25            THE COURT:  Okay.  Thank you.

1  BY MR. BASSETT:

2  Q     Setting aside entities in which you currently hold an

3  interest, are you aware of any -- strike that.

4       In addition to the entities in which you currently hold

5  an interest, are there other entities in which you have held

6  an interest at any time since December 21st, 2023?

7            MR. MORIARTY:  Objection, Your Honor.  Maybe it's

8  just me --

9            THE COURT:  I can't hear you, Attorney Moriarty.

10            MR. MORIARTY:  I'm sorry.  That question was very

11  confusing to me, and maybe it's just me, and maybe that's not

12  a grounds to object.

13            THE COURT:  I don't think there is a grounds to

14  object.  Sorry.

15            MR. MORIARTY:  It's fine.

16            THE COURT:  Okay.

17            MR. BASSETT:  I object to the speaking objection.

18            THE INTERPRETER:  Can I have the question again?

19  BY MR. BASSETT:

20  Q     Yes.  In addition to any entities in which you

21  currently hold an interest, are there any other entities in

22  which you have held an interest at any point in time since

23  December 21st, 2023?

24  A     I still have a film production company.

25  Q     Do you still hold the interest in that film production

1  company?

2  A      Yes.

3  Q      Okay.  So my question is, in addition to the film

4  production company and any other companies in which you hold

5  an interest, are there any other companies that you did at

6  one point hold an interest since December 21st, 2023, but no

7  longer hold an interest?

8  A      I still don't understand the question.

9              MR. BASSETT:  No more questions, Your Honor.

10             THE COURT:  Okay.  Thank you.  Any recross,

11  Attorney Moriarty?

12             MR. MORIARTY:  May I have one second, please, Your

13  Honor?

14             THE COURT:  Sure.

15             MR. MORIARTY:  No, Your Honor.

16             THE COURT:  Okay.  Thank you.  So, Attorney

17  Bassett, Attorney Moriarty, then I'm going to excuse -- allow

18  Miss Guo to step down and be excused unless you're going to

19  call her again.  Which I don't know why you would be, but I

20  wanted to make sure that that's the case.

21             MR. MORIARTY:  I don't think she would be very

22  happy with that, Your Honor.  It is not the case.  Obviously,

23  she's free to remain if --

24             THE COURT:  Of course, she can remain in the

25  courtroom.  But I mean, she can step down from the witness

1  stand, is what I'm saying.

2           MR. MORIARTY:  Thank you, Your Honor.

3           THE COURT:  Attorney Bassett?

4           MR. BASSETT:  Yes, Your Honor.

5           THE COURT:  Okay.  You have no more -- I

6  understand.  So it is 6:20.  Or there -- well, it's not quite

7  6:20.  You can step down, Miss Guo.  Thank you.

8           It's 6:18.  I can't keep the Court staff any

9  longer.  They've already stayed past their allotted time.  So

10 we're going to have to continue this hearing, which I don't

11 think any of you should be surprised by, essentially.  So

12 what time do you want to start tomorrow?  10:00?

13          MR. HENZY:  I'm going to argue, Your Honor.

14          THE COURT:  I can't hear you there, Mr. Henzy.

15          MR. HENZY:  That's for me, that's fine, Your

16 Honor.

17          THE COURT:  Okay, thank you.  Sorry.  The problem

18 is with all these equipment, sometimes if you don't speak

19 right into the microphone, it's just hard to hear.

20          MR. HENZY:  It's seldom, Your Honor, that people

21 say they can't hear me, but I will remember that tomorrow.

22 Okay.

23          THE COURT:  Well, it's not your it has to do with

24 the equipment and the fans and all those things, Attorney

25 Henzy.  Okay?

1          THE INTERPRETER:  Thank you.  Your Honor, can the

2    interpreter --

3          THE COURT:  Oh, yes.  I'm so sorry.  Yes, you may.

4    Thank you very much for your help today.  Thank you.  Sorry

5    about that.  I should have said that at the same time.

6          MR. DESPINS:  Your Honor, given that it's only an

7    oral argument, would you entertain Zoom oral argument or no?

8          THE COURT:  I would entertain it, but I need to

9    think about it for a moment.  I think the reason I'm thinking

10   of -- what other -- are you -- well, I don't think you are

11   going to argue necessarily, Trustee Despins, but is Attorney

12   Bassett and Attorney Henzy intending on looking at documents

13   tomorrow?

14         MR. HENZY:  I would be citing documents, Your

15   Honor.

16         THE COURT:  I mean, it's possible we could do it,

17   but I have to say, well, we had some issues today, some

18   technical issues, which is why we started all the 2 o'clock

19   matters a little later than we thought we were going to

20   start.  I guess I do have both of your binders.

21         MR. HENZY:  It's totally up to, you know, Mr.

22   Bassett.  If there's another Kwok hearing, you know, in a

23   reasonable period of time --

24         THE COURT:  There is -- I don't think there is,

25   honestly.

 1            MR. HENZY:  Okay.  All right.  Okay.

 2            THE COURT:  I looked at -- well, I could be wrong.

 3  Do you -- but I don't think there is one anytime soon.  And

 4  then we've got some other scheduling issues coming up.  So

 5  I'm fine to do it remotely tomorrow.  Okay?  What I would say

 6  about that is, you all just understand that at 10:00 a.m.

 7  tomorrow, if you're not being pulled in, it's because we're

 8  trying to figure out some technical issues.

 9            And if for some reason that ends up like -- I'm

10  not going to keep you waiting on the phone.  If we have to,

11  for some reason, there's a technical issue and we don't start

12  till 10:30, 11:00, somebody will tell you.  I don't want you

13  to just be sitting there.  Okay?  But does anyone have any

14  issue with regard to proceeding that way, understanding that

15  we had some issues today?

16            MR. BASSETT:  That's fine with us, Your Honor.

17            MR. HENZY:  That's fine, Your Honor.

18            THE COURT:  Okay.  Okay.

19            MR. HENZY:  So I don't -- I know I'm going to

20  sound like a complete luddite, but do we need to send the

21  email --

22            THE COURT:  You will get it -- you -- the

23  courtroom deputy will send it to you and Attorney Moriarty.

24  Do you want Attorney Twardy to have it too?

25            MR. HENZY:  I don't think Attorney Twardy needed

1  to be here for oral argument.

2          THE COURT:  All right.  So the two of you and

3  then, Mr. Bassett, and Mr. Despins, and Mr. Skalka, and

4  Attorney Claiborn, and then if, you know, anybody else wants

5  the view that's in the courtroom, they can share it with

6  them.

7          But understanding that the people that are talking

8  are going to be the people at the tables.  Tomorrow, we're

9  not entertaining anyone else.  Okay?

10          MR. HENZY:  Yeah.  Thank you, Your Honor.

11          THE COURT:  All right.  So I think that's the best

12  way to proceed, unfortunately, at the moment.  I didn't think

13  we would finish this today, but I also wasn't certain we'd be

14  going this long.  But I do think we had some difficulties,

15  and there was a prior hearing that took some time as well.

16          So in any event, is there anything else we should

17  address tonight before we come back tomorrow?

18          MR. HENZY:  No.  No.  No, Your Honor.

19          MR. DESPINS:  No, not from our perspective, Your

20  Honor.  Thank you very much.

21          MR. HENZY:  Thank you.

22          THE COURT:  All right.  So then what you'll have

23  to do, just be patient in the morning.  The Court staff will

24  get you all the information.  You may not get it.  If you

25  don't get it till 9:45, don't worry, you're going to get it.

1          But I think you'll have it before then, I'm just

2   saying, so that you don't worry.  And then we will proceed.

3   If for some reason we had some issues with the equipment and

4   technology, we'll let you know.  We'll go from there.  I

5   think the day -- I mean, I think we have an appropriate time,

6   even if we started late tomorrow.

7          MR. HENZY:  Yes.  Thank you, Your Honor.

8          MR. MORIARTY:  Thank you.

9          MR. DESPINS:  Thank you, Your Honor.

10          THE COURT:  All right.  Well, then, the hearing is

11   adjourned until tomorrow at 10:00 a.m. remotely, and then the

12   Court is adjourned for the evening.  Okay?  So thank you all.

13   Court is adjourned.

14          MR. BASSETT:  Thank you, Your Honor.

15          THE DEPUTY:  All rise.  Court is adjourned.

16          (Proceedings adjourned at 6:23 p.m.)

17

18

19

20

21

22

23

24

25

1                   CERTIFICATION

2

3         I certify that the foregoing is a correct

4 transcript from the electronic sound recording of the

5 proceedings in the above-entitled matter to the best of my

6 knowledge and ability.

7

8 /s/ Wendy K. Sawyer                March 28, 2025

9 Wendy K. Sawyer, CDLT

10 Certified Court Transcriptionist

11 For Reliable

12

13

14

15

16

17

18

19

20

21

22

23

24

25