**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>    HO WAN KWOK, *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>        Plaintiff,<br><br>    v.<br><br>MEI GUO,<br><br>        Defendant. | Adv. P. No. 23-05008 (JAM)<br><br>Re: ECF No. 140 |

**APPEARANCES**

| | |
|---|---|
| Douglass Barron<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, NY 10166<br><br>    and<br><br>Nicholas A. Bassett (argued)<br>Paul Hastings LLP<br>2050 M Street NW<br>Washington, D.C. 20036 | Patrick R. Linsey<br>Neubert, Pepe & Montieth<br>195 Church Street, 13th Floor<br>New Haven, CT 06510 |

    *Counsel for Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok*

Eric A. Henzy (argued)
James M. Moriarty
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604

    *Counsel for Ms. Mei Guo*

### MEMORANDUM OF DECISION AND ORDER GRANTING MOTION TO HOLD MEI GUO IN CONTEMPT OF PRELIMINARY INJUNCTION

Julie A. Manning, United States Bankruptcy Judge

**I.  INTRODUCTION**

Before the Court is the motion (the "Contempt Motion") filed by the plaintiff, Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Mr. Ho Wan Kwok, to enforce the consented to in part preliminary injunction (the "Preliminary Injunction") and hold the defendant, Ms. Mei Guo, in contempt of the Preliminary Injunction. This memorandum of decision sets forth the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.  For the reasons set forth below, the Contempt Motion is **GRANTED**.

**II.  BACKGROUND**

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this Court. (Main Case ECF No. 1.)[1]  On June 15, 2022, presented with allegations related to the Individual Debtor's financial mismanagement and an alleged shell game involving numerous corporate *alter egos*, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee to administer the Individual Debtor's bankruptcy estate.  (Main Case ECF No. 465.)  *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (Main Case ECF No. 523.)

On May 16, 2023, the Trustee filed the Complaint initiating this adversary proceeding. (ECF No. 1.)  The Complaint states four claims for relief against Ms. Guo:

> (i)   The first claim (Complaint ¶¶ 48–52) seeks declaratory judgment that (i) pursuant to section 541(a) of title 11 of the United States Code (the "Bankruptcy Code"), a Bombardier Global XRS private jet with serial number 9189 (the "Bombardier"),

---

[1] References to the docket in this adversary proceeding will be styled "ECF No. __". References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __".

2

formerly indirectly owned by Ms. Guo, was property of the estate because it was beneficially owned by the Individual Debtor as of the filing of his bankruptcy petition and at the time of its post-petition sale; and (ii) pursuant to section 541(a)(6) the proceeds of the sale of the Bombardier (the "Bombardier Proceeds") are property of the estate. On these bases, pursuant to sections 542 and 544 of the Bankruptcy Code, the first claim seeks turnover of the Bombardier Proceeds to the estate via delivery to the Trustee.

(ii)    The second claim (Complaint ¶¶ 53–56) seeks, in the alternative to the first claim and pursuant to sections 549 and 550 of the Bankruptcy Code, avoidance of a post-petition transfer of the Bombardier Proceeds from the Individual Debtor to Ms. Guo and recovery of the value thereof from Ms. Guo.

(iii)   The third claim (Complaint ¶¶ 57–66) seeks, in the alternative to the first and second claims and pursuant to sections 544 and 550 of the Bankruptcy Code and former section 276 of the New York Debtor and Creditor Law (repealed effective April 4, 2020), the value of Anton Development Limited ("Anton Development"), a former owner of the Bombardier, at the time of its transfer from Mr. Han Chunguang to Ms. Guo on the basis of fraudulent transfer and recovery thereof from Ms. Guo.

(iv)    The fourth claim (Complaint ¶¶ 69–74) seeks declaratory judgment that pursuant to section 541(a) of the Bankruptcy Code, several British Virgin Islands ("BVI") entities owned by Ms. Guo, namely, Whitecroft Shore Limited ("Whitecroft"), Allied Capital Global Limited, Creative Apex Investments Limited, Crystal Breeze Investments Limited, Elite Well Global Limited, Globalist International Limited, Infinite Increase Limited, Infinitum Developments Limited, Noble Fame Global Limited, and Rosy Acme Ventures Limited (each a "BVI Entity," and together, collectively, the "BVI Entities") are beneficially owned by the Individual Debtor. On this basis, pursuant to sections 542 and 544 of the Bankruptcy Code, the fourth claim seeks turnover of the BVI Entities to the estate via delivery to the Trustee.

On June 30, 2023, Ms. Guo filed an answer to the Complaint and asserted affirmative defenses. (ECF No. 21.)

The Court has entered partial summary judgment against Ms. Guo, (i) ruling the Individual Debtor beneficially owned the Bombardier and Whitecroft and, hence, the Bombardier Proceeds and Whitecroft are property of his bankruptcy estate which must be delivered to the Trustee; and (ii) narrowing the issues for trial on the third claim and remainder of the fourth claim. (ECF No. 126.) The United States District Court for the District of Connecticut has affirmed this decision as it relates to the first and fourth claims. *Guo v. Despins*

3

*(In re Kwok)*, Civil No. 3:24-CV-724 (KAD), 2025 WL 252855 (D. Conn. Jan. 21, 2025), ECF No. 24. The District Court decision is presently on appeal at the United States Court of Appeals for the Second Circuit. *Guo v. Despins (In re Kwok)*, No. 25-405 (2d Cir. July 28, 2025).

On December 21, 2023, the Court entered the Preliminary Injunction. (ECF No. 81.) At the time of its entry, Ms. Guo consented to its terms other than the requirement – not at issue presently – that certain funds held overseas be transferred to an escrow agent in the United States. (*See* ECF Nos. 79–80.) In pertinent part, the Preliminary Injunction states:

> **ORDERED:** The Defendant and JNFX shall not transfer, encumber, move, dispose of, or in any way impair the Defendant's interest in any property or assets wherever located, and whether directly or indirectly held, up to the aggregate amount of $25 million, including, without limitation, the Bombardier Proceeds and/or the JNFX Assets held by or for the benefit of the Defendant or Whitecroft at JNFX until further order of the Court except as ordered below; and it is further . . .
>
> **ORDERED:** Unless the parties agree in writing otherwise, no assets subject to this Order, including, without limitation, the JNFX Assets, shall be reduced, spent, or otherwise diminished without further order of the Court, including, without limitation, by the assessment of fees, costs, or other charges . . . .[2]

(ECF No. 81.)

On December 20, 2024, the Trustee filed the Contempt Motion. (ECF No. 140.) On January 3, 2025, the Court issued an order for Ms. Guo to appear and show cause why she should not be held in contempt of court. (ECF No. 141.) On January 16, 2025, Ms. Guo filed an objection to the Contempt Motion. (ECF No. 142.) On March 21, 2025[3], the Trustee filed a reply in support of the Contempt Motion. (ECF No. 151.) This matter is fully briefed.

---

[2] The Trustee and Ms. Guo submitted proposed orders in connection with the Trustee's motion for injunctive relief. (ECF Nos. 79–80.) Ms. Guo's proposed order was less favorable to her in that it did not provide that in addition to a Court order, Ms. Guo could dispose of assets with written permission of the Trustee. (*See* ECF No. 80.)

[3] The parties consented to two continuances between the filing of the objection and the reply. (ECF Nos. 145, 148.)

On March 24, 2025, the Trustee and Ms. Guo each filed a list of witnesses and exhibits. (ECF Nos. 155, 157.) An evidentiary hearing on the Contempt Motion commenced on March 25, 2025, and continued on March 26, 2025. During the March 25th hearing, Ms. Guo testified extensively and other evidence was admitted.[4] Oral argument occurred the following day.

This matter is ripe for adjudication.

### III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. The Trustee's claims in this adversary proceeding are statutorily core. 28 U.S.C. §§ 157(b)(2)(A), (E), (H). The Court concludes its exercise of jurisdiction is not precluded by Constitutional concerns. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV. DISCUSSION

#### A. Legal Standard

This Court has the power to enforce its own orders and hold parties in contempt of court. 11 U.S.C. § 105(a); Fed. R. Bankr. P. 9020; *Taggart v. Lorenzen ex rel. Brown*, 587 U.S. 554, 559 (2019); *PHH Mortg. Corp. v. Sensenich ex rel. Gravel (In re Gravel)*, 6 F.4th 503, 512 (2d Cir. 2021); *Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chauteaugay Corp.)*, 920 F.2d

---

[4] Ms. Guo filed a motion to close the courtroom during the hearing on the Contempt Motion. (ECF No. 149.) The United States Trustee objected to this motion. (ECF No. 163.) For the reasons stated therein, the Court granted Ms. Guo's motion to close the Courtroom in part as to two limited topics. (ECF No. 170.)

183, 187 (2d. Cir. 1990); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."). Contempt may be sought to "coerce the defendant into compliance" with a court order or to "compensate the complainant for losses" resulting from noncompliance with a court order. *Taggart*, 139 S. Ct. at 1801 (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)).

To be held in contempt, a party must have notice of the relevant order. *Gravel*, 6 F.4th at 512. Furthermore, a finding of civil contempt requires that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). Civil contempt does not require the contemnor willfully violated a court's order. *Taggart*, 587 U.S. at 561 (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

B.  Analysis

There is no dispute Ms. Guo has notice of the Preliminary Injunction: her counsel negotiated its terms and discussed those terms in Court, it entered on her consent, and she has appearing counsel in this adversary proceeding who receive electronic service of documents filed on its docket. Instead, the parties dispute the remaining three elements of civil contempt. The Court discusses these elements in turn below.

### 1.     Is the Preliminary Injunction clear and unambiguous?

As to the clarity of the Preliminary Injunction, an order is clear and unambiguous where "there is [no] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart*, 587 U.S. at 561 (citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885), and adding emphasis). A court generally applies an objective standard – a "party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Taggart*, 587 U.S. at 561. Nevertheless, a party's bad faith may justify "placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party who violated the court order," and "a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Id.* at 561–62 (citing *McComb*, 336 U.S. at 192–93 and *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987)).

The Trustee argues the Preliminary Injunction clearly and unambiguously requires Ms. Guo to seek his consent or a Court order before dissipating any assets, including assets acquired after the entry of the Preliminary Injunction. Ms. Guo argues the Preliminary Injunction is ambiguous and unclear as to whether it applies to after acquired assets and whether there is an exception for personal expenses.

The Court agrees with the Trustee. As reproduced above, the Preliminary Injunction reads in pertinent part:

> **ORDERED:** The Defendant and JNFX shall not transfer, encumber, move, dispose of, or in any way impair *the Defendant's interest in any property or assets wherever located, and whether directly or indirectly held, up to the aggregate amount of $25 million, including, without limitation, the Bombardier Proceeds and/or the JNFX Assets held by or for the benefit of the Defendant or Whitecroft at JNFX* until further order of the Court except as ordered below; and it is further . . .

>**ORDERED:** *Unless the parties agree in writing otherwise, no assets subject to this Order, including, without limitation, the JNFX Assets, shall be reduced, spent, or otherwise diminished without further order of the Court*, including, without limitation, by the assessment of fees, costs, or other charges . . ..

(ECF No. 81 (emphasis added).) The plain text is clear and unambiguous. The Preliminary Injunction requires Ms. Guo to seek the Trustee's consent or Court approval before dissipating assets. Assets are not temporally limited to those Ms. Guo had at the time the Preliminary Injunction entered and the Preliminary Injunction contains no exception for personal expenses.

Ms. Guo argues that the word "held", appearing in the first decretal paragraph reproduced above, introduces ambiguity as to whether the Preliminary Injunction applies to after acquired assets. In making this argument, Ms. Guo relies on *U.S. Securities & Exchange Commission v. Collector's Coffee Inc.*, No. 19 Civ. 4355 (VM) (GWG), 2021 WL 266284 (S.D.N.Y. Jan. 27, 2021). Her reliance is misplaced. While Ms. Guo is correct certain decretal paragraphs in the injunction at issue in *Collector's Coffee* used "held" by itself, the court did not cite this usage in its rationale. Instead, the court determined an injunction did not clearly and unambiguously prevent dissipation of after-acquired assets because of its use of "presently held" and "presently exist". *Collector's Coffee*, 2021 WL 266284, at *8. In this case, the Preliminary Injunction does not include the word "presently" in any of the relevant decretal paragraphs.

Moreover, contrary to Ms. Guo's assertions, "held" is *not* being used as the past tense of "hold" in the Preliminary Injunction. It is used as the past participle of "hold". Past participles are used in, among other things, the past, present, and *future* passive and perfect tenses. *Past participle*, MERRIAM-WEBSTER DICTIONARY (11th ed. 2019). "The asset was directly held"; "the asset is directly held"; and "the asset will be directly held" all make grammatical sense. Hence, it is completely unsurprising the court in *Collector's Coffee* focused on *presently* because the past participle "held" alone can be used to describe an after acquired asset. Here, unlike in

8

*Collector's Coffee*, there is *no* additional language suggesting a temporal limitation as to *when* the assets are acquired.

Similarly, while Ms. Guo may prefer that the Preliminary Injunction carved out payment of certain personal expenses without requiring her to enter into a stipulation or seek a Court Order, neither the terms of her proposed order (ECF No. 80) or of the Preliminary Injunction (ECF No. 81) contain such a carve out.

For these reasons, the Court concludes the Preliminary Injunction is clear and unambiguous. The Court does not need to reach Ms. Guo's arguments based on statements made on the record. Nevertheless, a review of the motion for injunctive relief and the record of the hearings held on the motion for injunctive relief demonstrates, contrary to Ms. Guo's arguments, the Trustee sought, and obtained *with consent*, injunctive relief to prevent the dissipation of Ms. Guo's assets including *but not limited to* the monies held by JNFX. (*See, e.g.*, Emergency Motion for Temporary Restraining Order and Preliminary Injunction ¶¶ 87–88, ECF No. 74; Dec. 19, 2023, Hr'g Tr. at 20:13–22:9 (Attorney Nicholas A. Basset speaking), ECF No. 87.)

### 2.    Did Ms. Guo comply with the Preliminary Injunction?

Turning to the Ms. Guo's compliance, the Trustee argues Ms. Guo did not comply with the Preliminary Injunction. Ms. Guo asserts it would be impossible for her to comply because compliance would prevent her from paying necessary personal expenses.

The Court agrees with the Trustee. The factual record introduced during the evidentiary hearing makes clear Ms. Guo transferred assets – both those she held at the time the Preliminary Injunction entered and those she afterwards acquired (*see, e.g.*, Mar. 25, 2025, Hr'g Tr. at 119:7–21:4 (Ms. Guo testifying), ECF No. 176) – to pay certain expenses – both personal in nature and not, including gratuities for, *e.g.*, the Individual Debtor's criminal defense counsel (*see, e.g.*, *id* at

9

133:8–36:10) – without the Trustee's consent or further order of the Court.  That is, even assuming *arguendo* the Preliminary Injunction contained the exceptions and exclusions Ms. Guo asserts it does, Ms. Guo did not comply with the Preliminary Injunction.  The Trustee has established by clear and convincing evidence that Ms. Guo did not comply with the Preliminary Injunction.

Ms. Guo is correct that "[a] long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order." *United States v. Wendy*, 575 F.2d 1025, 1030 (2d Cir. 1978) (citing *Shillitani v. United States*, 384 U.S. 364, 371 (1966)).  However, as the Trustee notes, the relevant terms of the Preliminary Injunction were consented to by Ms. Guo.  Therefore, the Court concludes Ms. Guo is judicially estopped from raising this argument.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'  This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'") (internal citations omitted, other alterations in original).  Ms. Guo consented to the terms of the Preliminary Injunction at issue to avoid certain litigation regarding the Trustee's motion for a preliminary injunction – litigation which would have involved allegations Ms. Guo had perjured herself during an earlier deposition as to her knowledge of, and access to, the Bombardier Proceeds and was not complying with her discovery obligations in this adversary proceeding.  (*See* Emergency Motion for Temporary Restraining Order and Preliminary Injunction ¶¶ 27–52, ECF No. 74.)  She may not first *consent* to be bound by the Preliminary Injunction and then

10

argue it does not bind her because terms her own counsel drafted do not give her certain protections she would prefer they afforded.

Moreover, Ms. Guo is incorrect regarding the terms of the Preliminary Injunction. The Preliminary Injunction does *not* prevent Ms. Guo from paying personal expenses. By the express terms of the Preliminary Injunction, she can stipulate with the Trustee as to such expenditures or seek the entry of a further order. Hence, even if she is not judicially estopped, Ms. Guo's impossibility defense fails.

### 3. Did Ms. Guo diligently attempt to comply with the Preliminary Injunction?

Finally, the Court turns to whether Ms. Guo has diligently attempted to comply with the Preliminary Injunction in a reasonable manner. The Trustee argues Ms. Guo has not even attempted to comply with the Preliminary Injunction. The Trustee observes Ms. Guo has not, as required by the Preliminary Injunction, sought his consent to her expenditures or sought further order from the Court. Furthermore, the Trustee asserts, assuming *arguendo* the Preliminary Injunction has an exclusion for reasonable personal expenses, Ms. Guo's expenditures were *not* reasonable personal expenditures but rather extravagant and, in large part, not personal. Ms. Guo objects to the Trustee's assertion and argues that she complied with the terms she reasonably believed were contained in the Preliminary Injunction.

The Court agrees with the Trustee for several reasons. First, Ms. Guo's stated belief as to the meaning of the Preliminary Injunction is not a defense to civil contempt. "The absence of wilfulness [sic] does not relieve from civil contempt." *McComb*, 336 U.S. at 191. Accordingly, Ms. Guo's mistake of law does not prevent a citation for civil contempt. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583–85 (2010); *cf. Yellin v. United States*, 374 U.S. 109, 123 (1963) (holding mistake of law was no defense to contempt of Congress);

11

*United States v. Remini*, 967 F.2d 754, 758 (2d Cir. 1992) (holding mistake of law was no defense to criminal contempt of court). "[A] party's good faith, *even where it does not bar civil contempt*, may help to determine an appropriate sanction." *Taggart*, 587 U.S. at 561–62 (emphasis added).

Second, Ms. Guo maintained an expensive and luxurious lifestyle. At the time the Preliminary Injunction entered, Ms. Guo was paying $17,500.00 a month in rent. (Mar. 25, 2025, Hr'g Tr. at 125:17–26:3 (Ms. Guo testifying), ECF No. 176.) Moreover, while the Preliminary Injunction was in place, Ms. Guo moved into a new apartment with two and a half bedrooms where she lived alone but was at times visited by her boyfriend, for which apartment she paid $19,500.00 a month in rent. (*Id.* at 126:14–27:5.) While she has resided at either apartment, she has spent significant time living in her mother's mansions. (*Id.* at 126:4–13, 127:6–21.) Ms. Guo has also taken expensive vacations (*id.* at 132:9–33:7) and purchased expensive luxury goods (*id.* at 114:18–25:13, 118:1–10) during the relevant period.

Third, Ms. Guo also paid excessive gratuities to third parties. Ms. Guo paid for meals for her father's criminal defense lawyers, meals which the lawyers exclaimed were worth "too much money". (*Id.* at 134:11–35:17.) She bought one of her father's criminal defense lawyers a new iPhone 15. (*Id.* at 135:22–24.) She paid hotel expenses for her father's supporters to attend his criminal trial. (*Id.* at 135:25–36:10.) She paid her mother's legal fees. (*Id.* at 133:11–13.) She paid around $100,000.00 to a coffee shop she owns, much of it in bags of cash, without prior obligation. (*Id.* at 141:15–43:4, 143:19–45:2, 146:16–48:2.) While paying these expenses she assured people she had the means to do it and deflected questions about the amount being gifted. (*See, e.g., id.* at 134:23–35:6, 146:16–147:24.)

Fourth, Ms. Guo testified she financed her lifestyle based on hundreds of thousands of dollars in unsolicited gifts from family, friends, and friends of family or friends. (Sealed Mar. 25, 2025, Hr'g Audio at 4:46:04–5:01:14 p.m. (Ms. Guo testifying).) Ms. Guo received these amounts through wire transfers and in cash. No writings were involved. Ms. Guo does not even know some of her benefactors. She does not know the source of her benefactors funds.

Fifth and finally, Ms. Guo admits she did not seek the Trustee's consent or a further Court order. (Mar. 25, 2025, Hr'g Tr. at 148:3–11 (Ms. Guo testifying), ECF No. 176.)

For all these reasons, the Court concludes the Trustee has established by clear and convincing evidence that Ms. Guo did not reasonably attempt to comply in a diligent manner. She did not attempt to comply at all and ignored the terms of an injunction to which she consented to be bound. There is nothing reasonable about the amounts and modes of her dissipation of assets. Finally, Ms. Guo testified that she never attempted to obtain the Trustee's consent or a further order of the Court as provided in the Preliminary Injunction. This failure demonstrates a lack of diligence.

## V. CONCLUSION AND ORDER

The Trustee has established all elements of civil contempt. Accordingly, the Court cites Ms. Guo for civil contempt of court. It is hereby

**ORDERED:** The Contempt Motion is **GRANTED** as set forth herein. Ms. Guo is in civil contempt of the Preliminary Injunction; and it is further

**ORDERED:** Ms. Guo is sanctioned and shall pay the Trustee's reasonable attorneys' fees and costs incurred in bringing and prosecuting the Contempt Motion, the reasonableness and amount of which will be determined by the Court. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). On or before August 22, 2025, the Trustee shall file an affidavit of his

attorneys' fees and costs.  On or before September 5, 2025, Ms. Guo shall file any response or objection to the Trustee's affidavit.  After the response date, the Court shall determine whether a further hearing on damages shall be held; and it is further

**ORDERED:**  The Trustee's other requests for sanctions are denied without prejudice to the Trustee filing a motion for such relief, including without limitation a motion for the disclosure of assets; and it is further

**ORDERED:**  As provided in the Preliminary Injunction, Ms. Guo and the Trustee shall meet and confer on an agreement or consent order to resolve their various concerns, including Ms. Guo's concerns about her ability to pay personal expenses and the Trustee's concerns about asset dissipation.  Failure by Ms. Guo to meet and confer in good faith may result in further sanctions, including without limitation additional attorneys' fees and costs incurred by the Trustee in attempting to reach an agreement.

Dated at Bridgeport, Connecticut this 31st day of July, 2025.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut